UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| CHUCK STREBLOW, SARAH HOUSTON, IMAGINATION INDUSTRIES, INC. dba THE AMERICAN DREAM BAR, JANE DOE DANCERS #1 – 7, JOHN DOE SECURITY GUARDS #1 – 5, JOHN & JANE DOE CUSTOMERS #1 – 11, and all Similarly Situated Residential & Commercial Neighbors of Club 180, | Civil Action No. 25-241 |
| Plaintiffs, | |
| versus, | CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF |
| CLUB 180, AM314, LLC, MATTHEW LONGCOR, AYDEN LONGCOR, NICHOLAS SCALISE dba DJ NEXT1, ERIC HAVERMANN, ELLIE JAEKE, EVRON, INC., SEVEN OAKS INVESTMENT CORP., HIGHLAND ASSOCIATES, INC., CTS, LLC, PTM, INC., NANCY WAGGENER, PAUL WAGGENER, BRAVO1 SECURITY, INC., MICHAEL ELAYAN, MIROSLAVA KOTSAN, STU SLEEPER aka STUPAC X, DAVID EKDAHL, CHAD MCMAHON, JAMES PULL, IVON PENNY, BLAIKE KOCA, MARLEY NYGAARD, ROMAN, JALIL TOOKHI, MALIK HARMON, ABDUL RAHMANZAI aka JAMAAL, DAVID LOOLOO, TONY PHAM, BREANNA PHAM-CARR, THROWBACK EMPIRE, LLC dba KRUSH ULTRA LOUNGE, BRE MANNING aka ROSE, BROOKE LEIBERT aka MALIBU, ELENA RHODD-MORALES aka STARR, CHRISTINA CRAFT aka SKYLA, KATHERINE TEDI SMITH aka SIENNA, , ECHO, AMIRA, PERSUSIA, KINO, JESSIE, INDIE, NEA, PRETTY P, STORMIE, SANTANA, VOODOO LOUNGE, INC., KYRON O'BRIEN SR., TOAST, INC., COSTCO WHOLESALE CORP., and JOHN & JANE ROES #1– 50, | |
| Defendants. | **JURY DEMANDED** |

1

## INTRODUCTION

1) This lawsuit arises out of an illegal enterprise owned and operated by Defendants since December 2023, Club 180, and for some time prior thereto at other locations. Plaintiffs collectively request $10,000,000 in monetary damages, plus treble damages and declaratory relief, including the immediate closure of Club 180.

## SUMMARY OF FACTS

2) In December 2023, Defendants Matthew Longcor, his wife Miroslava Kotsan ("Matt and Miro"), and their corporation AM314, LLC, opened Club 180, an illegal strip club at the Two Fine Irishmen Bar & Grill located at 18101 R Plaza, Suite 107, Omaha, NE 68135.

3) Matt and Miro opened with the assistance of numerous silent partners including drug dealers, prostitutes, and wealthy men from throughout the Omaha Metropolitan area, many of whom are named as Defendants.

4) The cover charge is typically $20, but Defendants often let customers in for free.

5) They advertise themselves a "membership" club but there are no memberships at Club 180.

6) This is a false designation to stop law enforcement from entering the building without a warrant.

7) Club 180 has operated primarily from Wednesday to Sunday nights from 5:00 or 6:00 pm – 4:00 am on Sunday, Wednesday and Thursday and closing 5:00 on Friday and Saturdays, as well as after-hours parties at various locations.

8) Club 180 is adjacent to a church, daycare, and a high school along with several other traditional and mainstream businesses as well as residential zoning.

9) While the neighbors and local community protested against the opening and operation of Club 180, Defendants ignored the community response and the City of Omaha and the

Landlord Defendants (Evron, Inc., Seven Oaks Investment Corporation and Highland Associates, Inc., CTS, LLC and PTM, Inc. and the Waggener family) did nothing to stop Club 180 from operating.

10) In fact, the Landlord Defendants had the opportunity to evict their tenants in 2023, but chose not to do so; instead, they increased monthly rent to approximately $14,000, collected substantial back rent estimated at $100,000, and allowed their co-Defendants to operate their illegal enterprise without interference.

11) It is estimated that the Landlord Defendants have collected over $200,000 in lease payments from Defendants since December 2023, plus back rent.

12) Upon information and belief, Club 180 was established to fulfill the sexual fantasies of its husband and wife founders, Defendants Matt and Miro and their silent partners and friends, while selling cocaine, illegally selling alcohol without a license, giving alcohol to minors as young as age 17, while facilitating prostitution, sex trafficking, and stealing from employees and customers.

13) Matt and Miro are longtime swingers who have had orgies and sex parties with cocaine and other drugs in the Omaha metropolitan area at many locations for a period of years.

14) Miro used her charm and success to approach, hire, and groom young, innocent girls from the Omaha metropolitan area to work at Club 180 and attend sex parties in exchange for money and cocaine, similar to Jeffrey Epstein's partner, sex trafficker Ghislaine Maxwell who is currently serving a 20-year prison sentence.

15) Defendants Ellie Jaike and Blaike Koca performed similar services for Club 180 as Miro.

16) Club 180 was never designed to be a law-abiding tax paying business.

17) Upon information and belief, Defendants have not paid accurate sales tax or income tax for Club 180.

18) It is estimated that the Defendants have jointly grossed in excess of $1 million since December 2023 from Club 180 operations.

19) Defendant Eric Havermann is one of Matt's silent partners who helps provide cocaine, customers, and dancers/prostitutes to Club 180.

20) Defendant Chad McMahon, disgraced former owner of the Good Life bars, is a Club 180 regular and/or silent partner who has sex and drug parties with Defendants at his home located at 2021 S. 189th Circle, Omaha, NE 68130 and on a new party bus that he purchased.

21) Defendant Nicholas Scalise ("Nick") has been voted the #1 DJ in Omaha, has thousands of followers on social media and in the community, and was the primary reason Club 180 was able to open and operate, due to his following and credibility.

22) Nick promoted Club 180 on Facebook on dates including but not limited to 12/20/24, 12/7/24, 8/9/24, 1/12/24, 1/6/24.

23) Defendant Bre Manning aka Rose was one of Defendants' primary dancers and supporters and was intimately involved in Defendants' illegal activities.

24) Defendant Blaike Koca assisted with recruiting male and female customers as well as dancers with Club 180 owner Matt at bars throughout Omaha including Voodoo Bar as well as going on trips with Matt and other Club 180 employees.

25) Defendant Blaike Koca worked at Club 180 as a hostess and traveled with Matt and Eric to Florida when they sex trafficked a dancer.

26) On Saturday, April 27, 2024, at 4:25 pm, a Club 180 dancer texted a customer about a recent trip to Florida with Defendants Matt, Miro, Eric and Blaike stating:

"I went out there (Florida) with Matt, Miro, Eric this girl Blake (Defendant Blaike Koca) and **Eric choked slammed and threw me into a car because I wouldn't have sex with him** and he was expecting me to but he was being so dirty and gross and I said that wasn't part of this trip … that's why I came home early because **he also slapped me in the face and then he was trying to do really gross things and over power me** and I just couldn't deal with it."

27) These text messages are accompanied by a photograph of the dancer's swollen face after being struck by Eric Havermann.

28) Defendants Voodoo Lounge, Inc. (dba Voodoo Bar) and Kyron O'Brien, allow Club 180 partners and employees to consume cocaine at Voodoo Bar parties, allow underage Club 180 dancers to consume alcohol at Voodoo Bar, accept fake IDs from Club 180 dancers at Voodoo Bar, allow Club 180 dancers to expose their naked bodies in public at Voodoo Bar, and allowed Matt, Miro, Eric, Ellie, Blaike and other Defendants to recruit customers and dancers for Club 180 from Voodoo Bar.

29) Club 180 manager Dave Ekdahl promoted Voodoo Bar on Facebook on dates including but not limited to 12/30/24.

30) Club 180 promoted an event at Krush Ultra Lounge on Facebook on 3/1/25 and Krush promoted an after party at Club 180 that night with hundreds of people.

31) Defendants had repeated written and verbal notice of the illegal activities at Club 180 over the past 15+ months and took no action to eliminate these crimes and torts.

