Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI250002771
Transaction ID: 0024016831
Filing Date: 10/17/2025 02:38:20 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| KYRON O'BRIEN AND VOODOO LOUNGE, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>EVAN SPENCER, EVAN SPENCER LAW, PLLC, CHUCK STREBLOW, SARAH HOUSTON, IMAGINATION INDUSTRIES, INC. dba THE AMERICAN DREAM BAR, and ANY OTHER CLAIMED ASSOCIATES, CLIENTS AND OTHER PERSONS ACTING IN CONCERT WITH EVAN SPENCER, IDENTITIES UNKNOWN.<br><br>Defendants. | Case No. 25-2771<br><br>MOTION FOR CONTEPMT or in the *alternative,* TO VACATE AND ENFORCE SETTLEMENT |

COMES NOW, Plaintiff by and through the undersigned counsel of record and for Plaintiff's motion for contempt or in the alternative, Motion to Vacate and Enforce Settlement, states as follows:

1. On September 9, 2025, a hearing was scheduled for Plaintiff's Motion to Enforce Settlement at the Douglas County courthouse.
2. As an alternative to Plaintiff's motion to enforce settlement, and based upon certain written and oral representations of Mr. Spencer made through his counsel, Eric Wells, the Parties stipulated to a joint dismissal with prejudice, whereby the Plaintiff would dismiss case no. CI 25-2771 in Douglas County (the "State Court Case") and Defendant

would dismiss case no. 8: 25-CV-00241-JFB-RCC in the United States District Court District of Nebraska (the "Federal Case").

3. Namely, Mr. Wells' communicated that although Mr. Spencer would not sign the original global settlement agreement and release, he was "ready to be done" and "would not sue anyone [from our client's side]" including myself and my firm – something that was confirmed multiple times before agreeing to the dismissal process in lieu of the original settlement. In fact, the only reason stated for not dismissing myself and my firm from the complaint process was "[Mr. Spencer] says because you are not a named party, he cannot dismiss you, but he will not be suing you."
4. Subsequently, and after all dismissals with prejudice were entered, Evan Spencer Law, PLLC and Evan Spencer, filed a duplicative lawsuit, this time confusingly against Connor Orr and The Orr Law Group, PLLC ("Counsel") in the United States District Court Southern District of New York case no. 1:25-cv-7665 (the "New York Case") mere hours after the dismissal was entered in this Court and Nebraska Federal Court. Attached hereto is "Exhibit A" (hereinafter the "New Case").
5. In The New York Case, Evan Spencer Law, PLLC states causes of action for 1) abuse of process, 2) Tortious interference with contracts, 3) Violations of New York anti-slapp law, 4) defamation by libel & slander, and 5) negligence.
6. Notably, the "background" section of the New York Case is nearly a direct copy and paste of the facts plead in case no. 8: 25-CV-00241-JFB-RCC in the United States District Court District of Nebraska.
7. Evan Spencer Law, PLLC's filing of a new case on the same basis as the Federal Case as against Plaintiff's Counsel and Counsel's firm in New York is not only improper and

retaliatory but in direct contradiction of this Courts order and is contemptuous under Neb. Rev. Stat. § 25-2121.

8. This Court entered an order dismissing the case and all claims and counterclaims with prejudice.
9. The United States District Court District of Nebraska entered an order dismissing Plaintiffs (in this case) as defendants in the Federal Case with prejudice.
10. Defendants' actions are in direct violation of this Court's Order dated September 12, 2025.
11. Defendants' entire set of actions against Plaintiffs, as well as their bad faith actions in the dismissal process have been frivolous, without any merit, have resulted in unnecessarily expanding the pleadings in this case and the related Federal case, were ill-intended, not based in fact nor reality and never motivated by any sense of any rational justification in violation of Nebraska Revised Statute § 25-824.
12. Plaintiffs have incurred attorneys fees and costs in the bringing of this action, this motion, the settlement process and Defendants have operated in bad faith, have acted deceitfully during negotiations, have clearly intended to harass Plaintiffs, delay dismissals, and have acted at all times on meritless grounds throughout the entire process trying to extort monies from Plaintiffs and lawyers alike. Therefore, in addition to holding Mr. Spencer and his law firm in contempt of court, he should be assessed all of such costs which, at this time, are in excess of $42,000.00.

WHEREFORE, Plaintiff prays this Court enters an order holding Defendant in contempt and ordering the following:

a. To dismiss case no. 1:25-CV-07665-LJL;
b. Ordering Defendant to spend jail time;
c. Ordering reasonable fines;
d. Ordering Defendant to pay attorneys fees and all costs associated with bringing this motion;

e. All other relief that may be equitable and just.

