UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

CHUCK STREBLOW, KIMBERLY HERNANDEZ, IMAGINATION INDUSTRIES, INC. dba THE AMERICAN DREAM BAR, SARAH HOUSTON, JANE DOE DANCERS #1 – 25, JOHN DOE SECURITY GUARDS #1 – 7, JOHN & JANE DOE CUSTOMERS #1 – 100, and all Similarly Situated Residential & Commercial Neighbors of Club 180,

Plaintiffs,

versus,

CLUB 180, AM314, LLC, MATTHEW LONGCOR, AYDEN LONGCOR, DAVID EKDAHL, ERIC HAVERMANN, JAMES PULL, MICHAEL ALAN BEENE, NICHOLAS SCALISE dba DJ NEXT1, MIROSLAVA KOTSAN, BLAIKE KOCA, JESSICA RICHARDSON, ABDUL RAHMANZAI, TOAST, INC., EVRON, INC., SEVEN OAKS INVESTMENT CORP., PAUL WAGGENER, NANCY WAGGENER, BRAVO1 SECURITY, INC., and MICHAEL ELAYAN,

Defendants.

**Case No. 8:25-cv-00241-JFB-RCC**

**DECLARATION OF PLAINTIFFS' ATTORNEY EVAN SPENCER IN OPPOSITION TO DEFENDANT HAVERMANN'S MOTION TO DISQUALIFY AND STRIKE**

Declaration of Plaintiffs' attorney Evan Spencer in opposition to Defendant Eric Havermann's motion to disqualify and strike:

Evan Spencer, being first duly sworn upon oath, deposes and states as follows:

1) I am above the age of 19, am competent to testify, and have personal knowledge of all facts set forth herein.

2) I am the attorney for Plaintiffs in this case and submit this Declaration in opposition to Defendant Eric Havermann's motion to strike and disqualify me from this case.

3) The only reason I got involved in this case in the first place was because movant Eric Havermann assaulted a Club 180 dancer while on a trip in Florida (ECF No. 123-21) in the spring of 2024.

4) Those screenshots were the first of hundreds of incriminating pieces of evidence that were provided to me regarding this litigation, many anonymously by Club 180 dancers.

5) Many directly involving Havermann, and others involving his co-defendants.

6) My clients have legitimate grievances against Havermann arising out of his participation in the Club 180 enterprise.

7) Kimberly Hernandez was the only Club 180 dancer of over 100 who was brave enough to put her name on the case. (See Hernandez affidavit ECF No. 123-10)

8) I was approached by many dancers from Club 180 who were victims of sexual harassment, sexual assault, gender discrimination, ethnic and racial discrimination, labor law violations and other torts and illegal practices.

9) I have spent several hours with Ms. Hernandez and as she developed trust she told me the details of the sexual harassment she faced at Club 180, by Defendants including Eric Havermann.

10) These details are not included in the affidavit filed May 22, 2025, as she informed me of these matters after the affidavit was filed. (see 12.5.25 affidavit of Kimberly Hernandez **Exhibit "A"**)

11) Ms. Hernandez danced primarily at the Spearmint Rhino in Carter Lake, Iowa, which is a liquor licensed establishment without full nudity.

12) When Ms. Hernandez was forced to dance for Havermann and Matt Longcor at Club 180, they forced her to remove her panties in a grooming process that took several encounters.

13) Havermann then began demanding that she do demeaning things to her vagina, including "opening it wide" so they could look inside.

14) Exotic dancers are tough women so when I say that my client was visibly shaken by what Havermann and Longcor did to her that would not be an overstatement.

15) They treated other dancers in a similar demeaning manner.

16) Eric Havermann is the last person on Earth that should be filing a motion to disqualify me.

17) I acted in good faith from the beginning.

18) Everything I have done is 100% ethical and based upon the facts, evidence, and the law.

19) Prior to filing this lawsuit, I mailed and emailed every Defendant including Havermann a detailed letter explaining that I was preparing to file a lawsuit, offering everyone the opportunity to address the matter before it became public record.

20) Not one of the prospective Defendants, Havermann included, provided any evidence in support of their innocence or even a request to delay the matter.

21) Havermann was so enraged by a private letter, that he immediately committed to litigation rather than resolving the dispute before it became a matter of public record.

22) In fact, in our recorded conversation before the lawsuit was even filed, he said, "I want you to file a case." (ECF No. 255 P. 10, L. 19 – 20)

23) The first affidavit that Havermann provided in defense of himself was provided with this motion on December 2, 2025, over 8 months after the lawsuit was filed.

24) When Havermann received my March 2025 letter, he had already retained an attorney, yet they did not provide an affidavit or any evidence in his defense.

25) After receipt of my letter, Havermann began contacting me directly.

26) The purpose of his phone calls and text messages was to intimidate and harass me.

