IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHUCK STREBLOW, et al.<br><br>Plaintiffs,<br><br>vs.<br><br><br>CLUB 180, et al.<br><br>Defendants. | **8:25CV241**<br><br><br><br>**ORDER** |

This matter comes before the court on a series of related motions. Defendant Eric Havermann ("Havermann") filed a Motion to Strike and Disqualify Plaintiffs' counsel, Evan Spencer ("Spencer"). (Filing No. 253). Defendant Abdul Rahmanzai ("Rahmanzai") filed a Motion to Strike the Amended Complaint or in the alternative, a Motion for Extension of Time to File a Responsive Pleading. (Filing No. 269). Defendant James Pull ("Pull") filed a separate Motion to Disqualify Spencer. (Filing No. 318). Havermann and Rahmanzai later jointly filed an additional Motion to Disqualify Spencer. (Filing No. 343). Finally, Pull filed a Motion for Sanctions and Attorney Fees related to his Motion to Disqualify. (Filing No. 352).

Because these motions involve overlapping factual allegations and related legal issues, particularly as they pertain to counsel's representation and the procedural posture of the Second Amended Complaint, the court addresses them together.

## I.    BACKGROUND

Plaintiffs filed this action on April 1, 2025, alleging Defendants engaged in unlawful conduct in connection with the ownership and operation of Club 180, an after-hours club located in Omaha, Nebraska, which Plaintiffs allege functions as a front for prostitution, drug trafficking, and sex trafficking. (Filing No. 1). Plaintiffs assert federal and state law claims, including claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and related claims for conspiracy, trafficking, intimidation, and other alleged misconduct. Havermann, Rahmanzai, and Pull are among the named defendants, each alleged to have participated in the Club 180 enterprise in various capacities. Plaintiffs filed an Amended Complaint as of right on April 21, 2025, adding more parties and expanding the scope of the alleged misconduct while maintaining the same general causes of action. (Filing No. 24).

On June 9, 2025, Plaintiffs moved for leave to file a Second Amended Complaint, attaching a copy of the proposed pleading. (Filing No. 165, Filing No. 167-1). The court denied the motion without prejudice for failure to comply with NECivR 15.1, which requires an attachment clearly identifying the proposed changes. (Filing No. 168). On June 11, 2025, Plaintiffs refiled their motion with a redlined version of the proposed complaint, which clearly showed Plaintiffs' additions and deletions from the First Amended Complaint. (Filing No. 169). While that motion was pending, Plaintiffs moved to voluntarily dismiss several defendants, all of which the court granted. (Filing No. 189, Filing No. 193, Filing No. 197). The court thereafter granted Plaintiffs leave to amend the complaint and instructed them to file a revised pleading omitting the since-dismissed defendants and related causes of action, but otherwise ensuring that the complaint was "identical" to the redlined proposed complaint at Filing No. 169-1. (Filing No. 222). Plaintiffs filed the Second Amended Complaint, which remains the operative pleading. (Filing No. 225).

Evan Spencer has served as Plaintiffs' sole counsel throughout this entire action. The Second Amended Complaint introduced several new allegations, the most notable of

which is a claim styled "Civil RICO - Witness & Attorney Intimidation" (Filing No. 225, at paras. 165-192), which gives rise to the related motions now before the court.[1] That claim alleges threats directed at Spencer personally, including threats to kill him and threats to send individuals to the homes of witnesses and parties. (Filing No. 225, at paras. 92, 95, 166, 170-179). Plaintiffs contend these threats caused emotional distress, discouraged prospective witnesses and additional plaintiffs from participating in the litigation, and prompted Spencer's co-counsel to withdraw from the case. (Filing No. 225, at para. 167-168).

A. <u>Motions to Strike</u>

Rahmanzai and Havermann both filed motions to strike under Rule 12(f), though they seek different relief and rely on different facts and theories. Rahmanzai moves to strike the Second Amended Complaint in its entirety. (Filing No. 269). He argues that Plaintiffs failed to comply with the court's November 6, 2025 order, (Filing No. 222), which required the amended pleading to be identical to the redlined version in Filing No. 169-1 except for the omission of dismissed defendants and claims. (Filing No. 270). Rahmanzai contends that the Second Amended Complaint includes additional allegations and substantive revisions beyond those authorized by the court, including expanded assertions of criminal conduct, threats, drug trafficking, and related misconduct. On that basis, he moves to strike the pleading under Federal Rules of Civil Procedure 12(f) and 15(a) and requests dismissal with prejudice. In the alternative, he seeks an extension of time to file a responsive pleading.

Havermann separately moves to strike specific portions of both the First Amended Complaint, Filing No. 24, and the Second Amended Complaint, Filing No. 225. (Filing No. 253). His motion centers on a March 27, 2025 recorded telephone call (hereinafter the "March 2025 call"), which Havermann initiated in response to a letter from Spencer accusing him of sex trafficking. (Filing No. 254, at pp. 3-4). The challenged allegations

---

[1] Many defendants also filed dispositive motions. Those motions are not referred to the undersigned, however they are discussed herein as they relate to the Motions to Strike.

include assertions that during that call Havermann threatened to kill Spencer, as well as separate allegations that he threatened to send individuals to witnesses' homes and later filed a retaliatory state court defamation action against Spencer. (Filing No. 225, at paras. 95, 166, 175-178). Havermann argues these allegations are false, scandalous, immaterial, and impertinent under Rule 12(f), and relies on a certified transcript of the call in support. (Filing No. 255, Ex. A). According to the transcript, Havermann told Spencer he was filing a defamation lawsuit against him, had retained counsel, and intended to pursue an ethics complaint. The transcript reflects no use of the word "kill" and no reference to Spencer's physical safety. Havermann contends the statements Spencer reported to law enforcement as "terrorist threats" were, in context, nothing more than announced legal action.

Plaintiffs oppose both motions. They argue that the challenged allegations relate to the alleged RICO enterprise described in the Second Amended Complaint and to issues raised in the disqualification motions. Plaintiffs further maintain that the Second Amended Complaint complies with the court's order and contend that factual disputes regarding the accuracy or characterization of allegations do not provide a proper basis to strike pleadings under Rule 12(f). As to the March 2025 call specifically, Plaintiffs dispute Havermann's characterization and contend that his statements, viewed in the context of the broader litigation and the threatening atmosphere surrounding the case, could reasonably be interpreted as conveying a threat to Spencer's physical safety.

B.  Motions to Disqualify

In addition to his motion to strike, Havermann also seeks Spencer's disqualification as Plaintiffs' counsel. (Filing No. 253). Havermann contends that because Spencer fabricated or falsified statements about the March 2025 call concerning alleged threats, including references to "terroristic threats," he thereby engaged in misconduct that warrants disqualification. He further argues that Spencer has now become personally involved in disputed factual matters and will likely be a necessary witness regarding the alleged intimidation and related communications.

4

Havermann and Rahmanzai later filed a Joint Motion to Disqualify raising similar arguments. (Filing No. 343). They jointly claim that Spencer made himself a necessary witness by alleging that Defendants personally subjected him to intimidation. They further argue that Spencer's testimony would be material to issues of credibility, that no other source can provide the same testimony, and that his continued representation would violate ethical rules set out in § 3-503.7 of the Nebraska Rules of Professional Responsibility. (Filing No. 345).

