IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHUCK STREBLOW, et al.

Plaintiffs,

vs.

CLUB 180, et al.

Defendants.

**8:25CV241**

**FINDINGS AND
RECOMMENDATION**

This matter comes before the court following Plaintiffs' filing of their Corrected Second Amended Complaint on April 16, 2026 (Filing No. 380), the court's Order to Show Cause entered April 21, 2026 (Filing No. 381), and Plaintiffs' response to that order. (Filing No. 398). For the reasons stated below, the court finds that the Corrected Second Amended Complaint does not comply with the April 2, 2026 order, that Spencer's response to the Order to Show Cause is inadequate, and recommends that this action be dismissed with prejudice.

## I.    BACKGROUND

1.    *The April 2ⁿᵈ Order*

On April 2, 2026, the undersigned resolved a series of related motions, including Defendant Abdul Rahmanzai's Motion to Strike the Second Amended Complaint, (Filing No. 269), which the court granted in part. (Filing No. 377). The court found that the Second Amended Complaint (the "SAC") filed November 12, 2025, (Filing No. 225) materially departed from the redlined proposed complaint the court had authorized as the basis for the operative pleading. (Filing No. 169-1) (hereinafter referred to as the "April 2nd Order"). The court's order was specific. It directed Plaintiffs' counsel Evan Spencer ("Spencer") to

file a corrected pleading that was compliant with its previously authorized redlined complaint, subject only to: (1) the removal of stricken paragraphs of Filing No. 225 identified in the order, (2) the removal of defendants and claims as previously ordered on November 6, 2025 (Filing No. 222); and (3) subject to specific instructions to retain dismissed defendants, specifically Beene, Ekdahl, Richardson, Elayan, and Bravo1 Security, who were to remain in the corrected pleading because their dismissals were noted as a matter of record. (Filing No. 377, at pp. 14, fn. 4). The order also specifically noted that Paragraph 183 of the SAC, which concerned the Carter Lake Police Department's investigation of Defendant James Pull, was not among the stricken paragraphs and that Spencer should not interpret the court's omission of that paragraph as authorization to modify it. (Filing No. 377, at p. 23, fn. 6). The intention of those instructions was to ensure that Spencer took no liberties with the court's directions. The court also provided an unambiguous warning:

> The corrected Second Amended Complaint shall contain no additions, revisions, or omissions beyond those expressly directed herein. If Plaintiffs fail to file a corrected Second Amended Complaint in strict compliance with this order, the undersigned will not hesitate to recommend that this action be dismissed in full with prejudice.

(Filing No. 377, at p. 14). The April 2nd Order also directed that all pending motions to dismiss remain operative and that no party file, supplement, or add new briefing in connection with any pending motion to dismiss on account of the corrected pleading, warning that any such filing may be stricken. (Filing No. 377, at p. 15).

2.      *The Corrected Second Amended Complaint*

Spencer filed a "Corrected Second Amended Complaint" (the "CSAC") on April 16, 2026. (Filing No. 380). The court then conducted its own comparison of the CSAC against the SAC (Filing No. 225), as well as the authorized redline. (Filing No. 169-1). In doing so, the court identified several material departures from the April 2nd order, which then necessitated yet another round of line-by-line comparison that a compliant pleading

2

would have avoided. This is the fourth time the court has been forced to engage in this time-consuming exercise.

In the CSAC, Spencer omitted active defendants, including Rahmanzai (whose motion to strike precipitated the April 2nd Order), and the Landlord Defendants and Toast, Inc. (each of whom had pending motions to dismiss that the April 2nd Order specifically addressed). While the court had ordered Spencer to retain these defendants by name to avoid more confusion, he omitted them anyway. He systematically replaced Plaintiff Kimberly Hernandez's name throughout the CSAC with generic references to "Jane Doe Dancers," altering the substance of individual paragraphs beyond what her dismissal authorized. Spencer removed Paragraphs 180 through 183 of the SAC entirely, despite the explicit direction that he not modify Paragraph 183. Spencer added new language to several causes of action, including three entirely new paragraphs in the drug trafficking count, and he omitted other paragraphs he was instructed to keep because of pending motions to dismiss.[1]

Based upon those material departures from the April 2nd Order, the court entered an Order to Show Cause ("OSC"), directing Spencer to: (1) identify by paragraph each change in the CSAC that differs from the SAC; (2) verify whether each change was authorized by the April 2nd Order and identify the specific provision authorizing it; and (3) identify the impact of those changes on the pending motions to dismiss and the status of each defendant named in the SAC, but omitted from the CSAC, including an explanation of why he did not file Rule 41(a) notices for any defendant he intended to dismiss. (Filing No. 381).