32) In fact, Defendants including Matt, specifically told Club 180 security guards to look the other way when illegal activities were occurring; that certain security cameras shouldn't be watched at certain times; that certain people should not be frisked for weapons; and that certain people should not have to produce identification.

33) Despite actual notice of Defendants' illegal enterprise, Defendants Bravo1 Security and its owner Michael (Mike) Elayan continued to provide security guards for Club 180 and receive

income from Club 180; without the services of these Defendants, Club 180 would have been unable to operate.

34) In the weeks before this lawsuit was filed, at least five Club 180 security guards quit due to Defendants' illegal activities and unsafe working environment.

35) At the time of filing, Club 180's head security guard was Stu Sleeper aka Stupac X ("Stu").

36) Despite knowledge of all the illegal activities, Defendant Stu continues to work at Club 180.

37) On or about March 12, 2025, Defendants began requiring Club 180 security guards to sign non-disclosure agreements, in an effort to hide illegal activities.

38) Plaintiffs have collected a variety of evidence from several sources including videos of the owner Matt giving cocaine to a customer while molesting her, videos of Matt having sexual intercourse with a dancer on stage and receiving oral sex while his 18-year-old friend Roman watches, videos of Matt and Ayden stealing money, screenshots of Kirkland brand alcohol in Club 180's office purchased by Matt at Costco, and other incriminating evidence including, numerous videos, screenshots of photos, text messages and witness statements from five former security guards and Club 180 dancers, customers, and neighbors.

39) A customer of Club 180 recently walked into another club in Omaha and asked how much they charged for sex, stating that at Club 180 he could, "fuck the girls for $800."

40) When Club 180 opened in December 2023, it was primarily operated by Defendants Matt and Miro with the assistance of manager Dave Ekdahl and Matt's son Ayden Longcor who was only 17 when he began working there, with Bravo1 Security and Mike Elayan providing security guards and DJ Next1 providing music on Friday and Saturday nights.

41) Matt and Dave worked as the managers along with Ayden and Miro worked as the hostess in the front.

42) When Matt wasn't working at Club 180, he was often partying there with Defendants, his silent partners, friends and the dancers, as well as the Voodoo Bar.

43) The Voodoo Bar profited from the business provided by the Club 180 Defendants including Matthew Longcor, Eric Havermann and Club 180 dancers.

44) Matt and Miro had a very dysfunctional relationship with a lot of yelling and physical abuse at Club 180 and are presently in the midst of a divorce.

45) Matt on at least one occasion pushed Miro to the ground and Miro once threw a full beer bottle at Matt.

46) Miro also angrily ripped wires out from the walls at Club 180 and broke the credit card machine.

47) Club 180 offers customers traditional strip club dances and entertainment in addition to prostitution, cocaine and other illegal substances.

48) The Club 180 ATM machine(s) and Toast credit card machine have evidence of the majority of financial transactions that occurred at Club 180.

49) Club 180 features nude dancing by exotic dancers that Defendants recruited from other regional strip clubs and from bars and night clubs in the Omaha metropolitan area.

50) During Club 180's first weekend of operation, they recruited approximately 15 dancers from Plaintiff the American Dream Bar ("American Dream").

51) Defendants lured dancers from the American Dream and other local gentlemen's clubs with drugs, cash, and false promises.

52) Upon information and belief, Defendant Eric was barred from the Spearmint Rhino in Carter Lake for recruiting dancers for Club 180.

53) Club 180 attracted primarily dancers that had been fired from other clubs for drugs, prostitution, and/or breaches of their contracts.

54) Upon information and belief, dancers work at Club 180 for three main reasons: (a) They allow minors age 20 and under as young as 17 (and possibly younger) to drink alcohol; (b) The owner Matt and his partners provide the dancers with cocaine; and (c) The dancers are allowed to engage in prostitution at Club 180 and other locations to supplement their income from exotic dancing.

55) Defendants including Matt give dancers and customers cocaine in exchange for sex acts at Club 180 and other locations in Nebraska, Florida, and Las Vegas.

56) When dancers at Club 180 have a slow shift, they are sometimes paid to attend after hours parties where they are expected to have sex with some of the Defendants and their friends and partners.

57) In his brief tenure at Club 180, one security guard saw at least 3 or 4 dancers give customers hand jobs in private dances, which are illegal acts of prostitution.

### UNLICENSED ALCOHOL SALES & UNDERAGE CONSUMPTION

58) Defendants including but not limited to Matt, purchase large amounts of alcohol at Costco Wholesale Corporation ("Costco") and illegally sell bottles of Kirkland brand vodka, tequila, and other alcohol for $60 - $100 per bottle to their customers at Club 180 without a liquor license in violation of Nebraska liquor law.

59) Club 180 sells these bottles at all times of the night and early morning, including after 2:00 am when alcohol cannot be legally purchased anywhere in Nebraska.

60) Defendant Costco knew, or with the exercise of reasonable care, should have known that Defendants have been selling Costco's alcohol at Club 180 illegally for 15 months.

61) Club 180 Defendants, including Matt and Ayden, create, provide, and accept fake IDs from customers and dancers between the ages of 17 – 20, and possibly younger.

62) Defendant Rose who is under age 21, consumed a large quantity of alcohol at Club 180 and while leaving crashed her vehicle in accident that could have killed someone.

63) Defendant Persuasia had two fake IDs confiscated at Club 180 by security guards, yet Defendants allowed her to consume alcohol at Club 180.

64) Voodoo Bar allowed underage Club 180 dancers to consume alcohol at their bar since at least December 2023.

65) Defendants' illegal alcohol policies subject the minors who are drinking and the public at large to grave dangers from intoxicated drivers.

## PATTERN OF ILLEGAL ACTIVITIES AT CLUB 180

66) Upon information and belief, Club 180 does not have insurance, posing great risks to its employees, customers and neighbors.

67) Upon information and belief, Defendants including Club 180, Matthew Longcor and Nicholas Scalise dba DJ Next1 ("Nick"), do not have blanket music licenses with any of the four of companies: ASCAP, BMI, GMR, and SESAC.

68) As such, Defendants are engaged in copyright infringement every time a song is played at Club 180.

69) Civil penalties are $750 - $30,000 per infringed work up to $150,000 for willful infringement, and criminal penalties including five years of imprisonment and fines up to $250,000.

70) In addition, Nick has been playing his music so loud at Club 180 since December 2023, that he and Club 180 constitute a public nuisance to all neighbors in the vicinity of 180th and Q Streets in West Omaha.

71) Despite numerous warnings from the Omaha Police Department, Nick and Club 180 insist on playing their music very loud during operating hours from 9:00 pm – 5:00 am, disturbing the entire neighborhood.

72) Club 180 has been illegally charging credit cards through the company Toast under the guise that they are still a bar and restaurant.

73) Club 180 has an occupancy of only 85 but permits hundreds of people to enter the club at any given time.

74) On early Sunday morning, March 2, 2025, Defendant Krush had an after party at Club 180 with over 200 customers.

75) A brawl broke out that night among gang members where someone could have been killed.

76) A security guard reported finding bullets in the parking lot.

77) One security guard said he pulled his gun 6 times in one year at Club 180, more than 30 years of combined security.

78) Another part-time security guard pulled his gun 3 times during his short period at Club 180.

79) In March 2025, a customer pulled a gun on a security guard at Club 180.

80) Dancers were told by Defendants, including Matt to limit their cocaine consumption to the restrooms and the back room where there are no cameras.

81) Defendants congregate in the restrooms for extended periods of time to consume illegal drugs.

82) Defendants Matt and Eric assault their dancers by smacking and slapping their bodies and forcing them to consume large amounts of hard alcohol.

83) Matt and Miro would make people watch them have sex.

84) Upon information and belief, Defendants including Matt, Miro and their friends, invite(d) customers and other individuals to sex parties at Club 180 and other locations where Defendants receive sex and cocaine in exchange for money.

85) Matt and other Defendants often hire security guards to work at their sex parties.

86) Voodoo Bar hires security guards for its private parties.

87) Upon information and belief, Defendants including but not limited to Matt, Eric and Club 180 dancers, traffic dancers to and from the State of Iowa to Nebraska for purposes of prostitution.