13. In the alternative, if this Court is not inclined to hold Defendant in contempt of court, Plaintiff moves this court for an order vacating the Court Order dismissing all claims with prejudice as well as granting Plaintiffs' previously filed Motion to Enforce Settlement, thereby effectively placing Plaintiffs back into the position they should have been prior to the deceitful representations of Mr. Spencer made through counsel to obtain the dismissals they did.
14. A district court has the inherent authority vacate or modify a judgment or order where fraud practiced by the successful party. Neb. Rev. Stat. § 25-2001.
15. Plaintiff was fraudulent induced in to dismissing the Federal Case and stipulating to a dismissal of this case.
16. Defendant made representations to Plaintiff's counsel that Defendant did not want to pursue his Federal Case claims any further and that he would dismiss those claims.
17. Furthermore, Defendant made representations to Plaintiff's Counsel that Defendant would not sue Plaintiff's counsel or counsel's firm.
18. Less than twenty-four hours after this Court and the court in the Federal Case signed the orders of dismissal Defendant had filed a new lawsuit in New York federal court against Plaintiff's Counsel and firm.
19. Defendant, by fraud, obtained an order of dismissal in this case by representing to Plaintiff's Counsel that Defendant would not sue Counsel and ultimately Defendant sued Plaintiff's Counsel utilizing claims and counterclaims that this Court previously dismissed, with prejudice.
20. Defendants' entire set of actions against Plaintiffs, as well as their bad faith actions in the dismissal process have been frivolous, without any merit, have resulted in unnecessarily expanding the pleadings in this case and the related Federal

case, were ill-intended, not based in fact nor reality and never motivated by any sense of any rational justification in violation of Nebraska Revised Statute § 25-824.

21. Plaintiffs have incurred attorneys fees and costs in the bringing of this action, this motion, the settlement process and Defendants have operated in bad faith, have acted deceitfully during negotiations, have clearly intended to harass Plaintiffs, delay dismissals, and have acted at all times on meritless grounds throughout the entire process trying to extort monies from Plaintiffs and lawyers alike. Therefore, in addition to holding Mr. Spencer and his law firm in contempt of court, he should be assessed all of such costs which, at this time, are in excess of $42,000.00.

WHEREFORE, in the alternative to the contempt requests for relief, Plaintiffs pray for an order from this Court vacating the dismissal and for entrance of an order on the motion to enforce settlement, this time with attorneys' fees for Mr. Spencer's fraudulent, deceitful, bad faith and frivolous actions in unnecessarily delaying and abusing the civil process for ill-intended reasons.

Dated this 17th day of October, 2025

KYRON O'BRIEN AND VOODOO LOUNGE, INC., Plaintiffs

BY: *<u>/s/ Connor W. Orr</u>*

Connor W. Orr #26454
The Orr Law Group, PLLC
9375 Burt Street, Suite 200
Omaha, NE 68114

Phone: (402) 408-6488
Email: connor@orrlawgrp.com

NOTICE OF HEARING

You are hereby notified that the Plaintiff will call up for hearing its MOTION FOR CONTEPMT or in the *alternative,* TO VACATE AND ENFORCE SETTLEMENT before the Honorable Judge T. Olon Engleman, District Court Judge, Douglas County, Nebraska on the 29th day of October, 2025 at 3:30 pm in Courtroom 412, 1701 Farman Street, Omaha, Nebraska.

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **EVAN SPENCER LAW, PLLC,**<br><br>**Plaintiff,**<br><br>**- versus -**<br><br>**CONNOR ORR and ORR LAW GROUP, PLLC,**<br><br>**Defendants.** | **Case No.: 1:25-cv-7665**<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

**<u>INTRODUCTION</u>**

This anti-SLAPP lawsuit for abuse of process, tortious interference with contracts, defamation and negligence, arises out of a frivolous and malicious lawsuit filed by Defendants against Plaintiff and Plaintiff's clients in the District Court of Douglas County, Nebraska (Kyron O'Brien and Voodoo Lounge, Inc. v. Evan Spencer Law, PLLC, et al. case #: CI 25-2771). Plaintiff requests compensatory damages in the amount of $5 million and punitive damages in the amount of $5 million to punish the Defendants and to deter such conduct in the future by Defendants and other individuals and entities.

**<u>STATEMENT OF FACTS</u>**

1) In December 2023, a BYOB all-nude strip club with drugs and prostitution opened at the former location of the bar and grill Two Fine Irishmen at 18101 R Plaza, Suite #107 in Omaha, Nebraska, which was formally owned by Defendants' clients.

2) This unlicensed strip club has operated from Wednesday to Sunday nights from around 8:00 pm to 5:00 am, causing a nuisance to the entire neighborhood and being responsible for at least two deaths and numerous other crimes and torts, including the intentional drugging, overserving, and robbing of customers.

3) Defendants' clients owned the bar and the Two Fine Irishmen Trade Name for many years before it was converted into Club 180.

4) This new strip club opened next to a Church, residential zoning, and across the street from a high school.

5) From the time it opened, they have allowed and encouraged teenagers to work, patronize the club, and consume alcohol there.

6) The owner's son was an 18 year-old high school student who worked at Club 180 and brought his girlfriend and other high school friends to this all nude strip club.

7) Around the time Club 180 opened, 80-90 people from the local community including city and state officials and Plaintiff's client Casey Rowe owner of the American Dream Bar, gathered in opposition to the opening and operation of Club 180 due primarily to its location.