27) Havermann left a message for me on March 26, 2025 at 5:09 pm in which he said, "Hey Alan [sic] my name is Eric Havermann and I just got a letter in the mail from you with a business card and a bunch of paperwork can you give me a call back (402) 216-1084." **(Exhibit "B")**

28) On March 26, 2025, I texted Havermann in response to his phone call stating, "Mr. Havermann, **<u>if you would like to discuss the possibility of me removing you and your companies from the lawsuit we'll have to meet tonight or tomorrow at the latest</u>**. The lawsuit will be filed Monday but I need a final draft by Friday so all my clients can review it."

29) I offered Havermann the opportunity of being removed from the lawsuit before it was filed in writing and he didn't even have his attorney contact me.

30) Havermann texted in response, "I will call ya in the morning."

31) We scheduled a call for 6:00 pm on March 27, 2025, during which Havermann said, "I'm suing you ***and*** **I'm coming**." and, "I'm looking to put you there (in jail)," which led me to believe that he was literally "coming" to harm me in my home.

32) The conversation contained other threats, including making frivolous ethical complaints against me.

33) I was very shaken up by Havermann's threats because the only reason for him to call me directly when he had a lawyer would be to threaten me in a manner that his lawyer could and would not do.

34) I'm from New York so when a person says that they are "coming" for you this is a very serious threat.

35) As a result of these threats, I filed a police report with the Douglas County Sheriff's Office.

36) Attached as **(Exhibit "C")** is a copy which the DCSO provided me recently.

37) The DCSO report of the incident does not include any of the language cited by Havermann in his affidavit (ECF No. 255).

38) The police report states, "Intimidation by Telephone Call," not "Terroristic Threats."

39) After this conversation between Havermann and I, Havermann sent me the following text message:

"And I'm curious about this rock, solid evidence that doesn't exist and the Douglas County sheriffs department is looking into me. Why wouldn't you have just given them the information and they can come question me? Or arrest me? Before putting my name out there and making such aggressive accusations As I do a lot of work in this town and have multiple companies and a lot to lose, this will affect my income" **(Exhibit "D")**

40) Though Havermann had the opportunity to have his lawyer contact me to provide an affidavit similar to that filed with the Court on December 2, 2025, he and his lawyer chose not to do so.

41) Having received no objections from Havermann's attorney or any other party, the lawsuit was filed April 1, 2025 (ECF No. 1).

42) I did not intentionally misinform the authorities about this matter or misstate anything in the Second Amended Complaint.

43) The Defendants quote in their motion of what I said to the Douglas County Sheriff (ECF No. 255) is inaccurate.

44) I had already received death threats from Defendant Matthew Longcor and others and the tone of Havermann's voice indicated to me that he was "coming" after me personally.

45) Specifically, Longcor told Plaintiff Streblow that he was, "sending people to my house."

46) Longcor told his dancer Stormie that he was sending people to New York to, "take care of me" like he did with others in Nebraska with a drive-by shooting.

47) In the context of all these threats, I took Havermann's threats very seriously and they alarmed me enough that I called the police.

48) This recorded phone call was unethical because Havermann was represented by counsel at the time and represented parties are not supposed to communicate with opposing counsel.

49) I did not record the conversation so my statement to the Douglas County Sheriff's Office was based upon my recollection of the conversation.

50) I believe the quote by Defendants in their brief from the Douglas County Sheriff's Office was paraphrasing things that I said.

51) Havermann and his attorney have behaved in an uncooperative and unethical manner since they received my letter in March 2025.

52) Havermann evaded service of process for 7 months until I had to get a court order for alternative service in this case.

53) Havermann summonses were requested, issued and returned unexecuted on three occasions.

54) Summonses requested ECF Nos. 8, 35, and 76, summons issued, ECF Nos. 16, 36, and 91, and summons returned unexecuted ECF Nos. 78, 80, and 144.

55) The Court granted Plaintiffs' motion for alternative service ECF No. 218 (see ECF No. 222).

56) While evading service in this case, Havermann was (and is) pursuing a Nebraska state court retaliatory lawsuit against me and my clients just to inconvenience us and cause unnecessary expenses **(Exhibit "E").**

57) This frivolous state court lawsuit includes Havermann's companies as Plaintiffs because I sent letters to Havermann's companies in March 2025 to contact him.

58) Despite the fact that these companies were never named parties in the lawsuit and were never accused of anything, Havermann and his attorney have named them as Plaintiffs in their frivolous state court lawsuit.

59) Our motion to dismiss is pending in State Court and I receive and pay monthly bills of thousands of dollars from our attorneys Fraser Stryker that have now exceeded $50,000, including litigation by Havermann's co-defendants.

60) When I was at the College World Series in 2025, a friend told me that Eric Havermann had committed a sexual battery by smacking her on her buttocks.