Pull separately moves to disqualify Spencer on similar grounds, but based upon different facts. (Filing No. 318). Pull asserts that Spencer made material misrepresentations to the court concerning alleged intimidation and a purported criminal investigation involving Pull. (Filing No. 319). Pull's motion largely arises from an alleged June 5, 2025 incident at the Spearmint Rhino club in Carter Lake, Iowa, where Plaintiff Kimberly Hernandez ("Hernandez") worked (hereinafter referred to as the "Carter Lake incident"). In the Second Amended Complaint, Plaintiffs allege that Pull and an associate went to the club, requested a private dance with Hernandez, and during the encounter threatened Hernandez's children and her attorney if she continued to pursue this litigation. (Filing No. 225, at paras. 180-181). Plaintiffs further allege that Hernandez contacted Spencer, who came to the club during the incident, and that Hernandez subsequently called 911, resulting in a criminal investigation for Felony Terroristic Threats arising from the encounter. (Filing No. 225, at paras. 182-183, Filing No. 320, Ex. B).

Pull disputes those allegations and argues that the Carter Lake Police Department investigated and determined that no criminal charges would be filed. (Filing No. 319, Filing No. 320). Pull maintains that despite the results of that investigation, Spencer misrepresented to the court that Pull is actively under criminal investigation. He further argues that Spencer's involvement in the events surrounding the report to law enforcement, including his presence with Hernandez during the alleged incident, renders Spencer a necessary witness whose testimony cannot be duplicated by other sources. (Filing No. 319, Filing No. 320, at paras. 4-9).

Plaintiffs oppose each motion to disqualify, arguing that Defendants' assertions rely on disputed characterizations of the record and contested factual allegations rather than clear evidence of professional misconduct. Plaintiffs maintain that other witnesses, including parties, third-party witnesses, and law enforcement officers, as well as documentary evidence can establish the alleged intimidation and related events without Spencer's testimony, and that he therefore does not qualify as a "necessary witness" under the applicable professional conduct rules. Plaintiffs also argue that disqualification is a drastic remedy that the court should impose only where absolutely necessary, and that Defendants have not met the high burden required for such relief. Plaintiffs assert that removing Spencer as counsel at this stage of the litigation would impose substantial hardship because Spencer serves as their sole counsel and replacing him would significantly disrupt the prosecution of their claims. (Filing No. 274, Filing No. 357, Filing No. 361).

C. Motion for Sanctions

Finally, Pull's motion for sanctions arises directly from the disqualification proceedings. (Filing No. 352). In support of his disqualification motion, Pull submitted a police report from the Carter Lake Police Department describing Spencer's involvement in the Carter Lake incident. (Filing No. 320). Prior to filing a response to that motion, Plaintiffs moved for early discovery, seeking leave to subpoena a separate police report from the Sarpy County Sheriff's Office regarding an incident involving Pull and a non-party. Plaintiffs argued the report was relevant to Pull's credibility and motive in seeking disqualification and represented that Sarpy County would only release it pursuant to a subpoena. (Filing No. 324). Plaintiffs also requested an extension of their deadline to respond to the disqualification motion until after the report was obtained.

Before the parties conferred under Rule 26(f), before the seven-day objection period required by NECivR 45.1(b) elapsed, and before the court ruled on the motion for early discovery, Spencer served the subpoena on the Sarpy County Sheriff's Office. (Filing No. 353). Pull served a written objection within one day of receiving notice, but Spencer issued

the subpoena anyway. On January 30, 2026, the court denied the motion for early discovery, concluding Plaintiffs had not shown good cause and that the requested report was not relevant to the disqualification motion, which concerned Spencer's own conduct rather than Pull's. (Filing No. 354).

Pull now moves for sanctions under Fed. R. Civ. P. 37(b)(2), including attorney fees, evidentiary limitations, contempt, and dismissal of the claims against him. (Filing No. 352). He argues that Spencer's actions violated Fed. R. Civ. P. 26(d)(1), NECivR 45.1(b), and this court's subsequent orders, and that his conduct reflects a pattern of disregard for both the federal and local rules. Plaintiffs' counsel acknowledges he did not wait seven days before serving the subpoena, but characterizes the failure as an oversight. (Filing No. 366). He further asserts that no court order was violated because the subpoena was served before the order was entered, and that after Pull objected and the court set a briefing schedule, he took no further steps to obtain or review the report. (Filing No. 369).

## II.    ANALYSIS

A. Motions to Strike

Turning first to the motions to strike, (Filing No. 269, Filing No. 253), both motions seek relief under Rule 12(f), though they rely on different facts and legal theories. The court therefore begins with the governing legal standards before turning to each motion.

### 1. *Legal Standard*

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In ruling on a motion to strike, the court "enjoy[s] liberal discretion," and a district court's ruling is reviewed only for abuse of that discretion. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). That discretion, however, is exercised sparingly. Striking a pleading is an extreme measure that is generally disfavored and rarely granted. *See Stanbury L. Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). The Eighth Circuit explained that even matters not "strictly relevant" to the principal claim should not necessarily be

stricken if they provide "important context and background" to the claims asserted or relate to some object of the pleader's suit. *Id.* The moving party bears the burden of showing the challenged allegations are "devoid of merit, unworthy of consideration, and unduly prejudicial." *Hall v. City of St. Louis*, 465 F. Supp. 3d 937, 952 (E.D. Mo. 2020). Courts therefore generally decline to strike allegations unless the challenged material lacks any legal basis or otherwise falls within Rule 12(f)'s enumerated categories. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021).

### 2. *Rahmanzai's Motion to Strike*

The court first addresses Rahmanzai's Motion to Strike the entire Second Amended Complaint. (Filing No. 269). Rahmanzai contends the filed complaint materially departs from the redlined version the court authorized, in violation of Fed. R. Civ. P. 15(a) and the court's directive that the amended complaint be "otherwise identical" to the redlined submission, and requests that the court strike the entire complaint and dismiss the action with prejudice.[2] For the following reasons, that motion is granted in part.

Rahmanzai identifies several specific deviations. He points to allegations concerning an asset purchase agreement and the purchase of the Two Fine Irishmen business, (Filing No. 225, at paras. 2-3), that several defendants assaulted dancers and engaged in drug trafficking involving cocaine and ecstasy, (Filing No. 225, at paras. 22-23), and that dancers were coerced into certain conduct at Club 180. (Filing No. 225, at para. 28). He further asserts that Plaintiffs retained allegations they previously represented would be removed from the proposed complaint, including the recruitment of dancers from competing establishments and a conspiracy among some defendants to commit prostitution, sex trafficking, and drug trafficking. (Filing No. 225, at paras. 15-16, 193-95, represented as deleted in Filing No. 169-1, at paras. 83-84, 457-458). Plaintiffs also revised

---

[2] This issue of noncompliance is also raised by Toast in their Motion to Dismiss. (*See* Filing No. 344, Filing No. 346, at pp. 4-5). However, the court concludes that the proposed amendments related to that defendant were included in the redline and the filed complaint and therefore not struck for the reasons stated herein. (*See* Filing No. 169-1, at para. 291, and Filing No. 225, at para. 113).

several existing allegations from the proposed complaint, such as those concerning background checks of dancers, invitations to unlawful activities, corporate formalities, alleged threats by certain defendants, and drug distribution at the club, rather than merely removing dismissed parties and claims. (Filing No. 225, at paras. 49, 51, 91-92, 95, 96, 99, 103, 106, and 148).

Plaintiffs oppose the motion on two grounds. First, they characterize the approved Motion to Amend (Filing No. 169) not as a new motion, but as an amendment to the earlier Motion to Amend (Filing No. 167), which was denied. They contend that the version at Filing No. 169 was intended only to show "redline" changes from the First Amended Complaint, while Filing No. 167 contained the actual proposed pleading. On that theory, when the court granted leave to amend, Plaintiffs returned to Filing No. 167, the "approved" unsigned version, removed the dismissed defendants and claims and filed it. (Filing No. 277, Filing No. 278, at paras. 5-9).  They contend that any differences between those two documents account for the deviations Rahmanzai identifies. (Filing No. 277). Second, they argue that Rahmanzai waived any objection by failing to oppose it during the six months it was pending, and that in any event, the motion is barred by the doctrine of laches. (Filing No. 277). Neither argument is persuasive.