---

[1] The unauthorized language additions include, among others, modifications to the prostitution count (Filing No. 380, at paras. 66-67), the witness intimidation count (Filing No. 380, at para. 129), and the drug trafficking count (Filing No. 380, at paras. 104-105). The three paragraphs added to the drug trafficking count without authorization appear at Filing No. 380, at paras. 115-117, and have no counterpart in the SAC. The court ordered Spencer to retain Abdul Rahmanzai, Evron, Inc., Seven Oaks Investment Corporation, Paul Waggener, Nancy Waggener, and Toast, Inc. as named defendants because of their pending motions to dismiss, but all six were omitted from the CSAC entirely. *See* Filing No. 377, at p. 14, fn. 4; Filing No. 225, at paras. 102-107; Filing No. 380, at paras. 58-65.

After the court entered the OSC, but prior to filing a response, Spencer filed a series of additional motions and notices. (Filing No. 382, Filing No. 383, Filing No. 387, Filing No. 393). Those filings included several notices of voluntary dismissal with prejudice as to defendants Rahmanzai, the Landlord Defendants, and Blaike Koca. (Filing No. 382, Filing No. 396). He also filed a notice of voluntary dismissal without prejudice of Defendant Toast, Inc. (Filing No. 393). Rather than answer the court's question about why those defendants were removed from the CSAC without a notice, Spencer dismissed them only after the OSC was entered. He also filed a "Motion to Set Aside Order Pursuant to FRCP Rule 60," seeking to address further the court's order for sanctions in its April 2nd Order. (Filing No. 383).[2] The next day, Spencer filed a motion to strike the Carter Lake police report and a motion for sanctions against Defendant Pull. (Filing No. 387). None of those filings constituted a response to the OSC, and several of them demonstrate the same pattern of noncompliance that prompted the order in the first place.

3.      *Spencer's Response to the OSC*

Spencer filed his response to the OSC on May 5, 2026, consisting of a brief (Filing No. 398), a declaration (Filing No. 399), and an index of exhibits. (Filing No. 400). The OSC was clear and again required Spencer to identify, by paragraph, each change made in the CSAC that differs from the SAC, to verify authorization for each change against the April 2nd Order, and to explain the procedural impact of his changes to this case. Spencer again failed to comply. (Filing No. 381). Instead, the response reflects the same approach Spencer has taken throughout this litigation: do some of what the court asks, reframe the rest, and ask the court to figure it out and accept the result.

Spencer, for example, did not provide a paragraph-by-paragraph accounting mandated by the OSC. Instead, he attached a "ledger" that he claims traces the origin of every paragraph in the CSAC back to the court-authorized version at Filing No. 169-1.

---

[2] Notably, Spencer did not file a timely objection to the April 2nd Order as permitted under NECivR 72.2. His Rule 60 motion accordingly appears to be an end-run around the permitted objection procedures as set forth in the local rules.

(Filing No. 400-7, Filing No. 400-8). He also now seeks leave to amend his pleadings yet again and provided a redline version of a proposed Third Amended Complaint ("TAC"), with redlines, bluelines, greenlines, and yellow highlighting of his proposed changes. (Filing No. 400-9, Filing No. 400-10). The court finds this response to be inadequate for several reasons.

First, the OSC directed Spencer to provide a complete accounting, not to attach exhibits and ask the court to do the work itself. The court has already devoted substantial judicial resources to deciphering Spencer's many amended pleadings. It has now conducted a line-by-line comparison of four complaints against prior versions, each time expending significant time and resources to identify unauthorized additions, deletions, and revisions that Spencer did not disclose. The OSC was a direct result of those actions. Instead of following the court's directions, Spencer attached more exhibits and invited the court to do the work a fifth time. That is precisely what the OSC was designed to prevent, and it is not a sufficient response.