88) Defendants Matt and Eric have sex trafficked young women to Florida and Las Vegas for immoral purposes.

89) Defendants Matt and Miro have recruited dancers, prostitutes and customers from public places including the Voodoo Bar in West Omaha, which is owned and operated by the former co-owner of the Two Fine Irishmen Bar & Grill (site of Club 180).

90) Club 180 Defendants have violated Title VII of the Civil Rights Act of 1964 by way of racial and ethnic discrimination of minority dancers including Asians and Africans and gender discrimination.

91) Dancers and a DJ were discriminated against and fired from Club 180 due to their race or ethnicity.

## DEFENDANTS REFUSE TO STOP THEIR ILLEGAL ENTERPRISE

92) Defendants had actual knowledge of all illegal and tortious activities alleged herein.

93) Five of Defendants' security guards have quit Club 180 in the last month due to the illegal activities and dangerous working conditions.

94) Plaintiffs counsel sent Defendants' owner Matt a lengthy email and text message demanding that Club 180 cease all illegal activities and these requests were ignored.

95) Plaintiffs counsel sent many of the Defendants letters advising them of all the illegal activities at Club 180 and requesting that they cease and desist.

96) Plaintiffs counsel sent the landlord Defendants an envelope with witness statements and a flash drive filled with evidence sufficient to evict the Club 180 tenant(s).

97) Plaintiff Chuck Streblow quit on March 5, 2025, when Defendant Matt allowed a young female customer to snort cocaine in the front of the club out in the open after Matt had already been informed that he was being sued and that the authorities were investigating Club 180.

98) Instead of closing or stopping their illegal activities, Defendants' response was to have the security guards sign non-disclosure agreements.

99) In addition, Defendant Eric Havermann called Plaintiffs' attorney on the phone at 6:00 pm on March 27, 2025, and essentially threatened the life of Plaintiffs' counsel.

100)    Plaintiffs' counsel filed a report with the Douglas County Sheriff's Office against Mr. Havermann on March 31, 2025, for violating NRS 28-1310 Intimidation by telephone call or electronic communication which is a Class III Misdemeanor.

101)    Defendants' illegal enterprise poses dangers to its dancers and customers, together with its neighbors and the local community.

102)    Plaintiffs reported these activities to the authorities prior to filing this complaint for the benefit of the community and the people that are being exploited by Defendants.

103)  Defendants are jointly and severally liable for all damages caused by their illegal enterprise.

104)  Defendants have participated in and profited from Club 180 since December 2023, and for some time prior thereto at other locations.

105)  Plaintiffs respectfully request that Defendants be held accountable for the damages they have caused, that Club 180 be ordered to close immediately and that they be prohibited from opening another similar establishment in the future.

## CLUB 180 DANCERS ARE EMPLOYEES ENTITLED TO WAGES

106)  The arbitration agreements in AM314, LLC's contract are unenforceable because they do not comply with Nebraska law.

107)  Specifically, the contracts do not contain the statutorily required statement by the signature block: THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

108)  In addition, Defendants by and through their contracts, mischaracterize the Jane Doe Dancer Plaintiffs as independent contractors instead of employees to avoid paying wages, taxes, and worker's compensation.

109)  Defendants have violated the Fair Labor Standards Act (FLSA) under the totality of circumstances rule and the prior 2021 rule.

110)  Dancer Plaintiffs and all Club 180 dancers are in fact employees entitled to wages because Defendants controlled how the Dancer Plaintiffs' work is done, by telling Jane Doe Plaintiff Dancers where they can and cannot work and making dancers pay monetary fines if they do not come to work upon demand by Defendants.

111)   After paying $35 - $200 for a shift, Plaintiffs often earn less than minimum wage from tips because Club 180 has inconsistent business.

112)   In fact, Plaintiffs sometimes leave Club 180 with less money than they arrive with.

113)   Dancer Plaintiffs spend many years developing their skills as exotic dancers as well as their social skills with customers. This includes but is not limited to acrobatic pole tricks, complex dancing, and other skills that take years to acquire. Without Plaintiffs' skills and initiative, they are unable to perform their job and earn money at Club 180.

114)   The working relationship between Dancer Plaintiffs and Defendants is ongoing as dancers are required to dance a minimum of 2-3 times per week.

115)   Furthermore, pursuant to their contracts, Defendants maintain a "Promotional License" in "perpetuity" to use Plaintiffs' "photos, videos, snapchat, and dancer name to promote Club 180."

116)   Dancer Plaintiffs spend thousands of dollars on equipment and materials including outfits, jewelry, shoes, makeup, perfume, lotions, hair extensions, all of which are not provided by Club 180.

117)   Dancer Plaintiffs spend thousands of dollars on gym memberships, tanning, cosmetic surgery, and services to improve their looks and performances at Club 180.

118)   Dancer Plaintiffs have their own vehicles and provide their own transportation.

119)   The service rendered by the dancers is integral to Defendants' business; without the Dancer Plaintiffs there would in fact be no business.

120)   Dancer Plaintiffs were never offered the option of being an employee.

121)   Dancers were provided take it or leave it contracts by Matt and Miro labelling them either as "Independent Contractor" or "Traveling Independent Contractor."

14

122)   As a result of the foregoing, Dancer Plaintiffs and all dancers from Club 180 are entitled to wages in the amount of $13.50 per hour for every hour worked at Club 180.

## DEFENDANTS ARE ENGAGED IN A CONSPIRACY

123)   Defendants are engaged in a common enterprise of advertising, marketing, promoting, supporting, and patronizing Club 180 and its employee dancers, and profiting therefrom.

124)   Club 180 dancers advertise and promote "Two Fine Irishmen Bar & Grill" as the location of their enterprise on Instagram where they have 90 posts and 530 followers.

125)   Club 180 also recruits dancers and hundreds of customers from bars like the Voodoo Bar in West Omaha.

126)   Defendants Throwback Empire, LLC dba Ultra Krush Lounge ("Krush") and Tony Pham cross-promote with Club 180 and have held illegal poker games with drugs and Club 180 dancers for years.

127)   These illegal poker games used to be held most Sunday nights at the Throwback Lounge when it was closed to the public.

128)   Defendants jointly promote Club 180, Krush Ultra Lounge, and Voodoo Bar on social media.

129)   Upon information and belief, Defendants arrange and participate in illegal sex and drug parties at other locations.

## JURISDICTION

130)   This court has jurisdiction under Civil RICO, Title VII of the Civil Rights Act of 1964, and the National Labor Relations Act (NLRA) and supplemental jurisdiction over the Nebraska State causes of action. Defendants' arbitration clause in their dancer contracts is unenforceable as it fails to comply with NRS 25-2602.02 (it does not contain the statutorily

required statement by the signature block: THIS CONTRACT CONTAINS AN

ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES), and

because the majority of Plaintiffs (security, neighbors, competitor, and customers) have no

written contract with Defendants.

## VENUE

131)   The activities underlying this complaint arose in this district and the Plaintiffs and

majority of Defendants and witnesses reside in this district.

## PARTIES

### PLAINTIFFS

132)   Chuck Streblow is a former security guard of Club 180.

133)   Sarah Houston is a resident and business owner adjacent to Club 180.

134)   Imagination Industries, Inc. dba The American Dream Bar is an Omaha bar with

showgirls that is a competitor of Club 180.

135)   John Doe Security Guards #1 – 5 are Club 180 former security guards who wish to

remain anonymous.

136)   Jane Doe Dancers #1 – 7 are Club 180 current and former dancers who wish to remain

anonymous.

137)   John and Jane Doe Customers #1 – 11 are Club 180 former customers who wish to

remain anonymous.

## THE CLASS

138)   Pursuant to Federal Rules of Civil Procedure 23, and 28 U.S.C. § 1332, Plaintiff Sarah

Houston brings this action on behalf herself individually and on behalf of all other similarly

situated neighbors of Club 180.

139)   Excluded from the Class are the Defendants, and any firm, trust, corporation, or other entity in which any Defendant is an agent, beneficiary, officer, director, shareholder, or trustee, as well as the agents, representatives, officers, directors, subsidiaries, heirs, successors-in-interest, and assigns of any such excluded party.