8) Thereafter, the City of Omaha passed a Good Neighbor Nuisance Ordinance which was designed to close Club 180 (or any other similar establishment) if they were cited with 3 or more nuisance violations during an 18-month period.

9) Despite over 50 separate noise complaints over an 18-month period, Club 180 was not closed by the City of Omaha.

10) Despite numerous complaints of prostitution, drug sales and consumption, underage drinking, unlicensed alcohol sales, credit card fraud, theft, tax evasion, money laundering and other crimes, the Nebraska authorities have neglected to prosecute Club 180 or its owner, partners and co-conspirators for whatever reason(s).

11) Plaintiff and its clients are performing a public service by pursuing civil litigation on behalf of the law-abiding community, especially when the authorities in Nebraska are turning a blind eye to this dangerous hotspot of crime.

EXHIBIT A

12) Numerous witnesses have unanimously confirmed that cocaine consumption and dealing have been common occurrences at Club 180 and Defendants' clients' bar Voodoo Lounge for years.

13) Plaintiff confidentially provided the City of Omaha and the Douglas County authorities all the evidence necessary to prosecute and close Club 180, including a flash drive with videos and photographs depicting illegal conduct, affidavits from numerous witnesses, and police reports and 911 reports. The authorities ignored Plaintiffs' complaints and continue to allow Club 180 to operate.

14) In the spring of 2024, Plaintiff was informed that a dancer at Club 180, was sexually and physically assaulted while on a trip to Florida with the owner and other men and women associated with Club 180.

15) Plaintiff was shown screenshots of the dancer's black eye along with her written account of the sexual assaults that occurred.

16) Thereafter, a security guard from Club 180 provided Plaintiff with video evidence and a lengthy affidavit regarding illegal activities at Club 180 and Defendants' clients' bar Voodoo Lounge.

17) This included a video of the owner providing cocaine to a young woman and groping her while doing so.

18) Another video showed the owner receiving oral sex from a dancer in Club 180 during operating hours in the presence of another young man.

19) Yet another video showed the owner having sexual intercourse with a dancer on stage at Club 180 during operating hours.

EXHIBIT A

20) One Club 180 dancer said she was sex trafficked and abused by a Club 180 patron for years and she provided a photograph of the Defendants snorting a line of cocaine off her nude buttocks.

21) There were also several videos showing the owner and employees stealing 10% of the money from bundles of 100 single bills.

22) Plaintiff interviewed four other security guards from Club 180 who provided affidavits with similar information.

23) Plaintiff interviewed several exotic dancers from Club 180 who informed Plaintiff about illegal activities at Club 180 and Defendants' clients' bar Voodoo Lounge.

24) Plaintiff interviewed neighbors who suffered damages from the nuisance caused by Club 180's loud music and trash their customers deposit throughout the neighborhood.

25) Some of these dancers provided Plaintiff with screenshots of group chats wherein dancers were instructed to "recruit" customers and dancers at Voodoo Lounge which is located just a few minutes away in West Omaha.

26) Defendants' clients' bar Voodoo Lounge was the #1 location where customers and dancers were recruited to work and patronize Club 180.

27) This was confirmed by numerous witnesses and screenshots of Club 180 correspondence.

28) Plaintiff was informed that since 2017, Kyron O'Brien and Voodoo Lounge hosted "naked parties" with illegal drugs (particularly cocaine) and underage drinking, usually on Sunday evenings into early Monday mornings in direct violation of their liquor license and the laws of the City of Omaha and State of Nebraska.

29) Around the same time, Plaintiff was informed by one of Club 180's top dancers that the owner had raped a woman in the bathroom and that he was "completely out of control."

30) Many dancers informed Plaintiff that numerous Club 180 dancers congregated in the ladies' room to consume and sell cocaine on a regular basis because there were no cameras in the ladies' room.

31) Plaintiff was retained by a client who tried to enter the Club 180 ladies' room on a weekend night and found a half dozen dancers doing cocaine while trying to hold the door closed to patrons. The patron was assaulted by a dancer and pepper sprayed in the parking lot.

32) One dancer confessed that there were blind spots inside Club 180 unseen by cameras where prostitution would take place.

33) After Plaintiff filed the federal lawsuit on April 1, 2025, a witness named Michael Alan approached Plaintiff and met with Plaintiff on two occasions for a period of hours at which time he informed Plaintiff of a variety of illegal activities occurring at Defendants' clients' bar Voodoo Lounge, including drugs, underage drinking and illegal parties.

34) Mr. Alan repeated stated that Voodoo's longtime manager Jake Arnold was one of the key people involved in these illegal activities.

35) Plaintiff consulted with a neighbor of Club 180 who said he had called 911 dozens of times due to loud music that was often played until 5:00 am by their DJs.

36) Plaintiff consulted with a real estate expert who estimated that Club 180 and its noise and reputation have damaged local residential and commercial property values by millions of dollars collectively.

37) A breakfast restaurant next to Club 180 lost over $200,000 in business revenue due to Club 180 and failed to renew their lease as a result.