61) She felt extremely uncomfortable about the incident and was scared to tell anyone.

62) I heard from reliable sources including Plaintiff Streblow that Havermann was banned from the Spearmint Rhino in Iowa for soliciting dancers for Club 180.

63) Multiple witnesses informed me that Havermann and his girlfriends would recruit dancers for Club 180.

64) I have computer flash drives with dozens of videos and photographs of illegal activities taking place at Club 180.

65) I have produced dozens of affidavits, declarations and statements in support of my allegations (ECF No. 123-1 to 123-25).

66) Since this evidence (ECF No. 123) was filed with the Court on May 22, 2025, I have attained additional information from the Plaintiffs and witnesses that further support the case.

67) Based upon all of my witness testimonies I can establish that Havermann was a partner or at a minimum a co-conspirator in the Club 180 enterprise.

68) Havermann also committed direct tortious acts that damaged my clients Hernandez and Streblow.

69) After the lawsuit was filed the Department of Homeland Security contacted me because some of the people I was suing were already the subject of a sex trafficking investigation.

70) I met with the authorities for two hours and provided them with evidence to assist their investigations.

71) Since May 2025, I was contacted by a Douglas County inmate Justine Dubois who was befriended by a Club 180 dancer Delaney Wilson aka Stormie that told her everything about the illegal activities at Club 180, a drive by shooting connected to Club 180, and Matt Longcor's plans to send people to New York to kill me (ECF No. 123-1 and 123-2).

72) I have communicated with Ms. Dubois for seven months, I spent several hours with her over the course of two dinners.

73) In defense of myself personally, I was raised in Scarsdale New York.

74) When I was a freshman in High School, President Ronald Reagan gave us an award as the #1 public high school in the country.

75) I was the only person in my class to graduate one year early at the age of 16.

76) I have a B.A. in Philosophy and a J.D. in Law.

77) I passed the New York Bar Exam on my first attempt in 1996 .

78) I've litigated over 1,000 cases in 28 years with an unblemished record.

79) I defeated George Lucas, creator of Star Wars in the First Amendment free speech case Lucasfilm Ltd. v. Media Market Group, Ltd., 182 F. Supp.2d 897 (N.D. Cal 2002) by myself barely four years out of law school.

80) I have successfully represented Plaintiffs in numerous cases in this Court over the last 11 years.

81) I've never been reprimanded, suspended or disbarred.

82) I've never been disqualified from a case.

83) When motions were previously filed in this court to disqualify me they were both denied (see Grove v. Club Omaha Case #: 8:20-cv-193-JFB-MDN ).

84) I've worked for four law firms in New York before starting my own practice where I've litigated around the country successfully for over a decade in a wide variety of civil matters including adult entertainment law.

85) I operate a boutique practice with no more than a handful of clients and cases at any given time.

86) If the Court grants this motion, my clients' case will effectively be dismissed against movant Havermann because I am the only attorney who will litigate this case for free (on a contingency fee basis).

87) My clients cannot afford and/or do not wish to hire attorneys to represent them for billable hourly rates so the case will be dismissed without my representation.

88) Since this is a contingency fee case, I will never make a dime from this litigation and I've known that now for several months, since I went to the authorities with ample evidence to arrest Defendants and close the business and nothing happened.

89) Everything I am doing is out of my duties to my clients and for the benefit of the community in Omaha where my clients and I reside.

90) The four main Plaintiffs and John and Jane Doe Plaintiffs are entitled to compensation.

91) The first Plaintiff Chuck Streblow must be commended and rewarded for doing the right thing and resigning as the Club 180 head of security and reporting knowledge of criminal activities to the authorities (see Streblow affidavit ECF No. 123-8).

92) Chuck's life and safety were often put at risk, he was the victim of a hostile work environment among other torts and he was subjected to intimidation by Defendants after the lawsuit was filed.

93) The dancer Kimberly Hernandez was the only one of over 100 Club 180 dancers who was brave enough to put her name on this lawsuit and to stand up for all the scared and silent dancers (see Hernandez affidavit ECF No. 123-10).

94) She was settled harassed by Eric Havermann as previously described in this Declaration.

95) In the end, she was fired because she wouldn't attend the Club 180 after-hours sex and drug parties.

96) After the lawsuit was filed Defendant James Pull went to see Kimberly at the Spearmint Rhino and threatened to harm her and her children if she proceeded with the lawsuit.

97) Pull also offered Ms. Hernandez a bribe whereby he would pay her $50,000 to recant her affidavit with his attorney.

98) The homeowner of 35 years Sarah Houston who lives adjacent to Club 180 joined the case on behalf of herself and her neighbors because Club 180 was causing a nuisance, lowering property values, and was in direct violation of the Good Neighbor Nuisance 0Ordinance (ECF No. 123-5) (see statement of Sarah Houston aka Neighbor #1, ECF No. 123-16).