Beginning with Plaintiff's reliance on Filing No. 167, the court notes that the amendment order was unambiguous on its face. It clearly stated: "The Second Amended Complaint shall be identical to the red-lined version found at Filing No. 169-1 except that Plaintiffs shall omit those Defendants and causes of action which have been subsequently dismissed." (Filing No. 222). The order identifies Filing No. 169-1 by its specific docket number twice, once in the body of the order and once in the directive at the end. The order does not reference Filing No. 167 anywhere. Every party in this litigation treated Filing No. 169-1 as the operative proposed complaint. The court relied on it in granting leave to amend, the defendants relied on it in opposing the motion to amend and in preparing their responsive motions, and Rahmanzai relied on it in identifying the specific deviations at issue here. Filing No. 169-1 is the document the court's order designated by name, and it is

the document the court has treated as controlling throughout. Filing No. 167 and 167-1 plays no role in this analysis, as that motion was denied and any attachments expressly rejected by the court. (Filing No. 168).

The filed Second Amended Complaint (Filing No. 225) does not conform to Filing No. 169-1. The redlining requirement exists for good reason. It provides the court and opposing parties with a clear, reliable picture of exactly what is being changed, so that the proposed amendment can be evaluated on its actual merits. When a party complies with that requirement, the court's task is straightforward: compare the filed complaint to the authorized redline and confirm they match. That is not what happened here. Paragraphs 15, 16, 193, 194, and 195 (of Filing No. 225) were explicitly marked for deletion in Filing No. 169-1, yet Spencer retained them. Several other paragraphs were substantively revised in ways that Filing No. 169-1 never disclosed and that have nothing to do with the removal of dismissed parties. For example, Paragraph 102 of Filing No. 225 describes Rahmanzai as the primary cocaine dealer at Club 180 who engaged in sexual activity with dancers in exchange for cocaine and robbed a dancer of over $4,000, while Filing No. 169-1 at Paragraph 257 describes Rahmanzai only as someone allowed to sell illegal drugs at Club 180 who assaulted a dancer. Likewise, Paragraph 99 in Filing No. 225 describes Kotsan as having invested over $1 million in Longcor's enterprises, language that does not appear in Filing No. 169-1. These are not the product of removing dismissed defendants. They are substantive changes to the allegations themselves, inserted without leave and without disclosure to the court or opposing parties.

Spencer argues that he went back and utilized filing 167-1 for his amendments in Filing No. 225.  A comparison of Filing No. 225 against Filing No. 167-1 reveals that the two documents are in fact very similar in substance, with the primary difference being the removal of dismissed defendants and the resulting paragraph renumbering. Spencer is therefore correct that Filing No. 225 largely tracks Filing No. 167-1. But that's not the point. Filing No. 167-1 was the document the court had already rejected for failure to comply with the local rules. Spencer cannot cure a deficiency in one filing by returning to

10

the filing that was rejected. His theory, taken at face value, is an admission that he deliberately disregarded the court's order in favor of a document the court had already found insufficient. It is unclear as to whether Spencer did so by mistake or by design. The order did not authorize Filing No. 167-1 with dismissed defendants removed. It authorized Filing No. 169-1 with dismissed defendants removed. Those are different documents, and the difference is not minor. Indeed, Spencer affirmatively represented to the court in his Amended Motion to File Second Amended Complaint that he had "attached a version of the SAC to this amended motion… that clearly indicates all the changes made to the amended complaint as requested by the Court[.]" (Filing No. 169). The court relied on those representations when it granted the motion and made clear as to how Plaintiffs should proceed. (Filing No. 222).

Spencer's own declaration acknowledges that Filing No. 169-1 was a 64-page document he spent two full days drafting because the changes from the First Amended Complaint were "very substantial," making it more than twice the length of the 30-page Filing No. 167-1. A document of that scope and complexity is not a mere annotation of an earlier draft. It is a different pleading, and Spencer knew it when he filed it. The filed complaint is therefore not Filing No. 169-1 with dismissed defendants removed, and not any version of the complaint this court ever authorized. Whatever its similarities with Filing No. 167, it was Filing No. 169-1 that the court approved, and that approval was neither ambiguous nor open to interpretation.

Moreover, the discrepancy between the two documents was not a matter of which Spencer was unaware. Before the court granted leave to amend, several defendants specifically flagged that Filing No. 167-1 and Filing No. 169-1 differed in material respects and raised concerns about whether Filing No. 169-1 reflected all of Plaintiffs' proposed changes. (Filing No. 181, at pp. 3-4). Spencer therefore had notice well before the court's order that Filing No. 169-1, not Filing No. 167-1, was the version the parties and the court were scrutinizing. His claimed reliance on the earlier document is accordingly not credible.

11

Spencer's filing of two materially different proposed complaints, and his subsequent filing of a third version, left the court and opposing parties to compare three different documents simply to determine what was authorized. That is precisely the burden the redlining requirement is designed to prevent, but Spencer's conduct imposed it in full. Despite a clear and unambiguous order, Spencer added at least twenty-seven entirely new allegations, retained at least four allegations his own redlined submission represented would be deleted, and materially revised at least ten existing allegations in ways bearing no relationship to the removal of any dismissed party or claim. Considered together, the volume, variety, and nature of these deviations compel the conclusion that Spencer did not misunderstand the court's order. He disregarded it.

Plaintiffs' timeliness and laches arguments fare no better. Plaintiffs contend that Rahmanzai could have raised objections when the proposed redlines were filed in June 2025, rather than waiting until after the operative complaint was filed and characterize the motion as a delayed effort to challenge allegations apparent for months. The court disagrees. There is no waiver here because the basis for Rahmanzai's motion did not exist until the operative complaint was filed. The deviations were not in the proposed redlined complaint. Rahmanzai could not have anticipated, let alone objected to, allegations that did not yet exist. Nor would it have been prudent to object to a previously denied motion that no party was actively pursuing. Rahmanzai's right to challenge the filed complaint arose only when Plaintiffs filed it on November 12, 2025, and he exercised that right timely.

Laches is equally inapplicable. The Supreme Court has recognized that laches "is a defense developed by courts of equity" whose "principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 678 (2014). A procedural motion to enforce a court order is neither an equitable claim nor one lacking a governing rule because the court's order itself supplied the operative standard. Laches has no place in this analysis, and Spencer cites no authority to the contrary.

Although Rahmanzai moves to strike under Rule 12(f), the court does not rely on that rule alone. Federal courts have the inherent authority to manage their own proceedings and to control the conduct of those who appear before them, including the power to remedy pleadings filed in violation of court orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). Rule 12(f) independently authorizes the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Together, these two sources of authority support the same relief, and the court employs both here. The question is simply one of proportionality. District courts retain broad discretion to manage pleadings and enforce their orders in a manner that promotes efficient case resolution, but the remedy must fit the violation. *Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1997) (*citing Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1194 (8th Cir. 1976)). Because striking the unauthorized paragraphs fully remedies the non-compliance and restores the complaint to the form this court authorized, complete dismissal (on this ground at least), or a more severe sanction is not warranted at this time.