Second, the OSC directed Spencer to account for changes between the CSAC and the SAC. (Filing No. 225). His ledger compares the CSAC to Filing No. 169-1. Those are different documents and the distinction matters. The SAC is the operative pleading the court directed Spencer to correct. Filing No. 169-1 is the redline that served as the basis for authorizing that correction. They are not interchangeable. The OSC asked Spencer to show his work between what he was ordered to fix and what he filed. A ledger comparing the CSAC to the previous redline rather than to the operative pleading does not answer that question. The practical consequence is that Spencer's ledger, even taken at face value, again prevents the court from evaluating whether the changes Spencer made to the SAC were authorized by the April 2nd Order.

Notably, Spencer now blames the court and the clerk's office for his current predicament. He argues in particular that the court erred by treating Filing No. 169-1 (again, the redlined version of the proposed SAC), as the operative proposed pleading rather than the document at Filing No. 167-1. He argues that if the clerk had given him

5

proper instructions, he would have filed that document alongside the redline, and that the court should not hold him to the consequences of that procedural misstep. He further argues that the court compounded the error by accepting Filing No. 169-1 as the proposed SAC in violation of NECivR 15.1 and that the resulting confusion is the court's fault rather than his own.

This argument is nonsensical and has already been addressed at length in the April 2nd Order. (Filing No. 377, at pp. 9–11). It was Spencer who represented in his "Amended Motion to File Second Amended Complaint" (Filing No. 169) that he "attached a version of the SAC to this amended motion ("Exhibit A") that clearly indicate[d] all the changes made to the amended complaint as requested by the Court[.]" (Filing No. 169, at p. 2). That attachment was filing 169-1, not filing 167. The court took him at his word and ordered him thereafter to file his Second Amended Complaint, which "shall be identical to the red-lined version found at Filing No. [169-1]…" (Filing No. 222). Notably, the court never once mentioned Filing 167 or 167-1 in its order granting Spencer leave to file an amended complaint. (Filing No. 222). The court declines to revisit these arguments again and the distinction between Filing Nos. 167-1 and 169-1 was addressed at length in the April 2nd Order. That order explained why the court treated Filing No. 169-1 as the operative proposed pleading, why Filing No. 167-1 did not serve as a substitute, and why Spencer's motion practice contributed to the confusion he now attributes to the court. Spencer read that order and complied with portions of it and he filed no objection. He cannot now use a show cause response as a substitute for the objection he chose not to file.

Spencer next argues that the fluid nature of the case, including the dismissal of numerous defendants through settlement between June 2025 and April 2026, necessitated his changes to the CSAC. He further argues that the court encouraged settlement and that the resulting dismissals should be viewed as compliance with the court's directions rather than a source of unauthorized changes to the pleading. But this again misses the point. The court's April 2nd Order specifically anticipated the possibility of changing parties in large part because the number of defendants and claims has changed dramatically since the case

was filed over a year ago. Keeping track of this moving target has not been easy. The court directed Spencer to remove dismissed defendants and stricken paragraphs, and it identified which defendants to retain by name notwithstanding their prior dismissal. It did so specifically to avoid further confusion as to who should or should not be retained in the caption and who may or may not have a continued stake in the litigation.

The court gave Spencer a clear and workable framework for navigating the changed party composition, yet he again ignored those directions. Spencer provides no explanation in his response, for example, as to why he omitted all five defendants the court specifically directed him to retain by name. He also failed to explain why he added three entirely new paragraphs that appeared in neither the SAC nor the authorized redline. Those departures have nothing to do with settlements. Nor does the court's encouragement of settlement alter that analysis. Encouraging parties to resolve their disputes does not authorize a party to remove active defendants from a complaint without Rule 41(a) notices or leave of court. Spencer knows how to seek voluntary dismissal of defendants. (*See* Filing No. 189, Filing No. 193, Filing No. 197). He did not do so here.