140)   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believes that the Class consists of approximately 75 – 100 members.

141)   The identity of every residential homeowner and commercial business owner can be obtained publicly by way of the Douglas County property records online.

142)   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

143)   Commonality includes but is not limited to: (a) Nuisances caused by Defendants to members of the Class via music, vibrations, lights, litter, and motor vehicles; (b) Damages caused by Defendants' nuisances; and (c) Loss of property value and business revenue as a result of Defendants' illegal enterprise.

144)   Since joinder of all members is impracticable, a Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

145)   Because the damages suffered by individual Class members may be small relative to the total damages suffered by the Class, the expense and burden of litigation make it impossible for members of the Class to individually redress the wrongs done to them.

146)   There will be no difficulty in the management of this suit as a class action as Plaintiffs' counsel has experience in such matters.

## DEFENDANTS

147)   Club 180 is an all-nude BYOB strip club located at 18101 R Plaza, Suite 107, Omaha, NE 68135, operating out of the Two Fine Irishmen Bar & Grill.

148)   AM314, LLC is a corporate owner, co-owner, and/or operator or co-operator of Club 180 with a principal office address of 18101 R Plaza, Suite 107, Omaha, NE 68135.

149)   Matthew Longcor ("Matt") is the co-owner and operator of Club 180 with a home address of 4913 South 192nd Ave., Omaha, NE 68135.

150)   Ayden Longcor is a co-owner and co-operator of Club 180 with a home address of 4913 South 192nd Ave, Omaha, NE 68135.

151)   Nicholas Scalise dba DJ Next1 ("Nick") has been an employee and the primary DJ for Club 180 since it opened, maintaining home and business addresses including 13535 Westwood Lane, Omaha, NE 68144 and/or 14105 Sprague Street, Omaha, NE 68164.

152)   Eric Havermann ("Eric") is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents, and employees who openly sells and consumes cocaine at Club 180 and resides at 17725 Lochland Ridge, Council Bluffs, IA 51503.

153)   Ellie Jaeke has been Eric Havermann's girlfriend, partner, agent, recruiter and co-conspirator since at least September 7, 2024.

154)   Evron, Inc. is the owner of the properties where Club 180 is located (18101 and 18021 R Plaza) maintaining a registered office address at 13304 West Center Road, #202, Omaha, NE 68144.

155)   Seven Oaks Investment Corporation is a self-described "Real Estate Owner and Operator" that is a co-owner, operator, and/or manager of properties located at 18101 and

18021 R Plaza, Omaha, NE 68135, with a registered office address of 13304 West Center Road, #202, Omaha, NE 68144.

156) Highland Associates, Inc. is a self-described "Real Estate Investment and Operation" corporation that is a co-owner, operator, and/or manager of properties located at 18101 and 18021 R Plaza, Omaha, NE 68135, with a registered office address of 13304 West Center Road, #202, Omaha, NE 68144.

157) CTS, LLC, is a co-owner, operator, and/or manager of properties located at 18101 and 18021 R Plaza, Omaha, NE 68135, with a registered office address of 13304 West Center Road, #202, Omaha, NE 68144.

158) PTM, Inc., is a co-owner, operator, and manager of properties located at 18101 and 18021 R Plaza, Omaha, NE 68135, with a registered office address of 13304 West Center Road, #202, Omaha, NE 68144.

159) "Landlord Defendants" Evron, Inc., Seven Oaks Investment Corporation and Highland Associates, Inc., CTS, LLC, PTM, Inc., have failed to comply with corporate formalities, thus entitling Plaintiffs to proceed against the corporate shareholders of the Waggener family individually, including but not limited to Nancy and Paul Waggener.

160) Nancy Waggener is a shareholder of all five of the Landlord Corporations and resides at 427 S. 38th Ave., Omaha, NE 68131.

161) Paul Waggener is affiliated with all five of the Landlord Corporations and resides at 2340 County Road P40, Omaha, NE 68112.

162) Bravo1 Security has been the exclusive provider of security guards for Club 180 since it opened, maintaining a principal office address of 2305 S. 123rd Ave., Omaha, NE 68144.

163) Michael Elayan is the sole owner of Bravo1 Security.

164)  Miroslava Kotsan ("Miro") was the co-owner of Club 180 for the majority of its existence.

165)  Stu Sleeper aka Stupac X is an employee of Bravo1 Security and the head security guard at Club 180 at the time this complaint was filed.

166)  David Ekdahl is a manager of Club 180 with a home address of 4723 N. 131st Street, Omaha, NE 68164.

167)  Chad McMahon is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees who resides at 2021 S. 189th Circle, Omaha, NE 68130.

168)  James Pull is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents, and employees who resides at 5901 S. 190th Terrace, Omaha, NE 68135.

169)  Ivon Penny is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents, and employees.

170)  Blaike Koca was an employee, partner, agent, recruiter and/or conspirator of Matt, Eric, Club 180, and its servants, agents, and employees who allegedly quite working at Club 180 on or about March 29, 2025.

171)  Marley Nygaard was a partner, agent, recruiter and/or co-conspirator of Matt, Club 180, and its servants, agents and employees, who was openly allowed to sell and deliver cocaine to Club 180.

172)  Roman is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees who was openly allowed to sell marijuana at Club 180.

173)  Jalil Tookhi is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees, who is openly allowed to sell illegal drugs at Club 180.

20

174)   Malik Harmon is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees, who is openly allowed to sell illegal drugs at Club 180.

175)   Abdul Rahmanzai aka Jamaal is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees, who is openly allowed to sell illegal drugs at Club 180.

176)   David Looloo is a partner, agent and/or co-conspirator of Matt, Club 180, and its servants, agents and employees, who is openly allowed to sell illegal drugs at Club 180.

177)   Eric, Roman, Marley, Jalil, Malik, Abdul and David shall hereinafter be referred to collectively as the "Drug Dealer Defendants."

178)   Tony Pham is the owner of the Ultra Krush Lounge and a promoter and frequent customer of Club 180, referring promoters and hundreds of customers to Club 180, and maintaining a business address of 1402 Howard Street, Omaha, NE 68102.

179)   Breanna Pham-Carr is a partner in Throwback Empire, LLC., with a principal office address of 2505 N 188th Street, Elkhorn, NE 68022.

180)   Throwback Empire, LLC dba Krush Ultra Lounge is an Omaha night club where Defendants have held illegal poker parties with Club 180 dancers at 1402 Howard Street, Omaha, NE 68102.

181)   Bre Manning aka Rose is a Club 180 dancer involved in Defendants' illegal enterprise and one of Matt's primary partners, employees, and/or agents.

182)   Brooke Leibert aka Malibu is a Club 180 dancer involved in Defendants' illegal enterprise and one of Matt's primary partners, employees, and/or agents.

183)   Elena Rhodd-Morales aka Starr is a Club 180 dancer involved in Defendants' illegal enterprise.

184) Christina Craft aka Skyla is a Club 180 dancer involved in Defendants' illegal enterprise.

185) Katherine Tedi Smith aka Sienna is a Club 180 dancer involved in Defendants' illegal enterprise.

186) Echo is a Club 180 dancer involved in Defendants' illegal enterprise.

187) Amira is a Club 180 dancer involved in Defendants' illegal enterprise.

188) Persusia is a Club 180 dancer involved in Defendants' illegal enterprise.

189) Kino is a Club 180 dancer involved in Defendants' illegal enterprise.

190) Jessie is a Club 180 dancer involved in Defendants' illegal enterprise.

191) Indie is a Club 180 dancer involved in Defendants' illegal enterprise.

192) Nea is a Club 180 dancer involved in Defendants' illegal enterprise.

193) Pretty P is a Club 180 dancer involved in Defendants' illegal enterprise.

194) Stormie is a Club 180 dancer involved in Defendants' illegal enterprise.

195) Santana is a Club 180 dancer involved in Defendants' illegal enterprise.

196) Malibu, Starr, Skyla, Sienna, Rose, Skyla, Amira, Persusia, Kino, Jessie, Echo, Indie, Nea, Pretty P, Stormie, and Santana shall hereinafter be referred to collectively as the "Dancer Defendants."