38) A security guard from Club 180 retained Plaintiff to sue Club 180 and its owners, partners, employees, and co-conspirators after providing Plaintiff video evidence of illegal conduct and providing a detailed affidavit regarding illegal conduct.

39) Plaintiff was contacted by many Club 180 dancers to pursue claims as Jane Does and one brave woman agreed to be named in the case, Kimberly Hernandez.

40) Ms. Hernandez worked at Club 180 and was the victim of sexual harassment and other torts while working there for close to 100 shifts between 2023 and 2025.

41) A Defendant in the case approached Ms. Hernandez where she works and threatened to harm her and her children if she did not drop the lawsuit, while also defaming Plaintiff, and offering to bribe Ms. Hernandez to "recant her affidavit."

42) Plaintiff was provided copies of fake IDs used by underage Club 180 dances at Voodoo Lounge for the purpose of allowing alcohol consumption.

43) Plaintiff was contacted by a woman in prison who swore in an affidavit that a dancer at Club 180 confessed all the crimes that were being committed at Club 180 including prostitution, sex trafficking, drug trafficking, sexual harassment, credit card fraud, and other crimes and torts, including the drugging and robbing of customers.

44) One such customer was drugged, overserved alcohol, robbed, and sent home with a .28 BAC. Tragically he crashed on the way home and died two days later in 2024.

45) This case is the subject of a separate wrongful death claim being pursued on behalf of the widow by Omaha law firm Fraser Stryker.

46) Another patron of Club 180 was overserved, leaving with a BAC in excess of .20 and got into a car crash on the way home killing a doctor. He is now serving a 40-year sentence.

EXHIBIT A

47) After filing the federal lawsuit on April 1, 2025, Plaintiff was contacted by the Department of Homeland Security who confirmed that some of the Defendants in Plaintiffs' case were already the subject of a sex trafficking investigation in Omaha.

48) Plaintiff also obtained records from Omaha 911 which included over 50 noise complaints and other complaints by neighbors and patrons of Club 180.

49) On March 24, 2025, after over 1 year of investigation and due diligence, Plaintiff forwarded the prospective Defendants in the lawsuit a letter offering them the opportunity to defend themselves and provide affidavits or other exculpatory evidence before the lawsuit was filed and became a matter of public record.

50) The recipients of this letter included Defendants' clients Voodoo Lounge, Inc., 304 N. 168th Circle, #210, Omaha, NE 68118, and Kyron, Abby, and Kylie O'Brien and Irishmen 180, LLC at 13974 Hickory Circle, Omaha, NE 68144.

51) On March 29, 2025, Defendants sent Plaintiff a letter threatening to sue Plaintiff for defamation, "under Nebraska law" and stated that Plaintiffs' publications, "must be retracted and corrected within three (3) weeks in accordance with Neb.Rev.Stat. Section 25-840.01."

52) However, Defendants' three-page letter did not include a single defamatory statement or identify a specific publication, it simply stated that Plaintiffs' proposed lawsuit was "frivolous and meritless" when nothing could have been further than the truth.

53) On April 1, 2025, Plaintiff filed a lawsuit against over 50 Defendants in U.S. District Court of Nebraska because none of the recipients of Plaintiff's letter including Defendants provided an affidavit or other exculpatory evidence.

EXHIBIT A

54) Defendants' clients Voodoo Lounge, Inc., Kyron O'Brien, and 180 Irishmen, LLC were included as Defendants based upon illegal activities at Voodoo Lounge that were connected to Club 180 and due to Kyron O'Brien's connection to Two Fine Irishmen dba Club 180.

55) Plaintiff's lawsuit was entirely factual supported by affidavits, witness statements, videos, photographs, police reports, and other evidence.

56) Defendants filed for a Temporary Restraining Order against Plaintiff in their state court action before Plaintiff was even served but it was denied by the Court on April 7, 2025.

57) Defendants did not wait the 21-day statutory period required under Nebraska State law before filing their defamation lawsuit.

58) They subsequently filed a complaint in early April that was never served on Plaintiff and an amended complaint on April 22, 2025, that was served on Plaintiff during a press conference to interfere with Plaintiff's First Amendment free speech rights.

59) On June 4, 2025, Plaintiff sent Defendants a lengthy email explaining why Two Fine Irishmen was still owned by Defendants' clients and that it had not been transferred to Matthew Longcor or anyone else. This compelling email was ignored by Defendants.

60) After the case was pending nearly three months, Defendants provided Plaintiff with a purported "asset transfer agreement" and copy of a check for $153,000 wherein Defendants' clients presumably sold their interest in Club 180 dba Two Fine Irishmen to Matthew Longcor and/or his company AM314, LLC, both primary Defendants in the federal case.

61) Defendants claimed they did not provide this exculpatory evidence for three months because they were, "too busy."

62) While Defendants claim their clients sold Two Fine Irishmen to Matthew Longcor in 2022, according to the Nebraska Secretary of State, ownership of the Two Fine Irishmen never changed hands and is still in fact owned by Defendants' clients.