99) When Ms. Houston and her neighbors go to bed at night they hear the music from Club 180 (which is well in excess of 55 decibels) and in the morning when they awake.

100) Casey Rowe, owner of the Imagination Industries dba the American Dream directly lost dancers, customers, and gross revenue from the night Club 180 opened in December 2023 (ECF No. 123-11).

101) Casey runs a licensed establishment that must follow rules while Club 180 was allowed to do whatever it wanted.

102) Casey is therefore the victim of unfair competition, civil RICO violations, and other claims.

103) Casey has legally operated his adult entertainment businesses in Nebraska for over 20 years and has been involved in philanthropy throughout the community for many years.

104) My clients all have legitimate cases and there would be dozens of additional plaintiffs if they weren't so terrified of Havermann, Longcor and their co-conspirators.

105) With regard to Defendants motion to strike, ECF No. 254, Defendants' references to the first Amended Complaint (ECF No. 24 Par. 149-151) are irrelevant and moot because it is no longer the operative pleading.

106) Havermann's motion (ECF No. 254) states on pages 3 – 4 that paragraphs 95, 166, 175, 176 and 178 should be stricken from the Second Amended Complaint (ECF No. 225)

107) With regard to the Second Amended Complaint ("SAC"), every allegation is true, accurate and supported by the evidence.

108) The evidence establishes that Havermann was a partner and/or co-conspirator in the Club 180 enterprise.

109) Havermann did in fact threaten me by saying among other things that, "I'm suing you ***and*** **I'm coming**." and, "I'm looking to put you there (in jail)" which I interpreted as a threat upon my life as Matthew Longcor and others had already threatened to kill me as a result of the lawsuit:

> On November 12, 2025, Plaintiffs filed the Second Amended Class Action Complaint (Doc #225) and made the following allegations: Eric Havermann ("Eric") is a partner and/or co-conspirator of Matt and AM314, LLC dba Club 180
>
> … After being sued he threatened the life of Plaintiff's counsel, and a misdemeanor warrant was issued for his arrest by the Douglas County Sheriffs office. (Doc # 225, para. 95).

110) Defendants Matt Longcor, Eric Havermann and Jim Pull did engage in a pattern of intimidation including Havermann's statement that, "I'm suing you ***and*** **I'm coming**." and, "I'm looking to put you there (in jail)." Longcor's death threats to send people to New York to kill me and to my house in Nebraska, James Pull's threats to dancer Kimberly Hernandez, and death threats and assault of witness Justine Dubois (among other threats).

> Defendants Matt, Eric, and Jim acting individually on behalf of AM314, LLC, Ayden, Miro, Blaike, Nick, David, and Bravo 1 Security, engaged in witness intimidation by threatening to send people to the homes of witnesses, parties, and their attorney in this action to kill them to prevent them from testifying. (Doc #225, para. 166).

111) Havermann called me directly to threaten and intimidate me when he had already retained counsel.

112) He recorded a conversation with me which shows his actions were premeditated.

113) Havermann, said he was going to "I'm suing you ***and*** **I'm coming**." and, "I'm looking to put you there (in jail)" which I interpreted as a physical threat to my safety.

114) Eric physically threatened Plaintiff's attorney on March 27, 2025, at 6:00 pm. (Doc #225, para. 175). Plaintiff's counsel filed a report with the Douglas County Sheriff's Office against Eric on March 31, 2025, (report #: DCSO2025008565) for

violating NRS 28-1310 (Intimidation by telephone call or electronic communication) which is a Class I Misdemeanor, and a warrant was issued for his arrest. (Doc #225, para. 176).

115) Defendant Havermann did in fact file an illegal and unethical retaliatory lawsuit in state court, without precedent against me and my clients **(Exhibit "E")**. The following allegation is referenced by Defendants therefore accurate:

On June 6, 2025, Defendant Eric filed a similar retaliatory defamation case in Nebraska state court against Plaintiff's counsel while evading service in this case. (Doc #225, para. 178).

116) Since all of my allegations in the SAC are accurate, none should be stricken.

117) Since I have acted in good faith for 8 months and Havermann waited that long before filing this motion, it should be denied due to Laches.

118) Lastly, the amended complaint was filed in April and the motion to file the SAC was filed in June.

119) Havermann waited until December to move to strike allegations that were made 7 months ago.

120) Havermann should be prohibited from moving to strike or disqualify when they could have made these objections before the SAC was filed with the Court.

***I declare under penalty of perjury that the foregoing statement is true and correct.***

Sworn to this 16th day of December, 2025 by:

s/Evan Spencer

**Evan Spencer**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of December, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, giving notice to all parties in this action.

*/s/Evan Spencer*
Evan Spencer, Esq.