Accordingly, the following paragraphs of the Second Amended Complaint (Filing No. 225) are hereby stricken as unauthorized additions without leave: Paragraphs 2, 3, 22, 23, 26, 28, 39, 59-73, 97, 102,  135, 151, and 199. Paragraphs 15, 16, 193, 194, and 195, which Plaintiffs' own redlined submission represented would be deleted, are likewise stricken. Paragraphs 49, 51, 91, 92, 95, 96, 99, 103, 106, and 148, which were revised in ways that deviate from the language authorized in Filing No. 169-1, are also stricken.[3] Plaintiffs shall file a corrected Second Amended Complaint consistent with this order within fourteen (14) days. The document shall be captioned "Corrected Second Amended Complaint." The court also grants the alternative request for additional time to file a

---

[3] Several paragraphs identified by Rahmanzai as unauthorized in Filing No. 225 were included in Filing No. 169-1 as proposed additions or consolidations of existing allegations and are therefore not stricken. These include Paragraph 32 and Paragraph 33, which were part of an authorized consolidation of Paragraphs 39-43; Paragraph 35, which was an authorized consolidation of Paragraphs 64 and 69, and Paragraph 48, which was explicitly moved from Paragraph 116.

13

responsive pleading. Rahmanzai shall have twenty-one (21) days from the date Plaintiffs file their corrected Second Amended Complaint to file a responsive pleading.

The court does not take lightly what the record reflects already about counsel's approach to this litigation. Counsel has previously been warned that actions in this litigation may have consequences. The corrected Second Amended Complaint shall contain no additions, revisions, or omissions beyond those expressly directed herein. If Plaintiffs fail to file a corrected Second Amended Complaint in strict compliance with this order, the undersigned will not hesitate to recommend that this action be dismissed in full with prejudice.[4]

To the extent this order affects the pending motions to dismiss (Filing No. 259, Filing No. 262, Filing No. 321, Filing No. 334, Filing No. 336, Filing No. 337, Filing No. 341, Filing No. 344), that issue must also be addressed to avoid further confusion. Those motions have not been referred and will be decided by Senior United States District Judge Joseph F. Bataillon, but the court has reviewed them to identify any arguments the stricken paragraphs may have supported. The motions filed by Havermann, Kotsan, Club 180, the Longcor defendants, Scalise, Toast, and Pull (Filing No. 259, Filing No. 262, Filing No. 321, Filing No. 334, Filing No. 337, Filing No. 344) present no such issue. Those motions focus on arguments independent of the stricken language. But the court notes that Plaintiffs' consolidated opposition relies in several instances on paragraphs stricken by this order., including Paragraph 102 in support of the RICO prostitution and drug trafficking arguments, Paragraphs 59-73 in support of the negligence argument against the landlord defendants, and Paragraph 135 in support of the sex trafficking argument. (Filing No. 364, pp. 9-11, 17). Consistent with the order herein, the undersigned now recommends to Judge

---

[4] The court notes for completeness that it recognizes Defendants Michael Alan Beene, David Ekdahl, Jessica Richardson, Michael Elayan, and Bravo1 Security, Inc. have been dismissed since the filing of the Second Amended Complaint. (Filing No. 307, Filing No. 315, Filing No. 347). Those dismissals are a matter of record and will be given effect regardless of whether they are reflected in the corrected pleading. In other words, those defendants should remain by name as they were in Filing 169-1. To avoid any more confusion, the court will reiterate that the *only* changes to the corrected Second Amended Complaint are those expressly authorized herein.

Bataillon that those arguments be disregarded for purposes of deciding the motions to dismiss, as the paragraphs relied upon are now stricken.

The striking of Paragraphs 59-73 has direct consequences for the pending motions to dismiss filed by Defendants Evron, Seven Oaks, Nancy Waggener and Paul Waggener (the "landlord Defendants"). (Filing No. 336, Filing No. 341). Those paragraphs, grouped under the new heading "Landlord Premises Liability," provided the primary factual support for Plaintiffs' negligence count against the landlord Defendants. In particular, Plaintiffs rely on those paragraphs to establish that the landlord defendants owed a duty to Plaintiffs. (Filing No. 364, at pp. 16-18). Those arguments include allegations that the landlord defendants failed to screen Longcor as a tenant, failed to inspect the premises, failed to confirm insurance coverage, and negligently allowed an allegedly disabled person to manage the property. The undersigned recommends that Judge Bataillon disregard those allegations and evaluate the landlord defendants' dismissal arguments on the negligence count solely against the authorized allegations that remain in Paragraphs 216-221 of the corrected complaint.

Finally, the filing of the corrected Second Amended Complaint does not render any pending motion to dismiss moot. The corrected pleading is a ministerial correction ordered by this court to bring the complaint into conformity with the amendment order, not a substantive amendment that requires defendants to reassert their dismissal arguments. No party, with the exception of Rahmanzai as set forth above, is permitted to refile any motion to dismiss, and no party is authorized to file supplemental briefing, new arguments, or additional evidence in connection with any pending motion to dismiss on account of the corrected pleading. Any such filing may be stricken. All pending motions to dismiss (Filing No. 259, Filing No. 262, Filing No. 321, Filing No. 334, Filing No. 336, Filing No. 337, Filing No. 341, Filing No. 344) and all related briefing shall remain operative and shall be decided by Judge Bataillon in due course.

15

3. *Havermann's Motion to Strike*

The court's analysis regarding Havermann's motion is different, as is the outcome. While Rahmanzai's motion succeeded on a procedural challenge, Havermann's motion raises a substantive challenge under Rule 12(f) to the truth and relevance of specific allegations, which is a different legal question governed by a different standard. For the reasons set forth below, that motion is denied.

Havermann moves to strike Paragraphs 149-151 of the Amended Complaint, (Filing No. 24), and Paragraphs 95, 166, 175, 176, and 178 of the Second Amended Complaint, (Filing No. 225), all of which arise from the March 2025 call. (Filing No. 253).[5] Those allegations assert that during the call Havermann threatened Spencer's life, that Spencer reported the incident to law enforcement, that a misdemeanor warrant was issued for Havermann's arrest, and that Havermann later filed a retaliatory defamation action against Spencer. Havermann argues these allegations are false and therefore immaterial, impertinent, and scandalous within the meaning of Rule 12(f).

In support of his motion, Havermann submitted a sworn affidavit denying that he threatened Spencer during the call and asserting that Spencer falsely reported to law enforcement that Havermann threatened to come to his home and kill him. (Filing No. 255, at paras. 4, 7-8). He also provides a certified transcript of the call and an April 3, 2025 email in which Spencer told law enforcement that Havermann had "essentially threatened to come to my home to kill me," which Havermann contends further demonstrates that Spencer fabricated or materially mischaracterized the events in question. (Filing No. 280, Ex. A). Plaintiffs argue that the allegations accurately reflect the substance and context of the call, and that the statements made during it could reasonably be interpreted as threatening. (Filing No. 274, Filing No. 275, at paras. 31-39, 109-114).

---

[5] The court notes that Havermann's motion is unaffected by the ruling on Rahmanzai's motion. None of the paragraphs Havermann seeks to strike appear on the list of paragraphs stricken or amended by this order, and the allegations at issue therefore remain part of the operative complaint as corrected.

Applying the Rule 12(f) standard here, the court concludes that the requested relief is not warranted. Havermann's motion rests largely on the argument that the recording transcript and April 3, 2025 email, conclusively demonstrate that the allegations are false. But determining precisely what statements were made, how they should be interpreted, and whether they could be perceived as threatening presents factual questions that should not be resolved on a motion to strike. *See, e.g.*, *Lunsford v. United States*, 418 F. Supp. 1045 (D.S.D. 1976) (denying motion to strike that raised disputed legal and factual questions). Such disputes go to the truth of the allegations and the weight of the evidence -- matters more appropriately addressed through discovery and, if necessary, dispositive motions.