Spencer argues that he circulated the CSAC to defense counsel on April 11, 2026, and no defendant identified a specific allegation that was not previously authorized by the court. He believes therefore that the CSAC should be accepted as compliant. But that argument too fails. It appears that three of the four defense counsel who responded explicitly objected to both the CSAC and the proposed TAC. Attorneys for Havermann and Pull characterized the changes as "nonsensical." (Filing No. 400-11, Filing No. 400-12). Counsel for Kotsan denied consent without elaboration. (Filing No. 400-13). But Spencer's own correspondence with defense counsel further undermines any good faith argument he attempts to make. The April 2nd Order expressly directed that all pending motions to dismiss remain operative and that no party file supplemental briefing in connection with any pending motion to dismiss on account of the corrected pleading. (Filing No. 377, at p. 15). Spencer's emails to defense counsel ask whether they intend to refile their motions to dismiss in light of the corrected pleading. That question has a plain answer in the April 2nd

Order. The fact that Spencer asked it at all indicates that he may not have carefully read the order, or if he did, he deliberately chose to ignore the court's instructions.

Spencer alternatively requests in his response leave to file a proposed TAC. (Filing No. 400-10). The court has compared the TAC (Filing No. 398-1) against the CSAC (Filing No. 380). It appears that the two documents are identical, at least substantively. But the TAC reflects the same departures from the April 2nd Order already identified and discussed herein. Accepting the TAC as the operative pleading would reward the same conduct the court has now addressed repeatedly. Accordingly, leave to file the TAC will be denied.

## II.    LEGAL STANDARDS

A district court has authority to dismiss an action on its own motion for failure to comply with court orders. That authority rests on two principles. First, the Supreme Court has held that the power to dismiss *sua sponte* is an inherent judicial power, "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (recognizing courts' inherent authority to manage their own proceedings and to sanction conduct that abuses the judicial process).

Second, Federal Rule of Civil Procedure 41(b), while by its terms permitting dismissal on an opposing party's motion, has been interpreted in this circuit as coextensive with, rather than limiting of, the court's inherent dismissal authority. *Brown v. Frey*, 806 F.2d 801, 803 (8th Cir. 1986) ("A court may so dismiss on its own initiative"); *Hunt v. City of Minneapolis*, 203 F.3d 524, 526-28 (8th Cir. 2000) (affirming *sua sponte* dismissal with prejudice based on plaintiff's pattern of noncompliance with court orders). Even where the facts might support dismissal with prejudice, this "ultimate sanction…should only be used when lesser sanctions prove futile." *Hunt*, 203 F. 3d. at 527 (*quoting Rodgers v. Curators of the Univ. of Mo.*, 135 F.3d 1216, 1222 (8th Cir. 1998)). "A district court should weigh its need to advance its burdened docket against the consequence of irrevocably

extinguishing the litigant's claim and consider whether a less severe sanction could remedy the effect of the litigant's transgressions on the court and the resulting prejudice to the opposing party." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) (citation omitted).

Dismissal with prejudice under either authority requires a clear record of intentional delay or contumacious conduct, as opposed to accidental or involuntary noncompliance. *Brown*, 806 F.2d at 803; *Rodgers*, 135 F.3d at 1220. Where a litigant has received an explicit advance warning that noncompliance will result in dismissal and has disregarded that warning, the case for dismissal is particularly strong. *Rodgers*, 135 F.3d at 1221. Where the record reflects a pattern of multiple distinct violations of a single order rather than one or two isolated failures, the Eighth Circuit has affirmed dismissal with prejudice even as it has reversed dismissals resting on a single misstep by a party who lacked notice and acted in good faith. *Compare Hunt*, 203 F.3d at 528 (affirming dismissal based on six distinct violations of a single pretrial order), *with Brown*, 806 F.2d at 803-04 (reversing dismissal where a pro se plaintiff had diligently pursued his case, had a prompt and plausible explanation for his noncompliance, and had never received warning of the consequences).

### III.    ANALYSIS

The undersigned finds and recommends to the district court that dismissal with prejudice under Federal Rule of Civil Procedure 41(b) and the court's inherent authority is warranted on this record. Lesser sanctions have already been tried and have failed. The April 2nd Order was itself the lesser sanction. Rather than recommending dismissal at that stage, the court struck unauthorized paragraphs, gave Spencer another opportunity to file a correct pleading, and warned him explicitly of the serious consequence for continued noncompliance.