197) Defendants Stormie, Amira, Persusia, Kino, Jessie, Echo, Indie, Nea, Pretty P, and Santana are stage names with real names unknown.

198) Voodoo Lounge, Inc. dba Voodoo Bar owns and operates a bar in West Omaha at 304 North 168th Circle, #210, Omaha, NE 68118.

199) Kyron O'Brien, Sr., owns, operates, and promotes the Voodoo Lounge aka the Voodoo Bar, with a home address of 13974 Hickory Circle, Omaha, NE 68144,

200)   Toast, Inc. is a credit processing service for restaurants used by Defendants with a corporate address of 333 Summer St. Boston, MA 02210.

201)   Costco Wholesale Corporation at 17701 Evans Street, Omaha, NE 68116 provides alcohol to Club 180, with a corporate address of C T Corporation System, 5601 S. 59th Street, Lincoln, NE 68516.

202)   John and Jane Roes #1 – 50 are unidentified partners in Defendants' drug trafficking, prostitution and gambling enterprise.

### FIRST CAUSE OF ACTION

### CIVIL RICO VIOLATIONS

### PROSTITUTION

203)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

204)   Defendants Matthew Longcor, Miroslava Kotsan, Eric Havermann, AM314, LLC, and some of the Dancer Defendants engage and/or have participated in prostitution and/or recruiting innocent young women from the Omaha metropolitan area and grooming them to be prostitutes.

205)   These locations include but are not limited to the Voodoo Bar.

206)   These Defendants also convert hardworking innocent young exotic dancers into drug addicted prostitutes.

207)   Upon information and belief, Defendants have facilitated the prostitution of dancers to customers at Club 180 and other locations in the City of Omaha.

208)   Upon information and belief, Defendants pimp their dancers to customers during operating hours and private parties, including poker parties, in exchange for money and/or cocaine.

209)   Upon information and belief, Defendants pay dancers with cash and/or cocaine to engage in sex acts with customers of Club 180.

210)   Upon information and belief, their prostitution enterprise has grossed hundreds of thousands of dollars since December 2023.

211)   Upon information and belief, Defendants were engaging in similar activities prior to December 2023 at other locations in Omaha.

212)   The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

213)   Club 180 constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

214)   Club 180 has engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5).

215)   The aforementioned Defendants are associated with this enterprise.

216)   The enterprise engages in interstate commerce.

217)   The enterprise's activities effect interstate commerce.

218)   As a result of this prostitution enterprise, Club 180, by and through the aforementioned Defendants while acting within the scope of their duties, did injure Plaintiffs.

219)   Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and did knowingly, conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

220)   Some Jane Doe Dancers were coerced into committing acts of prostitution by Matt, Eric and other Defendants, suffering damages as a result.

221)   When exotic dancers like the Jane Doe Dancer Plaintiffs are offering legal services in an environment where other women are offering illegal oral sex and intercourse, it makes it much harder to compete and law-abiding Dancer Plaintiffs earn much less money as a result.

24

222)   Plaintiff the American Dream has lost dancers, customers, and income due to Plaintiffs'
prostitution.

223)   The Neighbor Defendants have suffered lost property value to their homes and businesses
due to Defendants' prostitution enterprise.

224)   As a direct and proximate result of Defendants' aforementioned racketeering activities,
Plaintiffs have been injured and are entitled under 18 U.S.C. 1964(c) to treble damages,
attorney's fees, and all costs of bringing this action.

225)   Wherefore, the Plaintiff Neighbors, Jane Doe Dancer Plaintiffs, and American Dream
request damages in the amount of lost earnings and lost property value as a result of
Defendants' prostitution enterprise.

## SECOND CAUSE OF ACTION

### CIVIL RICO VIOLATION

### SEX TRAFFICKING

226)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

227)   Defendants, including Matt, Miro, Eric, Ellie, Blaike, AM314, LLC, and their co-
conspirators, have facilitated sex trafficking of young women by recruiting them at local
establishments in Omaha including the Voodoo Bar, and across state lines in Iowa at the
Spearmint Rhino.

228)   Defendants engage in the acquisition of prostitutes at other local bars in Omaha.

229)   Defendants pimp prostitutes to customers at Club 180 and other locations, including
high-stakes illegal poker parties.

230)   Defendants travel with these young women across state lines for purposes of prostitution
in states including but not limited to Florida and Nevada.

25

231) On one trip to Florida, Eric beat up a dancer Skyla who refused to have sex with him, which is documented with photos and text messages.

232) The aforementioned activities violate 22 U.S.C. § 7102.

233) The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

234) Club 180 constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

235) Club 180 has engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5).

236) The aforementioned Defendants are associated with this enterprise.

237) The enterprise engages in interstate commerce.

238) The enterprise's activities effect interstate commerce.

239) Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and did knowingly, conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

240) As a direct and proximate result of the aforementioned Defendants' racketeering activities, Plaintiffs have been injured and are entitled under 18 U.S.C. 1964(c) to treble damages, attorney's fees, and all costs of bringing this action.

241) As a result of the foregoing, the Plaintiffs who are legitimate exotic dancers at Club 180 earn far less money because a large percentage of gross revenue is channeled toward the Defendants' sex trafficking, leaving far less money for stage tipping and private dances to be earned by the Jane Doe Plaintiffs.

242) The Neighbor Defendants have suffered lost property value to their homes and businesses due to Defendants sex trafficking enterprise and Plaintiff American Dream has lost dancers, customers and revenue.

26

243)   Wherefore, the Jane Doe Dancer Plaintiffs, Neighbor Plaintiffs, and the American Dream request damages in the amount of lost earnings and lost property value as a result of Defendants' sex trafficking.

### THIRD CAUSE OF ACTION

### CIVIL RICO

### DRUG TRAFFICKING

244)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

245)   Defendants Matt, Eric, AM314, LLC, and their cocaine dealers including but not limited to Defendants Marley Nygaard ("Marely"), Malik Jarmon ("Malik"), Abdul Rahmanzai aka Jamaal ("Jamaal"), Jalil Tookhi ("Jalil") and David Looloo ("David") distribute and consume cocaine at Club 180 in violation of the Controlled Substances Act and Nebraska State law.

246)   Upon information and belief, the Drug Dealer Defendants Matt, Eric, Marley, Malik, Jamaal, Jalil, and David have additional undisclosed partners.

247)   The Drug Defendants obtain large quantities of cocaine from sources outside the State of Nebraska who deliver it to Defendants at Club 180 and other locations in the Omaha Metropolitan area.

248)   Upon information and belief, the aforementioned Defendants allow and encourage cocaine consumption and trafficking at Club 180 in the restrooms, the back room, and a blind spot in the hallway.

249)   On New Year's Eve of 2024, many people were openly consuming cocaine at Club 180.

250)   There are videos of Matt providing cocaine to customers at Club 180.

27

251)  Oftentimes when cocaine is being consumed, Matt will instruct Club 180 security guards to ignore it and look the other way.

252)  Plaintiff Chuck Streblow quit as head security guard on March 5, 2025, when Defendant Matt gave a female customer cocaine to snort in the front of the club in plain view of customers and security cameras.

253)  The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

254)  Club 180 constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

255)  Club 180 has engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5).

256)  The aforementioned Defendants are associated with this enterprise.

257)  The enterprise engages in interstate commerce.

258)  The enterprise's activities effect interstate commerce.

259)  Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and did knowingly, conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

260)  As a direct and proximate result of the aforementioned Defendants' racketeering activities, Plaintiffs have been injured and are entitled under 18 U.S.C. 1964(c) to treble damages, attorney's fees, and all costs of bringing this action.

261)  Plaintiffs have sustained damages because cocaine is used to trade for sex acts at Club 180, which make it more difficult for legitimate exotic dancers like the Jane Doe Plaintiffs to earn monetary tips.

262)  It also makes it more difficult for Plaintiff the American Dream to compete as they do not allow the sale or consumption of illegal drugs including cocaine.

28

263)   Some Jane Doe Plaintiffs were introduced to cocaine by Defendants, and it has ruined their lives.