63) Matthew Longcor's limited liability company that allegedly operates Club 180, AM314, LLC, was dissolved by the Nebraska Secretary of State June 17, 2025, and its agent for service of process is deceased.

64) The Two Fine Irishmen Trade Name is associated with Defendants' clients' company Irishmen 180, LLC on the Nebraska Secretary of State website, which maintains a principal office of Kyron O'Brien's home address.

65) The official tenant on the lease of the strip club is "Two Fine Irishmen" and this was never transferred to anyone.

66) The Two Fine Irishmen sign on the building was never removed or changed to Club 180.

67) On social media including Instagram, Club 180's posts were under the name "Two Fine Irishmen" for nearly two years of operation. (they changed this a few weeks ago in response to one of my emails or other correspondence).

68) Two Fine Irishmen was used as a merchant account at the strip club from 2022 to 2025.

69) Two Fine Irishmen used the restaurant credit card service Toast, Inc. from 2023 to 2025 in violation of their terms of service.

70) After the lawsuit was filed on April 1, 2025, Club 180 operator Matthew Longcor continued to patronize Defendants' clients' bar Voodoo Lounge, further demonstrating the connection between the Club 180 and Voodoo Lounge.

EXHIBIT A

71) Co-Defendant James Pull threatened one of the Plaintiff's in the federal court case, stating in part that "Kyron O'Brien was very powerful, and you don't want to mess with him" or words to that effect.

72) Due to Defendants' clients' failure to comply with corporate formalities, Defendants' clients were liable for the criminal and tortious activities occurring at Club 180, together with those criminal activities occurring at Voodoo Lounge.

73) In the end, Plaintiff had no alternative but to dismiss Defendants' clients from the federal lawsuit because this was a condition for Defendants' clients' dismissal, it was costing Plaintiff $450 per hour to defend Defendants' frivolous Nebraska state court lawsuit, and because Plaintiff's clients did not want to be subjected to litigation in Nebraska State Court and further unethical harassment by Defendants.

74) Pursuant to the FRCP and the laws of the States of New York and Nebraska, Defendants were required to address any grievances or defenses by way of FRCP Rule 11, counterclaims against Plaintiff's clients, and/or filing grievances with the New York Attorney Grievance Committee and /or Nebraska Supreme Court Attorney Counsel for Discipline.

75) Defendants filed their frivolous state court case for unethical purposes including but not limited to subjecting Plaintiff and their clients to legal fees and expenses, while billing their own clients for legal work that was unnecessary.

76) Defendants also used the opportunity of sending certified letters, filing a complaint, amended complaint, motion to enforce unsigned settlement, and subpoena to testify and other documents for the purposes of defaming Plaintiff and its clients.

Case 1:25-cv-07665 Document 1 Filed 09/15/25 Page 11 of 22

EXHIBIT A

77) While Plaintiff performed hundreds of hours of investigations prior to filing the subject lawsuit in federal court, Defendants did virtually no investigation prior to filing their responsive SLAPP lawsuit.

78) Defendants denied all of the Plaintiff's allegations without knowledge of whether or not they were true or false.

79) Defendants did not obtain or produce affidavits or other evidence in support of their defense.

80) Defendants performed little or no due diligence prior to filing their frivolous lawsuit against Plaintiff and its clients.

81) Defendants' frivolous lawsuit does not include any specific defamatory allegations, merely stating that it was slanderous, libelous, and defamatory.

82) Defendants' lawsuit was too vague and broad for Plaintiff to respond to.

83) Defendants' lawsuit clearly violated the litigation privilege, the legal principle that provides absolute immunity from liability for defamation for statements made by attorneys in connection with a proceeding before a court.

84) This privilege is absolute and does not depend on the motive behind the statements.

85) It is designed to protect the free flow of information in judicial proceedings and to promote the candid and objective disclosure of evidence.

86) Defendant Orr is a young lawyer with only 8 years of experience who was undoubtedly shocked to find himself litigating a case against Fraser Stryker, one of Nebraska's top firms with over 50 lawyers founded in 1898.

87) With no legitimate claims and being overmatched in the courtroom by a far superior law firm, approximately four months after filing their frivolous lawsuit, Defendants believed they

EXHIBIT A

had caused enough damages to Plaintiff and had billed their own clients enough, so they were ready to throw in the towel and dismiss the case with prejudice.

88) However, when the parties attempted to execute releases, Defendants demanded that there be no confidentiality and that Defendants be listed personally in the release.

89) Plaintiff has never released litigators in a lawsuit and found no precedent for doing so.

90) The only reason Defendants as attorneys would request to be included in the release is if they recognized that they had done something unethical, tortious, and/or illegal.

91) When Plaintiff refused to add Defendants to the release and waive confidentiality, Defendants filed a frivolous motion to enforce the unsigned settlement agreement that lacked key terms, including the parties and whether or not the agreement was confidential.

92) In addition, Defendant subpoenaed Plaintiff in New York to testify in Nebraska at this hearing.

93) Defendants' motion was frivolous as an unsigned written agreement can never be enforceable as there is no legal precedent for this.