Havermann has also not shown that the challenged allegations are immaterial or unrelated to the controversy. Matters are "immaterial" only if they have "no essential or important relationship to the claim for relief." *Resolution Tr. Corp. v. Fiala*, 870 F. Supp. 962, 977 (E.D. Mo. 1994). The allegations at issue concern communications between Havermann and Spencer during the pendency of this litigation, conduct Plaintiffs contend forms part of a broader pattern of intimidation and retaliation relevant to their civil RICO claims. At a minimum, the alleged events provide context for the parties' ongoing dispute and the circumstances surrounding the litigation. The court therefore cannot conclude that the challenged allegations lack any relationship to the claims asserted.

Nor does the court find that the allegations are "scandalous" within the meaning of Rule 12(f) merely because they may be embarrassing or harmful to a party's reputation. *Wolf v. Altmann*, 2022 WL 2834674, at 3 (E.D. Mo. July 20, 2022). Rather, Rule 12(f) targets allegations that unnecessarily reflect on a party's moral character and bear no possible relation to the controversy. *Id.* Here, the challenged allegations concern interactions between the parties (and counsel) and the events that allegedly followed. Because those events are connected to the factual narrative underlying Plaintiffs' claims, they cannot be deemed scandalous within the meaning of Rule 12(f). Whether Plaintiffs' characterization of those events is ultimately supported by the evidence is a matter to be resolved through discovery and the ordinary course of litigation.

Finally, to the extent Havermann seeks to strike the parallel allegations from the Amended Complaint (Filing No. 24, at paras. 149-151), that request is denied as moot. An amended complaint supersedes the original and renders it without legal effect. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Because the Second Amended Complaint is the operative pleading, the Amended Complaint no longer retains any legal effect, and there is no practical need to strike allegations from a pleading that is no longer operative. Accordingly, Havermann's Motion to Strike (Filing No. 253) is denied.

## B. Motions to Disqualify

The court next addresses the three motions seeking Spencer's disqualification as Plaintiffs' counsel. (Filing No. 253, Filing No. 319, Filing No. 345). These motions arise against a backdrop the court has already addressed at length. The record reflects a pattern of conduct by Spencer that this court has found troubling and which was not ignored here. But, disqualification is an extraordinary remedy governed by an exacting legal standard, and the court applies that standard evenhandedly regardless of its views about counsel's conduct more broadly.

Each motion proceeds on different facts, but largely relies on the same two theories. Havermann and Pull argue that Spencer committed fraud on the court by fabricating or misrepresenting facts in the pleadings and in communications with law enforcement. All three defendants further contend that Spencer's personal involvement in the events underlying Plaintiffs' claims has made him a necessary witness under the advocate-witness rule. The court first addresses the governing legal standards and then each theory in turn.

### 1. *Legal Standard*

Disqualification of counsel is an extraordinary remedy that interferes with a party's right to counsel of choice and alters the course of litigation in a manner not easily undone. Accordingly, the Eighth Circuit requires district courts to apply strict scrutiny to disqualification motions and to guard against their strategic use as a litigation tactic. *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007); *see also Awnings v. Fullerton*, 912 F.3d

18

1089, 1096 (8th Cir. 2019). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (*quoting Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F. Supp. 607, 613 (S.D. Ohio 1988)). The burden rests entirely on the movant. *Kitchin v. Bridgeton Landfill, LLC*, 631 F. Supp. 3d 752, 755 (E.D. Mo. 2022).

When reviewing a motion to disqualify, the court applies "the same rules governing the professional conduct of attorneys that the district court has adopted." *Awnings*, 912 F.3d at 1095 (*quoting Harker v. CIR*, 82 F.3d 806, 808 (8th Cir. 1996)). In addition to this district's local rules addressing attorney conduct and discipline, attorneys admitted to practice in this court must comply with the Nebraska Rules of Professional Conduct, which are adopted as the rules of this court. NEGenR 1.8(a).

Havermann and Pull invoke disqualification based on alleged fraud on the court, which is subject to the most exacting standard. Fraud on the court requires clear and convincing evidence of intentional deception directed at the court itself -- conduct that actually corrupts the judicial process. *Landscape Properties, Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995). Mere disagreement about the interpretation of evidence, even sharp disagreement, does not constitute fraud on the court, nor does the assertion of contested factual positions amount to corruption of the judicial process. *Id.*

All three motions to disqualify rely on Nebraska Rule of Professional Conduct §3-503.7 ("Rule 3.7"), commonly known as the "advocate-witness rule." That rule provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

19

(2) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Neb. Ct. R. Prof. Cond. §3-503.7. The Eighth Circuit construes "necessary" narrowly: the lawyer's testimony must be material to the issues in dispute and unobtainable from other sources. *Macheca Transp. Co.*, 463 F.3d at 833. Testimony that is cumulative, corroborative, or obtainable through documents, recordings, or other witnesses does not satisfy the necessity requirement, and the rule does not require disqualification merely because an attorney has personal knowledge of relevant events. *Id.*

Courts approach pretrial disqualification with particular caution. *See, e.g., Droste,* 477 F.3d at 1035. The primary purpose of Rule 3.7 is to avoid misleading the trier of fact and "the possible confusion which might result from the jury observing a lawyer act in dual capacities -- as witness and advocate." *Id.* Because juries are generally not privy to pretrial proceedings, the rule does not ordinarily disqualify counsel from performing pretrial activities, except when the "pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." *Id.*, at 1035-36 (*citing World Youth Day, Inc. v. Famous Artist Merch. Exch., Inc.,* 866 F. Supp. 1297, 1303 (D. Colo. 1994)).

2. *Fraud on the Court*

Havermann and Pull each argue that Spencer should be disqualified because the Second Amended Complaint contains fabricated or knowingly false allegations, related to the March 2025 call as to Havermann, and the Carter Lake incident as to Pull. (Filing No. 254, Filing No. 319). The question in each instance is whether the alleged inaccuracies constitute fraud on the court that sufficiently justifies disqualification. The court concludes that they do not.

Fraud on the court is a serious accusation, but the doctrine is narrowly confined. The Eighth Circuit has made clear that it refers to conduct directed at the judicial process itself, conduct that corrupts the court's ability to perform its impartial adjudicative function,

20

and not merely to litigation misconduct or alleged concealment between private parties. *See Landscape Properties*, 46 F.3d 1416. *Landscape Properties* presented compelling facts. At a bankruptcy court hearing over the sale of estate property, counsel sat silently while the bankruptcy judge pointedly asked those present whether they were aware of any collusion between the parties and, as it later emerged, an undisclosed side agreement existed under which a competing bidder had been paid $350,000 to withdraw his higher offer. *Id*. at 1421-22. The trustee, unaware of the agreement at the time, truthfully denied any knowledge of collusion. The attorney who did know said nothing. *Id*. at 1422. On those facts, concealment at a judicial proceeding, a direct question from the court going unanswered, and a secret deal that the plaintiff argued had corrupted the entire sale process, the Eighth Circuit still rejected the fraud on the court claim without hesitation.