Spencer abused that opportunity again and filed a complaint that disregarded the court's order in the ways described above. The OSC then provided Spencer a second, equally specific opportunity to bring this matter into compliance. Rather than provide the

9

paragraph-level accounting mandated by the court, Spencer filed a narrative brief that seeks to relitigate prior rulings, attributes the problem to the court, and requests leave to file yet another amended complaint, which notably is nearly identical to the one the court previously found was noncompliant. At this juncture, additional incremental measures would either prolong proceedings further or require the court and the other parties to continue to decipher who is in and who is out, which claims remain and which ones don't, and which facts are the same and which ones aren't. *Rodgers*, 135 F.3d at 1222.

The evidence further supports a finding that Spencer's noncompliance is intentional, as opposed to accidental or involuntary. *See Hunt*, 203 F.3d at 527 ("[t]his does not mean that the district court must find that the appellant acted in bad faith, but requires 'only that he acted intentionally as opposed to accidentally or involuntarily"). The evidence in particular shows that Spencer was capable of complying with some parts of the April 2nd Order, but then willfully ignored others. by striking the twenty-seven unauthorized additions, the four allegations his redlined submission had represented would be deleted, and the ten substantively revised paragraphs the April 2nd Order identified by number, a total of more than forty paragraphs spanning multiple causes of action. See Filing No. 377, at p. 13 (striking Filing No. 225, at paras. 2, 3, 22, 23, 26, 28, 39, 59-73, 97, 102, 135, 151, 193, 194, 195, and 199, as well as paras. 49, 51, 91, 92, 95, 96, 99, 103, 106, and 148). Those strikes required Spencer to read the April 2nd Order carefully, identify each paragraph by number, and omit it from the corrected pleading, which he did correctly. But he then disregarded completely a number of other instructions that were clear and direct as noted already. One quick example is Spencer's decision to remove from the CSAC paragraph 183 when he was told specifically not to and the reasons why. (Filing No. 377 at p. 23, fn.6). The undersigned noted unequivocally that the sufficiency of that allegation as pleaded was a matter for Judge Bataillon to resolve in connection with a pending motion to dismiss that had been fully briefed. The court reiterated that the "corrected Second Amended Complaint shall conform strictly to the directives of this order." This combination of partial compliance and targeted disregard is not consistent with confusion

10

or inadvertence. It demonstrates capacity coupled with choice. As the Eighth Circuit observed in *Rodgers*, where a litigant shows the ability to comply but elects not to do so, the court may properly find the conduct intentional. *Id.* at 1221-22.[3]

Spencer's continued noncompliance has significantly impacted the progress of this case. The initial complaint was filed well over a year ago and now has over 400 filings. No scheduling order has yet been entered. No discovery has taken place. No case progression of any kind has occurred. That is not a product of the complexity of the claims or the number of parties. It is a direct consequence of Spencer's conduct, which has required the court to undertake exhaustive line-by-line comparisons of four complaints, enter multiple remedial orders, and issue an OSC simply to obtain an explanation for departures Spencer has never adequately justified. The defendants cannot obtain resolution of their pending motions to dismiss because the operative pleading(s) keep changing. The court cannot advance this case toward merits adjudication for the same reason. As the Supreme Court recognized in *Chambers*, 501 U.S. at 43-44, conduct that requires a court to repeatedly revisit and reconstruct its own orders implicates the court's fundamental authority to manage its own proceedings. That concern could not be more evident here.

The recommendation to dismiss with prejudice reflects not only Spencer's repeated noncompliance, but the court's repeated and unsuccessful attempts to correct it before reaching that conclusion. At every prior juncture, the court chose the lesser path. When Spencer filed a motion to compel mediation that misrepresented the status of service of several defendants and characterized itself as unopposed without meaningful conferral, the

---

[3] Spencer briefly suggests in his response to the court's OSC that he is a "disabled sole practitioner… doing the best he can to follow the Court's Orders[.]" (Filing No. 398, at p. 8). He further addresses claimed disabilities in his declaration supporting his Rule 60 motion. (Filing No. 385). The court takes those claims seriously, but the record is devoid of any supporting evidence outside of Spencer's self-serving statements. Moreover, he fails to identify what accommodations he is requesting. Regardless, all attorneys admitted to practice in this district "must comply with the Nebraska Rules of Professional Conduct and this court's local rules," without exception. NEGenR 1.7(b); *see also Hunt*, 203 F.3d at 528-29 (rejecting the argument that certain cognitive disabilities rendered acts of noncompliance involuntary or accidental and any claimed PTSD "cannot provide an excuse for the[] numerous and varied failures to comply with court orders and procedural rules").