264)   Some Club 180 Dancer Defendants are so hooked on drugs, that they are willing to tolerate the physical and mental abuse of Defendants Matt, Eric and their friends just so they can get their cocaine.

265)   Some of these drug addicted dancers have even said they will lie to protect Matt and Eric from criminal prosecution.

266)   Wherefore, the Jane Doe Dancer Plaintiffs request damages in the amount of lost earnings, together with physical, emotional and mental damages caused as a result of Defendants' drug trafficking enterprise, the Residential and Commercial Neighbor Plaintiffs request damages for lost property value, and Plaintiff the American Dream requests damages for lost income.

## FOURTH CAUSE OF ACTION

### CIVIL RICO

### WIRE FRAUD

267)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

268)   Defendants' website publications, social media posts and messages, text messages, and emails constitute wire transactions.

269)   Matthew Longcor, Miroslava Kotsan, Eric Havermann, Ellie Jaeke, AM314, LLC, and their co-conspirators use their website (www.club-180.com), text messages, and emails to solicit prostitutes under the guise that they will be performing legally as exotic dancers.

270)   After recruiting new girls under the false belief that they are dancers, the aforementioned Defendants and their co-conspirators groom dancers for prostitution and sex trafficking.

271)   The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

272)   Club 180 constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

273)   Club 180 has engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5).

274)   The aforementioned Defendants are associated with this enterprise.

275)   The enterprise engages in interstate commerce.

276)   The enterprise's activities effect interstate commerce.

277)   Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and did knowingly, conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

278)   As a direct and proximate result of the aforementioned Defendants' racketeering activities, Plaintiffs have been injured and are entitled under 18 U.S.C. 1964(c) to treble damages, attorney's fees, and all costs of bringing this action.

279)   The solicitation and promotion of prostitutes by wire fraud damages Plaintiffs, who are legitimate exotic dancers forced to compete with prostitutes offering illegal sex acts at Club 180.

280)   Wherefore, the Jane Doe Dancer Plaintiffs and the American Dream request damages in the amount of lost earnings as a result of Defendants' wire fraud.

## FIFTH CAUSE OF ACTION

## CIVIL RICO

## ILLEGAL GAMBLING

281)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

282) Upon information and belief, Defendants Tony Pham, Breanna Pham-Carr, Club 180 dancers and their co-conspirators, and John Roe Defendants held illegal poker games, traditionally on Sundays at Throwback Empire, LLC dba the Throwback Lounge (now known as Krush Ultra Lounge) where cocaine was sold or traded for sex, dancers were pimped out, and high-stakes illegal poker was played.

283) The aforementioned Defendants have held illegal poker games at other locations with Club 180 dancers since December 2023 and for some time prior thereto.

284) The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

285) Throwback Empire, LLC constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

286) Throwback Empire, LLC has engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5).

287) The aforementioned Defendants are associated with this enterprise.

288) The enterprise engages in interstate commerce.

289) The enterprise's activities effect interstate commerce.

290) Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and did knowingly, conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

291) As a direct and proximate result of the aforementioned Defendants' racketeering activities, Jane Doe Plaintiff Dancers and the American Dream have been injured and are entitled under 18 U.S.C. 1964(c) to treble damages, attorney's fees, and all costs of bringing this action.

292)   Club 180 and the American Dream have had difficulty finding dancers on Sunday nights

(or any night an illegal gambling event is held) because many of their dancers attend these

gambling parties with drugs and prostitution.

293)   As a result of the foregoing, Jane Doe Plaintiffs, and the Security Guards have suffered

damages in lost income and for the Jane Doe dancers who attended the events, damages for

assault, sexual harassment, and wages.

294)   Plaintiff American Dream has suffered damages through Defendants' acts of luring away

dancers and customers for illegal gambling events and activities associated with Club 180.

## SIXTH CAUSE OF ACTION

### CIVIL RICO

### WITNESS & ATTORNEY TAMPERING

295)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

296)   To protect his enterprise Club 180, Defendant Matthew Longcor, acting individually and

on behalf of AM314, LLC, engaged in witness tampering by threatening to send people to

the homes of witnesses and parties in this action to cause them physical harm and prevent

them from testifying.

297)   These threats were made to Plaintiff Chuck Streblow before Matt realized that Chuck was

a Plaintiff in this case.

298)   Matt made threats by text message and in person to employees at Club 180 and other

individuals, all for the purpose of scaring and intimidating Plaintiffs, Plaintiffs' counsel, and

witnesses in this case.

299)   Upon information and belief, Matt has threatened some or all of the Jane Doe Dancer

Defendants for the purpose of intimidating and silencing them.

300)    Defendant Eric Havermann, acting individually and on behalf of AM314, LLC, Matthew
        Longcor, and all other Defendants, called Plaintiffs' attorney Evan Spencer on March 27,
        2025, at 6:00 pm and essentially threatened his life.

301)    A police report was filed with the Douglas County Sheriff's Office on March 31, 2025, at
        approximately 4:00 pm for the crime of Intimidation by Telephone Call (report #:
        DCSO2025008565) against Mr. Havermann.

302)    Defendant Bre Manning aka Rose unknowingly told Plaintiff Chuck Streblow in March
        2025, that she would "destroy" and "go after anyone" involved in the lawsuit against Club
        180, for the purpose of deterring Plaintiffs and witnesses from participating in the lawsuit.

303)    The aforementioned Defendants are persons within the meaning of 18 U.S.C. § 1962(3).

304)    Club 180 constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

305)    Club 180 has engaged in a pattern of racketeering activity within the meaning of 18
        U.S.C. 1961(5).

306)    The aforementioned Defendants are associated with this enterprise.

307)    The enterprise engages in interstate commerce.

308)    The enterprise's activities effect interstate commerce.

309)    Contra 18 U.S.C. § 1962(c), the aforementioned Defendants did knowingly agree to, and
        did knowingly, conduct and participate in the conduct of the affairs of the enterprise through
        a pattern of racketeering activity proscribed by 18 U.S.C. § 1961(1).

310)    As a direct and proximate result of the aforementioned Defendants' racketeering
        activities, Plaintiffs have been injured and are entitled under 18 U.S.C. 1964(c) to treble
        damages, attorney's fees, and all costs of bringing this action.

311)   As a result of the foregoing, many prospective Dancer Plaintiffs and witnesses have been discouraged from joining or otherwise participating in this litigation, including many of the Club 180 dancers and other Club 180 employees.

312)   These threats have also caused Plaintiff Chuck Streblow and Plaintiff Security Guards severe emotional distress, as they fear for their lives and safety of themselves and their families.

313)   Wherefore, Plaintiffs demand monetary damages and request an order prohibiting Defendants from future witness tampering.

## SEVENTH CAUSE OF ACTION

### TITLE VII CIVIL RIGHTS ACT OF 1964

314)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

315)   Defendants including Matt, Eric, and AM314, LLC, violated the Civil Rights Act of 1964, through gender discrimination and discrimination based upon race or national origin.

316)   Some Jane Doe Dancer Plaintiffs were discriminated against on the basis of their ethnicity or national origin.

317)   The dancer Plaintiffs were discriminated against on the basis of their gender and were treated differently than the male employees of Club 180.

318)   Some female employees were pimped out, sexually assaulted, and forced to use drugs and alcohol while the male employees were not subjected to such mistreatment.

319)   The dancer Plaintiffs were subjected to crude sexual language and unwanted touching by Defendants whereas the male employees were not subjected to any sexual harassment.

320)   A male security guard, who is married and religious, was sexually assaulted by a female dancer, and when the owner Matt was informed, he took no action.

321)   Male employees were provided with 1099 tax forms while female employees were

provided with W-9 tax forms.

322)   Female employees were fined monetarily for not coming to work on demand when this

policy was never used against male employees or contractors.

323)   An African-American DJ was discriminated against by Eric Havermann on the basis of

his ethnicity and ultimately fired without reasonable cause.

324)   As a result of the foregoing, Plaintiffs suffered damages arising from their gender, race,

and ethnicity.

**EIGHTH CAUSE OF ACTION**

**NLRA VIOLATIONS**

325)   Jane Doe Dancer Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth

herein.