94) The subpoena was yet another frivolous act, forcing Plaintiff to testify to attempt to damage Plaintiff's pending federal case and using a frivolous subpoena to induce a resolution to the federal case.

95) When Plaintiff appeared at the hearing on September 9, 2025, Defendants willingly drafted a handwritten settlement agreement that excluded them as releasees and dismissed all claims against Plaintiff and its clients with prejudice.

96) On September 11, 2025, Plaintiff and his clients executed a release with Defendants' clients with regard to both cases and Plaintiff filed a notice of dismissal with the federal court with regard to Defendants' clients only, proceeding against the remaining Defendants.

97) On September 15, 2025, the state court signed off on the motion to dismiss and the federal court signed off on the notice of dismissal.

98) Defendants knew all along their lawsuit was frivolous, but they adopted this strategy as the quickest way to dismiss their liable clients from the federal lawsuit while damaging Plaintiff's case and Plaintiff's reputation on behalf of their clients and their co-defendants.

99) After Defendants made Plaintiff and their own clients each incur tens of thousands of dollars in legal fees and great inconvenience, and after defaming Plaintiff to his clients, the Defendants, and the general public, Defendants agreed to release Plaintiff and its clients from the frivolous lawsuit with prejudice and without request for a monetary settlement.

100) Defendants insisted on *not* including a traditional confidentiality clause so Defendants can spin their unethical conduct to the media as a victory for the Orr firm and Orr's clients.

101) Defendants' goal was never to pursue a legitimate lawsuit with evidentiary, factual, or legal basis.

102) As a result of the foregoing, Plaintiff spent over $30,000 in legal fees to Fraser Stryker and other attorneys and Plaintiff's federal court case has been severely damaged as Plaintiff must now litigate this matter alone against over 30 lawyers.

103) What's more, another Defendant has filed a copycat frivolous case in Nebraska State Court that will cost tens of thousands of more dollars to dismiss with prejudice and still others may yet to be filed.

104) If Defendants' frivolous lawsuit had not been filed, Chandler Conway would have remained co-counsel in the federal case and Plaintiff would have been able to certify a class and recover millions of dollars in damages from Defendants and close Club 180.

EXHIBIT A

105) In addition, Plaintiff had reached a 50/50 agreement regarding a fee split for a wrongful death case with Chandler Conway and was required to accept a 30/70 fee split with a subsequent firm, which will cost Plaintiff hundreds of thousands of dollars of a prospective contingency fee.

106) Wherefore, Plaintiff requests compensatory damages in the amount of $5 million and punitive damages in the amount of $5 million, plus attorney's fees and the costs of this action.

**JURISDICTION**

107) This court has diversity jurisdiction under 28 U.S.C. Section 1332 as the damages in dispute exceed $75,000 and the parties reside in the States of New York and Nebraska.

**VENUE**

108) Venue is appropriate in the Southern District of New York because the Nebraska-based Defendants sued Plaintiff Evan Spencer Law, PLLC, a Manhattan law firm located at 305 Broadway, 7th Floor, New York, NY 10007 in this action.

**PARTIES**

109) Plaintiff Evan Spencer Law, PLLC, is a New York Professional Limited Liability Company in the State of New York maintaining an office at 305 Broadway, 7th Floor, New York, NY 10007.

110) Defendant Connor Orr is a Nebraska attorney with offices located at 9375 Burt Street, Ste. 100, Omaha, NE 68114, with Nebraska Bar #: 26454.

111) Defendant Orr Law Group, PLLC is a Nebraska law firm with four practicing attorneys.

## FIRST CAUSE OF ACTION

## ABUSE OF PROCESS

112) Plaintiff repeats and reiterates all paragraphs of this complaint as if fully set forth herein.

113) Defendants filed a frivolous civil lawsuit against Plaintiff and its clients for the unethical purpose of forcing Plaintiff to dismiss their legitimate federal lawsuit against Defendants' clients and for the unethical purpose of subjecting Plaintiff to tens of thousands of dollars of legal fees and billing their own clients tens of thousands of dollars in unnecessary legal fees.

114) There was not a legitimate purpose to Defendants' lawsuit for defamation, invasion of privacy, civil conspiracy, tortious interference, and/or deceptive trade practices.

115) Plaintiff and its clients committed none of those torts and Defendants had no evidence in support of their lawsuit.

116) The legal process was misused by Defendants in a manner that harmed Plaintiff and its clients.

117) The case was styled Kyron O'Brien and Voodoo Lounge, Inc. versus Evan Spencer Law, PLLC and other individuals and entities (case #: CI 25-2771) filed in the District Court of Douglas County, Nebraska.

118) As a result of this frivolous lawsuit, Plaintiff suffered monetary damages including but not limited to over $30,000 in legal fees.

119) Plaintiff was also defamed by and through Defendants' frivolous lawsuit which is a matter of public record and by letters Defendant sent directly to Plaintiff's clients.