The court emphasized that fraud on the court is reserved for only the most extraordinary circumstances and is justified "only by the most egregious misconduct directed to the court itself, such as bribery of a judge or juror or fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence." *Id.* (*quoting Pfizer Inc. v. International Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976)). The court reasoned that counsel had made no affirmative misrepresentations to the court, had presented no fabricated evidence, and had not engaged in any scheme designed to improperly influence or impair the court's function. *Id.*

That standard traces back to the Eighth Circuit's earlier decision in *Pfizer Inc. v. International Rectifier Corp.*, 538 F.2d 180. In *Pfizer*, the district court concluded that a patentee's conduct during patent prosecution and related litigation amounted to fraud and inequitable conduct, rendering the patent unenforceable. The court relied on numerous alleged acts of misconduct, including purported nondisclosure of prior art, misleading arguments to patent examiners, and alleged concealment of scientific data. However, the Eighth Circuit reversed, explaining that fraud on the court targets schemes that interfere with the judicial machinery performing the task of impartial adjudication, and requires the most egregious misconduct directed at the court itself, supported by clear, unequivocal,

21

and convincing evidence. *Id*. at 195. The court found the record fell far short of that standard because the misrepresentation was a single error repeated by multiple individuals until promptly corrected upon discovery, and crucially, the withheld memoranda were actually favorable to Pfizer's position, negating any plausible motive to conceal them. *Id.*

Here, Havermann's and Pull's arguments also fall short of this required showing. Havermann argues that Spencer committed fraud on the court by fabricating allegations that Havermann threatened his life during the March 2025 call. (Filing No. 225, at para. 95). Spencer maintains that the statements made during that call, viewed in the context of the broader litigation, reasonably conveyed a physical threat and that his characterization of the call was made in good faith. (Filing No. 357, Filing No. 358, at paras. 5-6). The court has reviewed the transcript of that call, which reflects a contentious but brief exchange. The transcript does not appear to contain an explicit threat of physical violence. Havermann's repeated use of phrases such as "I'm coming for you" appears in the context of announced litigation, which Havermann contends demonstrates that the statements were directed at legal action, not physical harm. (Filing No. 255, Ex. A). Spencer, however, argues that those same statements, taken together with the overall tenor of the call and the threatening atmosphere surrounding the litigation, could reasonably be interpreted as conveying a threat to his physical safety. (Filing No. 357, Filing No. 358, at paras. 5-6). Both interpretations may be plausible.

The question on a disqualification motion, however, is not whether Spencer's interpretation of the call was correct or even reasonable, but whether he fabricated the allegation or manufactured a claim he knew the record could not support. The fraud on the court standard requires clear and convincing evidence of deliberate fabrication. *Landscape Properties*, 46 F.3d at 1422. The dispute presents a question of fact about how a reasonable person would interpret ambiguous statements in a heated conversation, not evidence of fabrication. A disagreement about what words meant is precisely the kind of dispute the adversarial process, not a disqualification motion, exists to resolve.

Similarly, Pull argues that Spencer fabricated allegations regarding the Carter Lake incident, despite knowing the Carter Lake Police Department had not substantiated those allegations. (Filing No. 225, at paras. 180-83, Filing No. 319, at pp. 6–7). Spencer disputes that characterization, asserting that the allegations reflected Plaintiffs' good faith understanding of events at the time of filing. The court does note a timing problem that Spencer's briefing does not adequately address. The Carter Lake police report is dated June 10, 2025, and specifically states that no criminal charges would be filed. (Filing No. 320, Ex. B). The Motion to Amend was filed the next day and the Second Amended Complaint was not filed until November 12, 2025, five months later. (Filing No. 225, Filing No. 320, Ex. B). Despite that, the Second Amended Complaint affirmatively alleges that "the Carter Lake Police Department is investigating criminal charges against James Pull for Felony Terroristic Threats." (Filing No. 225, at para. 183). That allegation, stated in the present tense and without qualification, is difficult to reconcile with a police report that had conclusively closed the matter five months earlier. Whether that motion can survive scrutiny at all is a question Pull has separately raised through a pending motion to dismiss.[6] (Filing No. 337). The court declines to prejudge that issue here.

The question currently before the court is a narrower one, which is whether Spencer's inclusion of that allegation constitutes fraud on the court. Even accepting the most troubling inference, that doctrine requires clear and convincing evidence of a deliberate scheme to corrupt the judiciary, not merely an allegation that overstates or mischaracterizes the state of a police investigation. *Landscape Properties*, 46 F.3d at 1422. That demanding standard is not met here. The court however expects Spencer to address this discrepancy going forward and cautions him that continued reliance on allegations he

---

[6] The court flags this issue in connection with the pending motion to dismiss. Paragraph 183 is not among the paragraphs this order strikes or directs to be amended, and Spencer should not interpret that omission as authorization to modify it in the corrected complaint. Once again, the corrected Second Amended Complaint shall conform strictly to the directives of this order. The sufficiency of paragraph 183 as pleaded is a matter for Judge Bataillon to resolve in connection with Pull's motion to dismiss, which is now fully briefed.

knew or should have known to be unsupported may expose him to sanctions under Fed. R. Civ. P. 11.[7]

Pull separately argues that Spencer misrepresented his disciplinary history by stating that he has "never been reprimanded, suspended or disbarred," and points to another prior matter in which Spencer was retained as counsel and in which he was admonished, *Grove v. Meltech, Inc.*, No. 8:20-cv-193, 2021 U.S. Dist. LEXIS 74083 (D. Neb. April 15, 2021); (Filing No. 275, at para. 81, Filing No. 365, at p. 3). Spencer's only response is the bare assertion in his declaration that "Defendants statement that I was 'sanctioned' is simply false." (Filing No. 362, at para. 35). The court has reviewed the *Grove* record and finds that response to be contradicted by the record, at least as to a prior reprimand. Ironically, it was District Judge Joseph Bataillon, the same district judge assigned in this matter, who personally admonished Spencer in *Grove* after his client apparently made efforts to contact potential class members in a wage and hour suit and warned him that future noncompliance or sanctionable conduct could result in consequences up to and including entry of judgment against his client. *Id.* While Spencer's bold denial here is concerning, and may warrant further exploration, it does not justify the extreme remedy of wholesale disqualification for the same reasons already noted.

### 3. *The Advocate-Witness Rule*

The court's analysis under the advocate-witness rules leads to the same conclusion, which is raised by Pull, Havermann, and Rahmanzai. As described above, each defendant argues that Spencer's personal involvement in events underlying Plaintiffs' civil RICO and witness intimidation claims, including the March 2025 phone call and the Carter Lake incident, places him in the dual role of advocate and fact witness. (Filing No. 318, Filing No. 343). Defendants rely primarily on *Beller v. Crow*, 742 N.W.2d 230, 235 (Neb. 2007),

---

[7] Pull argues that, in an email to opposing counsel, Spencer also fabricated an allegation that Pull's "niece Caroline" assaulted and threatened a witness on Pull's behalf. (Filing No. 320, Ex. A). The fraud on the court doctrine targets misrepresentations directed at the judicial process, not every communication between litigants.

in which the Nebraska Supreme Court disqualified plaintiff's counsel because he personally witnessed and actively participated in events central to the claims and had a unique perspective on the plaintiff's emotional distress that could not be obtained from other sources.

In *Beller*, disqualification turned heavily on the attorney's active physical participation in the very incidents giving rise to the claims. The attorney had personally intervened in an altercation by directing a defendant to leave, blocking her car to prevent her from following the plaintiff, and calling police during a separate school confrontation. *Id.* He was not merely a bystander, he was an actor in the events themselves. Furthermore, his close personal relationship with the plaintiff gave him a singular window into her emotional state that, the court found, other witnesses simply could not replicate. *Id.* at 235. The court acknowledged that other witnesses were present for some of the same events, but concluded that none could offer the attorney's "unique perspective of the operational facts." *Id.* It was the combination of active participation and intimate personal observation, neither of which could be sourced elsewhere, that made his testimony unobtainable from any other witness.