court denied it and expressly cautioned Spencer about his Rule 11 obligations rather than imposing sanctions. (Filing No. 257). When Spencer filed a premature notice of service that did not comply with the court's prior order, the court struck it and directed refiling rather than considering sanctions at that time. (Filing No. 268). When Spencer filed the Second Amended Complaint that departed from the court's amendment order, the undersigned declined to strike the pleading in its entirety. Instead, the court issued detailed corrective instructions and warned Spencer explicitly that continued noncompliance would result in a recommendation of dismissal with prejudice. (Filing No. 377). When Spencer filed the CSAC in further noncompliance with that order, the court issued an order to show cause and gave Spencer a final opportunity to account for his conduct before acting. (Filing No. 381). The court has now exhausted the incremental measures available to it. Each prior course correction was met with further noncompliance. Dismissal with prejudice is not a first resort. On this record, it is the only one that remains.

This record stands in clear contrast to *Brown v. Frey*, where the Eighth Circuit reversed dismissal because the plaintiff had not been warned, had committed only a single failure, and promptly offered a plausible explanation. *Brown*, 806 F.2d at 803-04. Every factor the Eighth Circuit found decisive in Brown's favor runs in the opposite direction here. Spencer was warned explicitly and in writing. His noncompliance is constant. His response to the OSC does not offer a plausible explanation for the selective nature of his conduct. It offers a narrative that avoids the question. This matter is more like the circumstances in *Rogers* and *Hunt*. In *Rodgers*, the Eighth Circuit affirmed dismissal with prejudice where the plaintiff complied selectively, disregarded a direct court order after receiving an explicit warning, and offered explanations the record disproved. *Rodgers*, 135 F.3d at 1218-22. In *Hunt*, the Eighth Circuit affirmed dismissal with prejudice based on six distinct violations of a single pretrial order by a party who received advance warning and could not credibly claim ignorance. *Hunt*, 203 F.3d at 528. The conduct here is not meaningfully distinguishable from either case. Spencer received an explicit written warning. He cannot credibly claim that he misunderstood what was required. His selective

compliance demonstrates that he read and understood the April 2nd Order, at least to the extent he wanted to.

Before concluding, the court notes that the conduct reflected in this record also independently implicates Federal Rule of Civil Procedure 11. In its Order to Show Cause, the court identified the CSAC's unauthorized changes as conduct that Rule 11(b)(1) was designed to address and directed Spencer to show cause why sanctions were not warranted on that basis. (Filing No. 381, at pp. 2-4). As addressed throughout this order, Spencer's conduct has been pervasive and deliberate, and his response to the Order to Show Cause does not sufficiently explain his behavior in a manner consistent with Rule 11's requirements. The primary purpose of Rule 11 sanctions is deterrence, and the record here presents precisely the kind of conduct that sanction is designed to deter. *Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 607 (D. Minn. 2011). The Eighth Circuit has repeatedly affirmed dismissal as a sanction for comparable conduct under Rule 11. *Id.* (collecting cases). Dismissal with prejudice is therefore warranted under any of the three independent grounds the court has identified.

The court takes no satisfaction in recommending dismissal of an action brought on behalf of plaintiffs who allege genuine harm, but the integrity of the court's orders and the orderly administration of this litigation require that consequences follow from repeated, deliberate noncompliance. Spencer's task was not complex. The court told him exactly what to file, exactly what to retain, and exactly what not to change. The court gave Spencer ample opportunity to comply, but he has still not done so.

Accordingly,

IT IS HEREBY RECOMMENDED to Senior United States District Judge Joseph F. Bataillon that this action be dismissed with prejudice for failure to comply with the court's April 2, 2026 Order and for failure to adequately respond to the Order to Show Cause.

IT IS FURTHER RECOMMENDED that all pending motions be denied as moot in light of the recommended dismissal with prejudice.

Dated this 19th day of May, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge

ADMONITION

Pursuant to NECivR 72.2, any objection to this recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy. Failure to timely object may constitute a waiver of any objection.

14