326)   Pursuant to the NLRA, employees are entitled to be paid minimum wage, regardless of

their characterization of work status by their employer.

327)   Due to the dancer contracts, Club 180 group chat, and strict oral instructions given by the

owners, Club 180 dancers are in fact employees.

328)   This is largely based upon the fact that Club 180 dancers are not given an option to be an

employee.

329)   Defendants exercised control over the Jane Doe Dancer Plaintiffs such that they are

legally considered employees.

330)   Jane Doe Dancer Plaintiffs are therefore entitled to minimum wages as employees from

December 2023 to date in the amount of $13.50 per hour.

## NINTH CAUSE OF ACTION

### NEBRASKA FAIR EMPLOYMENT PRACTICES ACT

331)   Jane Doe Dancer Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

332)   Multiple Jane Doe Plaintiffs were fired by Matthew Longcor in retaliation for refusing to perform sex acts upon him or his friends.

333)   Jane Doe Plaintiffs were subjected to gender discrimination as they were subjected to sexual harassment while the male employees, including but not limited to security and DJs were not discriminated against.

334)   As a result of Defendants' retaliatory firing of Jane Doe Dancer Plaintiffs, said Plaintiffs suffered monetary damages in the amount of unpaid wages.

## TENTH CAUSE OF ACTION

### ASSAULT AND BATTERY

335)   Jane Doe Dancer Plaintiffs and Security Guard Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

336)   Dancer Plaintiffs were assaulted and battered by Defendants on a regular basis at Club 180 and at after-hours parties sponsored by Club 180.

337)   Dancer Sienna reported that a woman was raped in the restroom recently by Defendant Matthew Longcor and that there was at least one witness.

338)   Dancer Desire was assaulted by another dancer Starr in the restroom and a video of the assault was circulated on Snapchat.

339)   A dancer Skyla was beaten up by Eric on a trip to Florida with Matt and Miro when she refused his sexual advances.

36

340)  Jane Doe Dancer Plaintiffs were smacked on their buttocks and other naked body parts.

341)  Jane Doe Dancer Plaintiffs were forced to drink alcohol against their will.

342)  Jane Doe Dancer Plaintiffs were forced to use cocaine against their will.

343)  Jane Doe Dancer Plaintiffs were sexually assaulted by Defendants while in black outs and/or after losing consciousness.

344)  Chuck Streblow and the other Security Guard Plaintiffs were assaulted and battered by dancers and customers due to the unsafe work environment created by Defendants.

345)  Jane Doe Dancer Plaintiffs and Security Guard Plaintiffs request damages for injuries suffered as a result of these assaults.

## ELEVENTH CAUSE OF ACTION

## SEXUAL HARASSMENT

346)  Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

347)  Jane Doe Dancer Plaintiffs, Chuck Streblow and other Plaintiff Security Guards, were sexually harassed by Defendants since Club 180 opened in December 2023.

348)  Such harassment includes but is not limited to a hostile work environment created and maintained by Defendants as well as quid pro quo sexual harassment.

349)  These Plaintiffs were required watch and endure the sexual assault and battery of dancers and the demeaning and insulting of women.

350)  These Plaintiffs were subjected to crude sexual language and inappropriate conduct.

351)  One Security Guard was sexually assaulted by a dancer and the Dancer Defendants often behaved in a sexually inappropriate manner around the Security Guard Plaintiffs.

37

352)   Dancer Plaintiffs were subjected to quid pro quo sexual harassment by being forced to engage in sexual acts in exchange for keeping their job and/or receiving money and/or cocaine.

353)   Plaintiff Dancers and Security Guards request damages for injuries suffered as a result of sexual harassment.

## TWELFTH CAUSE OF ACTION

### FALSE ADVERTISING & DECEPTIVE PRACTICES

354)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

355)   Defendants falsely advertise Club 180 as an "EXCLUSIVE PRIVATE CLUB" on their website and social media when in fact they are open to the public.

356)   There are no private memberships at Club 180 as some customers merely pay a $20 entry fee while many are let in for free.

357)   Defendants' have operated as the Two Fine Irishmen Bar & Grill since December 2023 and they promote Club 180 as Two Fine Irishmen Bar & Grill on the internet, when this bar and grill has been closed for nearly two years.

358)   The purpose of this false advertising is to fool and deceive customers and the public into believing that the strip club 180 is still Two Fine Irishmen Bar & Grill.

359)   As a result, Defendants should be ordered to take down their website, stop advertising or referencing Two Fine Irishmen Bar & Grill, remove their Two Fine Irishmen Bar & Grill sign from their property, and cease all advertising and marketing.

## THIRTEENTH CAUSE OF ACTION

### THEFT

360)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

361)   Defendants stole money from the Plaintiffs by intentionally shorting them on single dollar bills during transactions.

362)   Plaintiffs have obtained numerous video recordings of these thefts.

363)   After receiving wrapped 100 dollars bundles from the bank, Defendants including Matt and Ayden, would steal 10 singles (10%) from each bundle.

364)   After counting singles in their money counter, Defendants including Matt and Ayden, would steal 10 singles (10%) from each bundle.

365)   After stealing 10% from these bundles, Defendants would give customers and dancers $90 bundles wrapped with a $100 label while falsely claiming it was $100.

366)   Upon information and belief, Defendants stole $10 from every $100 bundle of one-dollar bills.

367)   Jane Doe Plaintiff Dancers and Customers routinely complained about being shorted and the response of Defendant Ayden Longcor was that, "you can't tell me that other clubs don't do that."

368)   Upon information and belief, an employee was paid with six hundred-dollar bundles of one's and when the money was counted at the bank prior to deposit, it was revealed that there was only $540.

369)   Jane Doe Plaintiff Dancers and Customers demand an accounting of all money that was stolen.

370)   Plaintiffs estimate that Defendants stole approximately $100,000 from Plaintiffs.

371)   As a result of the foregoing, Jane Doe Dancer Plaintiffs and Customer Plaintiffs are entitled to an accounting and to damages in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

## NEGLIGENCE

372) Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

373) The Landlord Defendants were negligent, careless and reckless in allowing their property to serve as a home for drugs, sex trafficking, underage alcohol consumption, and the unlicensed sale of alcohol, while receiving rent payments from the tenant Defendants.

374) Upon information and belief, the Landlord Defendants were warned about the illegal activities taking place shortly after Club 180 opened, yet they took no action to evict their tenants.

375) The Landlord Defendants were also negligent in allowing elderly Defendant Nancy Waggener to manage their properties, including 18101 R Plaza in Omaha.

376) Defendants Bravo1 Security and Mike Elayan were negligent in providing security services to Defendants at Club 180, in spite of being aware of Defendants' illegal activities; without Bravo1 Security or another security company, Defendants could not have operated Club 180.

377) Defendant Costco was negligent, careless, and reckless in selling co-Defendants large amounts of alcohol over the past 15 months for illegal resale at Club 180.

378) Defendants were negligent in allowing minors under 21, some as young as age 17 or younger, to consume large amounts of alcohol at Club 180.

379) Defendants were negligent in getting intoxicated at Club 180 before driving to other destinations from Club 180.

380) Defendants were negligent in allowing Club 180 dancers to consume alcohol at Club 180 and drive home or to other destinations while intoxicated.

381)   Defendant Toast, Inc. was negligent, careless and reckless in providing credit card services to Club 180 for over a year under the false impression that it was a restaurant and not a strip club.

382)   Defendant Voodoo Bar and its owners were negligent, careless, and reckless in allowing Club 180 to recruit dancers and customers at their bar.

383)   Defendant Nick was negligent in playing Club 180 music too loud, such that it disturbs the entire neighborhood, especially 10:00 pm to 5:00 am on Friday and Saturday nights.

384)   As a result of the negligence of the aforementioned Defendants, Club 180 has been permitted to operate since December 2023, at the expense of its employees and neighbors.

385)   As a result of the foregoing, Plaintiffs have sustained damages in an amount to be determined at trial.

## FIFTEENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

386)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

387)   Through a custom and practice abuse, including yelling, physical abuse, sexual abuse and emotional abuse, the Jane Doe Dancers suffered severe emotional distress at the hands of Defendants, including Matt, Eric, Chad, Jim and their male friends and customers.