120) In addition, Plaintiffs' co-counsel in the federal case of Streblow, et al. v. Club 180, et al, (case #: 8:25-cv-241-JFB-RCC) pending in the U.S. District Court of Nebraska, withdrew as

EXHIBIT A

co-counsel due to Defendants' lawsuit and their threats to "go for the jugular" and other similar inappropriate personal threats.

121) Plaintiff also spent numerous hours participating in the defense of this frivolous lawsuit at great financial cost.

122) This lawsuit also caused Plaintiffs' clients' severe emotional distress. Plaintiff Sarah Houston is an elderly neighbor who was harassed by process servers and certified letters unethically sent to her directly by Defendants.

123) The outcome of Defendants' frivolous lawsuit was a dismissal with prejudice by Defendants after four months after Plaintiff's attorney filed a motion to dismiss in State Court and Defendants realized they had no chance of victory.

124) Over a period of weeks, Defendants repeatedly begged Plaintiff's counsel to be included in the settlement release because they knew they had engaged in unethical and tortious conduct.

125) Defendants even filed a frivolous motion with the court to enforce an unsigned settlement agreement that included them.

126) Defendants requested inclusion in the parties' general release in writing, on the phone, and in court.

127) During a court conference on September 9, 2025, for Defendants' frivolous motion to enforce the unsigned settlement agreement, Defendant Connor Orr bragged to Plaintiff's attorney that he had, "billed his client a lot for this case" or words to that effect, demonstrating that he had not acted in good faith and that his motivations were his personal financial interests, not his client or justice.

EXHIBIT A

128) Defendants filed a frivolous complaint, amended complaint, motion to compel an unsigned settlement, a subpoena, and legal briefs all to unnecessarily bill their clients while causing Plaintiffs to incur substantial legal fees.

129) Plaintiffs and their attorneys and clients paid no monetary settlement and admitted to liability, demonstrating they did nothing wrong as all claims were dismissed with prejudice.

130) Wherefore, Plaintiffs request monetary damages and punitive damages, together with attorneys' fees and costs of this action.

## SECOND CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACTS

131) Plaintiff repeats and reiterates all paragraphs of this complaint as if fully set forth herein.

132) Defendants' lawsuit was designed to cause Plaintiffs' co-counsel and clients to withdraw from the Plaintiffs' litigation, as well as discouraging witnesses and the authorities from assisting Plaintiff and his clients.

133) Plaintiffs entered a co-counsel agreement with the prestigious Omaha law firm Chandler Conway and their attorney Justin Pritchet.

134) The attorney Justin Pritchet had formally clerked for the presiding Judge in the Federal Case, which would have given Plaintiff and its clients an advantage in the litigation.

135) Chandler Conway is also an Omaha law firm with several attorneys whereas Plaintiff is a sole practitioner.

136) After Defendants filed their lawsuit and made threats to Plaintiffs' co-counsel, Chandler Conway withdrew from the case.

137) Despite being aware that Plaintiffs' clients were represented by Plaintiffs, Defendants sent regular letters and certified letters to Plaintiffs clients directly with threats.

138) Defendants also served Plaintiffs' clients with the state court lawsuit.

139) This interfered with Plaintiff's attorney client contracts as it undermined Plaintiffs' competence.

140) After being bombarded directly by Defendants, having process servers knock on her doors and windows, one of the primary Plaintiffs requested to be removed from the lawsuit.

141) Other clients of Plaintiff have also requested to be removed from the case after hearing about Defendants' lawsuit against Plaintiff in Nebraska state court.

142) In all, Defendants' tortious interference has severely damaged Plaintiff's multi-million-dollar lawsuit in federal court that affects thousands of people in West Omaha.

143) Wherefore, Plaintiff requests monetary damages and punitive damages, together with attorneys' fees and costs of this action.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF NEW YORK ANTI-SLAPP LAW

144) Plaintiff repeats and reiterates all paragraphs of this complaint as if fully set forth herein.

145) Defendants' lawsuit against Plaintiff and its clients was a strategic lawsuit against public participation in violation of New York Civil Rights Law Section 70-A.

146) Defendants' lawsuit wrongfully stifled Plaintiff's lawful expression to the parties and the public.

147) Defendant served Plaintiff with process while conducting a press conference with the media regarding the lawsuit to interfere with Plaintiff's First Amendment rights.

148) Defendants' frivolous Nebraska state court lawsuit was filed in bad faith and with malice.

149) Defendants filed a frivolous "shotgun" complaint against Plaintiff for Libel, Slander and Defamation, Trespass, False Light and Invasion of Privacy, Civil Conspiracy, Tortious

Interference, and Deceptive Trade Practices when Plaintiff and its clients committed none of these torts.

150) The lawsuit was a frivolous and malicious lawsuit designed to stop Plaintiff from exposing the criminal activities of Defendants' clients and their partners and co-conspirators.

151) Defendants served the lawsuit on Plaintiff and Plaintiffs' clients at their homes to discourage them from pursuing their legitimate civil litigation.

152) All of Plaintiff's allegations in their lawsuit and the accompanying press release were entirely true, based upon over a one-year investigation, and supported by sworn affidavits, video and pictorial evidence, 911 records, and other compelling evidence.