At this stage, the record does not establish that Spencer's testimony would be similarly irreplaceable. Plaintiffs point to a range of independent witnesses and documentary evidence that may be capable of establishing the relevant facts without resorting to Spencer's testimony, including affidavits from Plaintiffs Chuck Streblow and Hernandez, as well as security guards, Club 180 employees, and other third-party witnesses. (Filing No. 361). Plaintiffs also identify text messages, videos, social media posts, and other records documenting the alleged misconduct. (Filing No. 357). The allegations concerning the March 2025 call, for example, are supported by a verbatim recording and certified transcript already in the record. (Filing No. 255). Havermann himself participated in that conversation and may testify regarding his own statements and intent. Likewise, the Carter Lake incident was reported to law enforcement and documented in a police report, and responding officers and other witnesses may testify

25

regarding those events. Whether any of these sources can fully substitute for Spencer's firsthand knowledge remains to be seen as discovery develops, but on the present record Defendants have not carried their burden of demonstrating that his testimony is unobtainable elsewhere. Defendants' argument that Spencer is a necessary witness because Plaintiffs' RICO claims reference communications involving him does not alter that conclusion. The operative pleadings tie the alleged predicate acts to identifiable evidence independent of Spencer's testimony, and Defendants have not identified any specific fact that only Spencer can establish.

The procedural posture of the case further weighs against disqualification at this time. Rule 3.7 addresses a lawyer acting as an advocate "at trial." Neb. Ct. R. Prof. Cond. §3-503.7(a). Although Havermann and Rahmanzai argue that disqualification should occur now because Plaintiffs have demanded a jury trial and Spencer's potential dual role as advocate and witness could confuse the jury, courts applying the advocate–witness rule generally decline to order disqualification at the pretrial stage unless it is clear that the attorney's testimony will in fact be necessary at trial. *See Droste*, 477 F.3d at 1035. The purpose of the rule is to prevent prejudice during the presentation of evidence to the factfinder, not to prevent counsel from participating in pretrial litigation where the need for testimony remains uncertain. *Id.*

This case remains at a very early stage. Discovery has not yet commenced (which mind you is hard to believe with now more than 375 filings on the docket), and dispositive motions directed at the Second Amended Complaint remain pending. Because the factual record has not been developed, the universe of potential witnesses and documentary evidence has not been fully established. The undersigned therefore declines to disqualify counsel where the necessity of his testimony is speculative or contingent on future developments. *Id.*, at 1035-36. At this stage, Defendants have not demonstrated that Spencer's testimony would be unobtainable through other witnesses, documents, recordings, or discovery. Accordingly, the jury concerns identified by the defendants remain premature.

The court also notes the practical consequences of the requested relief. Although Havermann and Rahmanzai argue that disqualifying Spencer would not meaningfully prejudice Plaintiffs at this stage, that consideration arises only after the moving party establishes that the attorney is likely to be a necessary witness. *See* Neb. Ct. R. Prof. Cond. §3-503.7(a). Because Defendants have not made that threshold showing, the court need not conduct an extensive hardship analysis. It bears noting, however, that because Spencer has served as Plaintiffs' counsel since the inception of this case, disqualification would interfere with Plaintiffs' choice of counsel and could disrupt the progress of the case. The advocate-witness rule is not intended to permit disqualification simply because an opposing party anticipates challenging an attorney's credibility.

### 4. *Ethical Violations and Misrepresentations*

Pull's remaining argument that Spencer should be disqualified for violating Nebraska Rules of Professional Conduct governing candor to the tribunal and fairness to opposing parties does not independently support a different result. (Filing No. 319, at pp. 7-9). The conduct Pull identifies is the same conduct addressed in the fraud on the court analysis above. The court has not ignored the concerns Pull raises. To the contrary, those concerns have been carefully considered and addressed elsewhere in this order. That said, the appropriate vehicle for addressing counsel's professional obligations is not disqualification, absent the showing noted herein. Disputes over the factual basis of a party's allegations are ordinarily resolved through the adversarial process, not through removal of counsel. Absent a clear showing that an attorney knowingly made false statements or fabricated evidence, disqualification is not warranted. Pull's motion to disqualify on that basis is therefore denied for the same reasons set forth above.

### C. Motion for Sanctions

Finally, the court turns to Pull's motion for sanctions (Filing No. 352), which arises from Plaintiffs' decision to serve a subpoena on the Sarpy County Sheriff's Office before

the parties conducted a Rule 26(f) conference, before the court authorized early discovery, and after Pull served a written objection. (Filing No. 323, Filing No. 324, Filing No. 354).

On January 14, 2026, Spencer served a Notice of Subpoena on all counsel directing the Sarpy County Sheriff's Office to produce a 2024 police report related to Defendant Pull and a non-party to this case. The following day, Pull served a formal written objection to the subpoena. (Filing No. 323). One day later, on January 16, 2026, Spencer filed a Motion for Early Discovery, acknowledging that court authorization was required before the subpoena could be served and requesting leave to do so. (Filing No. 324). The court entered an order that day setting a briefing schedule on the motion and staying Plaintiffs' response deadline to Pull's Motion to Disqualify. (Filing No. 328). Notwithstanding Pull's pending objection and his own motion seeking court authorization, Plaintiffs served the subpoena. On January 30, 2026, the court denied the Motion for Early Discovery, finding that Plaintiffs had not demonstrated good cause and that the requested report was irrelevant to the issues raised in Pull's pending Motion to Disqualify. (Filing No. 354). Pull filed the present Motion for Sanctions the same day, seeking attorney fees and related relief under Fed. R. Civ. P. 37(b)(2).

> 1. *Rule 26(d)(1) and NECivR 45.1(b)*

Rule 26(d)(1) provides that a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," absent court order. Fed. R. Civ. P. 26(d)(1). The rule establishes a clear sequencing requirement designed to ensure the orderly commencement of discovery. NECivR 45.1(b) further provides that once a written objection to a proposed subpoena is served, no subpoena may be issued until the objection is resolved. The language of the local rule is mandatory.

The relevant facts are not genuinely disputed. Spencer served the subpoena before any Rule 26(f) conference had occurred, before this court authorized discovery, and in the face of a timely and formally served written objection. Rather than acknowledge the full weight of that record, Spencer characterizes the violation as an honest mistake caused by

28

his failure to read NECivR 45.1(b). (Filing No. 367, at paras. 10, 12). That explanation does not excuse the violation. Attorneys practicing before this court bear the same obligation to know its local rules as they do the Federal Rules of Civil Procedure and all applicable federal law. *See Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997) (*citing* 14 James Wm. Moore, Moore's Federal Practice § 83.34 (3d ed. 1997)). Spencer also attempts to shift blame to Pull's counsel, asserting that had they "mentioned the seven-day local rule in their email," he would have withdrawn the motion. (Filing No. 367, at para. 14). That argument fares no better, as Spencer bore the obligation to know the rules governing his own filings.

Spencer further argues that because the subpoena predated the court's orders setting the briefing schedule, no court order was violated. The court finds this argument unpersuasive and directly contradicted by Spencer's own filings. After serving the subpoena, Spencer filed a motion asking this court for permission to serve it. He cannot simultaneously tell this court he needs permission to act and claim he had already acted before permission was required. Any one of the circumstances here, including serving the subpoena before any Rule 26(f) conference had occurred, without court authorization, and in the face of a timely and formally served written objection would independently establish a violation of the applicable rules. Taken together, they reflect a deliberate disregard for the orderly administration of discovery that this court will not condone. The violations of Rule 26(d)(1) and NECivR 45.1(b) are plain and unexcused.