388)   Jane Doe Plaintiffs were sexually assaulted during private dances, one customer was raped in a restroom and witnessed by a dancer, and a dancer was beaten up by a Defendant while being trafficked interstate to Florida for sex without consent.

389)   Plaintiff Chuck Streblow and other Security Guards suffered damages by being exposed to this toxic, unprofessional environment.

390)   Some Jane Doe Plaintiff Dancer and Security Guards quit Club 180 due to emotional distress.

391)   As a result of the foregoing, the Jane Doe Dancers and Security Guard Plaintiffs are entitled to compensatory damages.

## SIXTEENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

392)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

393)   The loud noises and activities at Club 180 caused all residential neighbors' emotional distress.

394)   Defendants were negligent, careless, and reckless in creating an unsafe work environment.

395)   Through a custom and practice abuse, including yelling, physical abuse, sexual abuse and emotional abuse, the Jane Doe Dancers and Plaintiff Security Guards suffered severe emotional distress at the hands of Defendants, including Matt, Eric and their male friends and customers.

396)   Jane Doe Plaintiffs were sexually assaulted during private dances, one customer was raped in a restroom and witnessed by a dancer, and a dancer was beaten up by a Defendant while being trafficked interstate to Florida for sex without consent.

397)   Jane Doe Plaintiff Dancers and Club 180 Security Guards also worked in fear due to Defendants' policy of allowing gang members and drug dealers to enter Club 180 with weapons including guns and knives.

398)   Some Jane Doe Plaintiff Dancer and Security Guards quit Club 180 due to emotional distress.

399)  As a result of the foregoing, the Neighbor Plaintiffs, Jane Doe Dancers and Plaintiff

Security Guards are entitled to compensatory damages.

## SEVENTEENTH CAUSE OF ACTION

### BREACH OF CONTRACT

400)  Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

401)  Defendant AM314, LLC and other Defendants have breached numerous provisions of

their written contracts with the Jane Doe Dancer Plaintiff dancers and their oral contracts

with the Plaintiff Security Guards.

402)  Paragraph 18 of the Plaintiffs' contracts states "ILLEGAL ACTIVITIES PROHIBITED"

yet Defendants are routinely engaged in illegal activities, including cocaine sale and use,

prostitution and sex trafficking, and numerous other crimes enumerated in this Complaint.

403)  Paragraph 19 contains an "ALCOHOL" policy which Defendants' breach by allowing

and encouraging and forcing dancers to consume large amounts of alcohol.

404)  Paragraph 21 states "OUTSIDE CONTACT PROHIBITED" but Defendants breach this

provision by bringing Club 180 dancers to after hours parties at other locations.

405)  Paragraph 25 contains a "30-DAY DISPUTE RESOLUTION POLICY" which

Defendants do not follow; they simply fire dancers without following their own policy.

406)  Paragraph 32 contains a "DEFAMATION PROHIBITED" provision that Defendants

have violated as alleged in a prior cause of action.

407)  Wherefore, the Jane Doe Plaintiff Dancers request damages and equitable relief for

Defendants' breaches of contract.

## EIGHTEENTH CAUSE OF ACTION

### UNFAIR COMPETITION

### Neb. Rev. Stat. §59-1602

408) Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

409) By providing customers with prostitution and drugs, Defendants are engaging in unfair competition to the gentlemen's clubs in the Omaha metropolitan area, including Plaintiff the American Dream, that do in fact follow the law, as well as the Jane Doe Plaintiff dancers who offer legal services.

410) Defendants recruited 15 dancers from the American Dream and others from amongst the other five local strip clubs when they opened in December 2023.

411) Since opening in December 2023, Defendants have artificially inflated income for the Club 180 dancers by "tipping" the dancers thousands of dollars to give the false impression that Club 180 is a flourishing business.

412) Defendants offer dancers a place to do drugs and consume alcohol, as well as allowing dancers ages 18 – 20 to consume alcohol.

413) Defendants do not have a liquor license, yet they buy, sell, and give away alcohol at all times of the night and early morning, making it difficult for Plaintiff the American Dream who legally sells alcohol to compete.

414) Defendants provide their dancers with cocaine and other drugs and allow consumption of illegal drugs at Club 180.

415) Defendant Club 180 has a legal occupancy of only 85, yet they allow over 200 customers at any given time.

416) Since Defendants do not follow the law, it makes it far more difficult for Plaintiff the American Dream and individual dancers to compete in the marketplace.

417) Wherefore, Plaintiff the American Dream and the Jane Doe Dancers request monetary damages in an amount to be determined at trial.

## NINETEENTH CAUSE OF ACTION

### NUISANCE

418) Plaintiff Sarah Houston ("Sarah") repeats and reiterate all previous paragraphs as if fully set forth herein.

419) Sarah has lived adjacent to the current site of Club 180 for 35 years and owns two bars in the neighborhood.

420) Club 180 has created a public nuisance for approximately 40+ hours per week from 8:00 pm – 5:00 am or later, Wednesday – Sunday nights for nearly 16 months.

421) Defendants have received dozens of noise complaints from the Omaha Police Department yet refused to lower their music and/or soundproof their building.

422) Defendants individually, and their friends and customers, drive hundreds of motor vehicles and motorcycles in and out of the Club 180 parking lot every week between, particularly after midnight, disturbing Plaintiff Sarah and the entire neighborhood.

423) Defendants maintain an outdoor smoking area with lights that disturb the neighbors.

424) Defendants and their friends and customers litter the Club 180 parking lot and local properties with beer bottles, cigarette butts, cans and other garbage and debris, including soiled condoms.

425) As a result of the foregoing secondary effects and others, the Neighbor Plaintiff's property value and that of their Class has been collectively lowered by millions of dollars

and Plaintiffs' businesses and those of the commercial Class have lost millions of dollars in income in an amount to be determined at trial.

426)   The Neighbor Plaintiffs have also suffered damages in the personal disturbances and lost use and enjoyment of their properties due to Defendants' loud music played from 9:00 pm – 5:00 am five nights per week.

## TWENTIETH CAUSE OF ACTION

### CONSPIRACY

427)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

428)   Defendants have engaged in a conspiracy to commit prostitution, sex trafficking, drug trafficking, wire fraud, gambling and other crimes and torts at Club 180 and other locations, causing Plaintiffs collective damages in excess of $10,000,000.

429)   Defendants are jointly and severally liable for all damages sustained by Plaintiffs.

## REQUEST FOR DECLARATORY RELIEF

430)   Plaintiffs repeat and reiterate all previous paragraphs as if fully set forth herein.

431)   Due to all the criminal activities and torts committed by Defendants, Plaintiffs respectfully request the following declaratory relief:

    a.   An order from this Court permanently closing Club 180;

    b.   An order prohibiting Defendants Matthew Longcor, Eric Havermann, Chad McMahon, or Tony Pham from opening another bar, night club, or gentlemen's club in the State of Nebraska;

    c.   An order requiring Defendants to provide an accounting of all financial activities since December 2021; and

    d.  An order prohibiting Defendants from organizing or participating in illegal poker

        games in the State of Nebraska.

## **PRAYER FOR RELIEF**

1) Damages for battery and sexual assault to Jane Doe Dancers.

2) Damages for sexual harassment including the creation of a hostile work environment and quid pro quo to Club 180 employees.

3) Damages for infliction of emotional distress to Club 180 employees and neighbors;

4) Damages for lost wages in an amount to be determined at trial at $13.50 per hour per Jane Doe Dancer.

5) Collective monetary damages in the amount of $10,000,000 plus treble damages for financial losses, property damage and emotional, mental and physical damages suffered by the Club 180 Neighbors, the American Dream, the Jane Doe Dancer Plaintiffs, and the Security Guard Plaintiffs.

6) Plaintiffs' attorneys' fees in accordance with the parties' "LOSER PAYS" contractual agreement.

                          Respectfully Submitted,

April 1, 2025

                        By: /s/ *Evan Spencer*

Evan Spencer
Evan Spencer Law, PLLC
305 Broadway, 7th Floor
New York, NY   10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

ATTORNEY FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 1st Day of April, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

_/s/Evan Spencer_
Evan Spencer, Esq.