153) The importance of Plaintiff's lawsuit and the protection of Plaintiff's First Amendment rights is underscored by the fact that after it was filed and became a matter of public record, Plaintiff was contacted by the Department of Homeland Security for assistance with their sex trafficking investigation in Omaha, because Plaintiff's lawsuit included individuals that were already under investigation.

154) A primary purpose of the Defendants' frivolous lawsuit was to stop Plaintiff from informing the public about illegal activities occurring at the establishment represented by Defendants and Defendants clients' connections to Club 180.

155) Defendants' lawsuit infringed upon Plaintiff's First Amendment rights of free speech, as all allegations by Plaintiff in its lawsuit and press releases were entirely factual.

156) Defendants' lawsuit discouraged prospective Plaintiffs from joining the case.

157) Defendants' lawsuit discouraged John and Jane Doe Plaintiffs from revealing their identities.

158) Defendants' lawsuit induced Plaintiffs' co-counsel in Nebraska to withdraw from the federal case they were pursuing against Defendants' clients and dozens of other parties.

159) Wherefore, Plaintiff requests monetary damages and punitive damages, together with attorneys' fees and costs of this action.

## FOURTH CAUSE OF ACTION

## DEFAMATION BY LIBEL & SLANDER

160) The allegations made by Defendants in their complaint, amended complaint, motion and briefs include false accusations that Plaintiff engaged in unethical and tortious conduct.

161) Defendants defamed Plaintiff to Plaintiff's clients and the general public by stating that Plaintiff's lawsuit was frivolous, meritless, that Plaintiff was "utterly misinformed," and that Plaintiff was, "choosing to prosecute this endeavor, deceitfully, for (your) own personal and business-related reasons" that the, "claims are not based on fact, truth, law or reality."

162) Defendant also falsely stated, Plaintiff, "continues to hold an ownership, management and/or other financial stake in a local company known as 'Club Omaha Gentlemen's Club'" which was also a false statement of fact as Club Omaha is and always has been owned 100% by Shane Harrington.

163) Defendants' statements were made with malice and/or reckless disregard to their truth or falsity.

164) As a result of the foregoing publications and other statements made by Defendants, Plaintiff suffered damages to its reputation and damages to Plaintiff's case against Club 180 and its partners and co-conspirators.

165) Wherefore, Plaintiff requests monetary damages and punitive damages, together with attorneys' fees and costs of this action.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

166) Plaintiff repeats and reiterates all paragraphs of this complaint as if fully set forth herein.

167) Defendants were negligent, careless and reckless in the manner in which they litigated the cases of Streblow, et al, v. Club 180, et al. etc. and their responsive state court case O'Brien, et al. v. Evan Spencer Law, PLLC, et al.

168) Defendants violated numerous ethical rules by failing to perform due diligence prior to filing their lawsuit, failing to wait the 21-day statutory period before filing their lawsuit, and filing a separate lawsuit in state court regarding a lawsuit pending in federal court.

169) Defendants were negligent in failing to recognize the litigation privilege of Plaintiff and its clients.

170) Defendants were negligent in failing to provide exculpatory evidence timely, including an asset purchase agreement and check.

171) As a result of the following, Plaintiff incurred over $30,000 in legal expenses, Plaintiff spent numerous hours participating in the defense of Defendants' frivolous lawsuit, and Defendants' conduct severely damaged the posture and prospective outcome of Plaintiff's multi-million federal class action against Club 180 and its partners and co-conspirators.

172) Wherefore, Plaintiff requests monetary damages and punitive damages, together with attorneys' fees and costs of this action.

## CONCLUSION

Defendants knowingly, intentionally and maliciously filed a SLAPP lawsuit in the District Court of Douglas County Nebraska against Plaintiff and its clients. Since this frivolous case was dismissed after a motion to dismiss was filed with prejudice, Plaintiff requests

compensatory damages in the amount of $5 million and punitive damages in the of $5 million, together with attorney's fees and the costs of this action.

Respectfully Submitted,

September 16, 2025

By: _/s/ Evan Spencer_
Evan Spencer
Attorney at Law
305 Broadway, 7th Floor
New York, NY 10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 16th day of September 2025, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system giving notice to all parties in this action.

_s/Evan Spencer_
Evan Spencer

# Certificate of Service

I hereby certify that on Friday, October 17, 2025 I provided a true and correct copy of the Motion to the following:

Streblow,Chuck, service method: First Class Mail

Spencer,Evan, represented by DUFFY, MICHAEL B (Bar Number: 27529) service method: Electronic Service to mduffy@fraserstryker.com

Evan Spencer Law, PLLC represented by Eric Wells (Bar Number: 23694) service method: Electronic Service to ewells@fraserstryker.com

Spencer,Evan, represented by Eric Wells (Bar Number: 23694) service method: Electronic Service to ewells@fraserstryker.com

Houston,Sarah, service method: First Class Mail

Imagination Industries, Inc service method: First Class Mail

Signature: /s/ ORR, CONNOR W. (Bar Number: 26454)