2. *Appropriate Sanctions*

Rule 37 authorizes sanctions for failure to comply with a discovery order, and federal courts independently possess inherent authority to enforce compliance with the Federal Rules and local rules and to address conduct that abuses the judicial process. *Chambers*, 501 U.S. 32. Under Rule 37(b)(2)(C), upon a finding that sanctions are appropriate, the court must order the disobedient party to pay the reasonable expenses, including attorney fees, caused by the violation. Rule 37(b)(2)(A)(ii) separately authorizes the court to prohibit a disobedient party from introducing designated matters into evidence

as a sanction for discovery violations. Fed. R. Civ. P. 37. Any sanctions imposed must remain proportionate to the transgression and related harm. *See Rodgers v. The Curators of the Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998). Both forms of relief are available here, and as set forth below, the court finds that each is warranted.

Before reaching the merits, the court addresses Plaintiffs' threshold argument that Pull's failure to serve a Rule 11 safe harbor notice bars this motion. That argument fails on its face. Rule 11(d) expressly provides that Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). Because Pull grounded this motion in both Rule 26 and 37, Rule 11's procedural prerequisites have no application here.

The court also addresses its authority to impose sanctions. Pull moves for sanctions under Rule 37(b)(2), which authorizes sanctions for failure to comply with a discovery order. Strictly speaking, no such order had been entered at the time Spencer served the subpoena because the court's order denying early discovery came after the subpoena was already served. The court therefore does not rest its sanctions authority on Rule 37(b)(2) alone. Federal courts possess inherent authority, independent of any rule, to sanction conduct that abuses the judicial process or defies the orderly administration of litigation. *Chambers*, 501 U.S. at 43-46. That authority exists to address situations where a party circumvents the rules in a manner that falls between the precise procedural requirements of a given rule.

Based upon those authorities, the court finds that sanctions are warranted here. Spencer's own declaration states that his goal in seeking the Sarpy County report was to "destroy James Pull's credibility and bolster mine." (Filing No. 326, at p. 18). That is not a legitimate basis for expedited discovery, and the court denied the Motion for Early Discovery on similar grounds, finding the request irrelevant to the disqualification motion and offered for an improper purpose. (Filing No. 354). That same improper purpose drove the procedural violation at issue here. Spencer did not stumble into a technical misstep

while pursuing a legitimate goal. Rather, he bypassed the rules in pursuit of discovery this court did not authorize.

That conduct imposed real and measurable costs on Pull and on the court. Pull's counsel investigated the improperly issued subpoena, served a formal written objection, briefed the Motion for Early Discovery, and prepared the present Motion for Sanctions. Every one of those steps was a direct and foreseeable consequence of Spencer's decision to serve a subpoena he knew required court authorization. The Federal Rules of Civil Procedure are not procedural suggestions. Rule 1 instructs that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. That obligation rests on counsel no less than on the court. Spencer's conduct here stands in direct contradiction to that mandate. It burdened opposing counsel, consumed this court's limited time and resources, and added unnecessary motion practice to a case that has already generated far more than its share. The fact that the subpoena ultimately produced no usable discovery does not diminish the costs it generated along the way, and it does not excuse the conduct that caused them.

The only question remaining then is what remedy is proportionate to that conduct. The court has considered the full range of sanctions Pull requests, including dismissal of Plaintiffs' claims against him and a finding of contempt, and declines to impose those more severe remedies as their application requires a record demonstrating willful and persistent defiance or substantial prejudice to the opposing party. *See Schoffstall v. Henderson*, 223 F.3d 818, 823-24 (8th Cir. 2000). The subpoena produced no usable discovery, Pull suffered no evidentiary prejudice, and the violation, though inexcusable, did not interfere with the merits of any pending motion.

Pull was nonetheless forced to expend resources responding to conduct that violated clear and mandatory rules. The court finds that an award of attorney fees would restore Pull to the position he would have been had counsel complied with the rules in the first place, and hopefully deters future violations by ensuring that procedural shortcuts carry a

potential cost. Accordingly, the court awards Pull reasonable attorney fees incurred in connection with: (1) responding to the subpoena; (2) opposing the Motion for Early Discovery; and (3) litigating the Motion for Sanctions. The court further orders that the Sarpy County police report that was the subject of the subpoena is excluded for all purposes in this litigation. Plaintiffs may not use it in connection with any pleading, any dispositive motion, or any other filing or proceeding in this case, and may not re-obtain it through any subsequent subpoena or request. To permit Plaintiffs to benefit from a subpoena served in deliberate violation of applicable rules would undermine the integrity of the discovery process and this court's authority. *See Steinlage v. Mayo Clinic Rochester*, 2005 WL 8164544, at *10 (D. Minn. Mar. 18, 2005) (finding that court processes 'are undermined when its authority is patently abused' and awarding sanctions where party served subpoena in violation of scheduling order and applicable rules); *see also Chambers*, 501 U.S. at 44-45 (federal courts retain inherent authority to remedy bad-faith conduct that abuses the judicial process). Pull's Motion for Sanctions is therefore granted in part consistent with this order.

### III.    CONCLUSION

For the reasons stated above, the motions to strike are granted in part, the motions to disqualify are denied, and Pull's motion for sanctions is granted in part.

Accordingly,

IT IS ORDERED:

1. Havermann's Motion to Strike and Disqualify is denied. (Filing No. 253).

2. Rahmanzai's Motion to Strike the Second Amended Complaint is granted in part. Plaintiffs shall file a corrected Second Amended Complaint in strict compliance with this order on or before April 16, 2026, to be captioned "Corrected Second Amended Complaint." Rahmanzai's alternative request for additional time to file a responsive pleading is granted. Rahmanzai shall file his responsive pleading within

twenty-one (21) days of the date Plaintiffs file their Corrected Second Amended Complaint. (Filing No. 269).

3.  Pull's Motion to Disqualify is denied. (Filing No. 318).

4.  Havermann and Rahmanzai's Joint Motion to Disqualify is denied. (Filing No. 343).

5.  Pull's Motion for Sanctions is granted in part. (Filing No. 352).

    A.  The Sarpy County police report that was the subject of the improperly served subpoena is excluded for all purposes in this litigation. Plaintiffs may not use it in connection with any pleading, dispositive motion, or other filing or proceeding in this case, and may not re-obtain it through any subsequent subpoena or discovery request.

    B.  On or before April 16, 2026, Pull shall submit an itemized billing statement of its requested fees and costs to Plaintiffs. Said fees and costs will be limited only to the following tasks:

        i.   Responding to the subpoena (Filing No. 323);

        ii.  Opposing the Motion for Early Discovery (Filing No. 348); and,

        iii. Preparing for and submitting the Motion for Sanctions. (Filing No. 352).

    C.  Plaintiffs shall have seven (7) days thereafter, or no later than April 23, 2026, to respond with any objection to the amount requested. The response must include specific objections to itemized tasks and the reasons why.

        i.   If Plaintiffs do not respond timely, the fee request will be deemed undisputed and Pull shall file a notice of the fees and costs to be awarded.

        ii.  If the parties agree to the amount to be awarded, they shall file a joint stipulation for entry of an order awarding costs and fees on or before April 23, 2026.

33

D. If the parties do not agree on the attorney fees and costs to be awarded, or if Plaintiffs timely object to Pull's statement of attorney fees and costs to be awarded, Pull shall file a motion for assessment of attorney fees and costs no later than May 7, 2026. This motion shall be submitted in accordance with the court's fee application guidelines outlined in NECivR 54.3 and 54.4, but a supporting brief will not be required.

E. If a motion for fees is required, the court may award Pull up to an additional $1,000.00 to recover the cost of preparing its motion for assessment of fees.

Dated this 2nd day of April, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge

34